## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 7<br>(Previously Chapter 11) |
| SMILEDIRECTCLUB, INC., *et al.*,[1] | Case No. 23-90786 (CML) |
| Debtors. | (Jointly Administered) |

**EMERGENCY JOINT MOTION OF CHAPTER 7 TRUSTEE AND DIP AGENT (I) AUTHORIZING (A) CONSENSUAL USE OF CASH COLLATERAL AND (B) THE EXERCISE OF CERTAIN RIGHTS AND REMEDIES UNDER THE FINAL DIP ORDER, AND (II) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. If the Court considers the motion on an emergency basis, then you will have less than 21 days to answer. If you object to the requested relief or if you believe that the emergency consideration is not warranted, you should file an immediate response.**
>
> **Emergency relief is requested by no later than February 16, 2024.**
>
> **This motion involves relief from the automatic stay. If it is granted, the movants may act outside of the bankruptcy process. If you do not want the stay lifted, immediately contact the moving party to settle. If you cannot settle, you must file a response and send a copy to the moving party before the hearing. If you cannot settle, you must attend the hearing. Evidence may be offered at the hearing and the court may rule.**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

Allison D. Byman, in her capacity as the Chapter 7 Trustee (the "Trustee") of the jointly-administered bankruptcy estates of SmileDirectClub, Inc. and the affiliated debtors (collectively, the "Debtors") in the above-captioned chapter 7 cases, and Cluster Holdco LLC, in its capacity as

---

[1] A complete list of each of the Debtors in these chapter 7 cases may be obtained on the website of the Debtors' solicitation agent (as defined herein) at https://restructuring.ra.kroll.com/SmileDirectClub. The location of Debtor SmileDirectClub, Inc.'s principal place of business and the Debtors' service address in these chapter 7 cases is 1530 Antioch Pike, Antioch, Tennessee 37013.

administrative agent and collateral agent (the "DIP Agent"), by and through their respective undersigned counsel, hereby file this joint motion authorizing the Trustee's consensual use of cash collateral and the DIP Agent's agreed exercise of remedies with respect to certain DIP Collateral, including available cash on hand, subject to the Budget, and the machinery, equipment, printers, scanners, inventory, and other hard assets identified on **Schedule 1** attached hereto (collectively, the "Hard Assets" and, together with such available cash, the "Specified DIP Collateral").[2]  In support thereof, the movants respectfully state as follows.[3]

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C. 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. § 1408.

2.      The predicates for the relief requested herein are the DIP Orders and sections 105, 361, 362, 363, 364, and 507 of title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

### A.      General Background

3.      On September 29, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Court").   On October 2, 2023, the Court entered an order authorizing the joint administration and procedural consolidation of the chapter 11 cases pursuant

---

[2] For the avoidance of doubt, by this motion, the DIP Agent has not requested relief with respect to other DIP Collateral such as encumbered estate claims and causes of action and/or the Specified Causes of Action Proceeds (if any).  As set forth herein, the DIP Agent, for itself and the other DIP Lenders, expressly reserves the right to request such further relief in relation to the DIP Facility as and when it so chooses, and nothing contained herein shall be construed to prejudice the DIP Agent or the DIP Lenders with regard to such additional requests for relief.

[3] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the DIP Motion, the Interim DIP Order, or the Final DIP Order, as applicable, each as defined herein.

ACTIVE\1606076073.5

to Bankruptcy Rule 1015(b) [Docket No. 28].  On October 13, 2023, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") [Docket No. 138].

4.      The Debtors operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code until the Court entered that certain *Order Denying Debtors' Motions and Converting Cases to Chapter 7* [Docket No. 617] on January 26, 2024 (the "Conversion Date").  The Debtors ceased operating their businesses on or around December 8, 2023.  On the Conversion Date, the U.S. Trustee appointed Allison D. Byman as the Chapter 7 Trustee in these bankruptcy cases.

### B.      Specific Background

5.      On the Petition Date, the Debtors filed a motion [Docket No. 16] (the "DIP Motion") seeking interim and final approval of, among other things, a senior secured superpriority new money delayed-draw DIP Facility in the aggregate principal amount of up to $80 million (the "DIP Facility"), pursuant to the terms of that certain Debtor-in-Possession Credit Agreement, dated as of September 29, 2023 (as subsequently modified in accordance with the terms therewith, the "DIP Credit Agreement" and, together with that certain Collateral Agreement and such other related documents, the "DIP Documents"), and related orders.

6.      On October 2, 2023, the Court approved the DIP Motion on an interim basis [Docket No. 61] (the "Interim DIP Order").  Shortly thereafter, the DIP Lenders funded $20 million of Initial Draw T-1 Loans.  On October 3, 2023, the Debtors and the DIP Agent entered into that certain DIP Collateral Agreement—which agreement comprises part of the DIP Documents.

7.      On November 7, 2023, the Court approved the DIP Motion on a final basis [Docket No. 296] (the "Final DIP Order" and, together with the Interim DIP Order, the "DIP Orders").  Pursuant to paragraph 12 of the Final DIP Order, $5 million of the outstanding principal balance

**-3-**

of the Prepetition Outstanding Revolving Loans (i.e., the Roll-Up Amount) is deemed funded pursuant to the DIP Credit Agreement on a cashless basis and constitutes DIP Obligations.

8.      Pursuant to the DIP Orders and DIP Documents, the DIP Agent, for the benefit of itself and the other DIP Lenders, was granted a valid, binding, continuing, enforceable, non-avoidable, and automatically and properly perfected first-priority lien on and security interests in all real and personal property, whether then existing or thereafter arising and wherever located, tangible or intangible, of each of the Debtors (i.e., the DIP Collateral), subject and subordinate only to the Carve Out, to secure the DIP Obligations.[4]  Furthermore, all DIP Obligations are allowed superpriority administrative claims and, subject to the Carve Out, have priority over all administrative expense claims, adequate protection and other diminution claims, priority and other unsecured claims, and all other claims against the Debtors.[5]

9.      As of the date hereof, the DIP Agent estimates that the aggregate amount of the DIP Obligations is not less than approximately $30.5 million.

10.      On December 8, 2023, HPS notified the Debtors by letter that (a) the HPS Forbearance Agreement had terminated as a result of event of defaults under the HPS Forbearance Agreement, (b) one or more events of default under the HPS Credit Facility had occurred and were continuing, (c) the HPS Credit Facility's maturity date had therefore occurred and all unpaid loan amounts thereunder had become immediately due and payable, and (d) the Debtors would no longer be permitted to access cash proceeds from the HPS lockbox arrangement.  Because the obligations under the HPS Credit Facility had accelerated, an Event of Default under the DIP Facility occurred pursuant to clause (g) of Article VII of the DIP Credit Agreement.

---

[4] See, e.g., Final DIP Order ¶ 8.

[5] See, e.g., id. ¶ 10.

ACTIVE\1606076073.5

11.     On December 11, 2023, the DIP Agent (at the direction of the Required DIP Lenders) notified the Debtors, the Committee, and the U.S. Trustee, by letter ("Default Notice") that events of default had occurred and were continuing under the DIP Credit Agreement and as a result (among other things):  (a) the Default Rate applies in accordance with Section 2.11(d) of the DIP Credit Agreement; (b) the Carve Out Trigger Notice Cap is invoked; (c) the Commitments and the DIP Facility are terminated; (d) the DIP Obligations were immediately accelerated and due and payable; (e) the Debtors' authority to use Cash Collateral and the proceeds of the DIP Facility terminated; and (f) the DIP Agent was entitled to exercise remedies in accordance with the DIP Orders.

12.     The Trustee requires immediate access to cash in order to preserve and protect assets of the Debtors' estates, including the Debtors' books and records, and to protect the interests of the Debtors' creditors and stakeholders.

13.     Since the Conversion Date, the Trustee and the DIP Agent engaged in arms'-length, good faith negotiations regarding (a) the consensual use of Cash Collateral and/or proceeds of the DIP Facility, and (b) the agreed exercise of remedies by the DIP Agent with respect to certain, but not all, assets comprising DIP Collateral, including available cash and the Hard Assets.  In connection therewith, the DIP Lenders have consented to the Trustee's use of cash collateral for the period and in accordance with the agreed budget attached as **Exhibit 1** to **Exhibit A** (the "Budget").  The DIP Agent and the Trustee reserve the right to modify the Budget, whether in terms of period or manner of cash collateral usage, by further written agreement; *provided*, that any such modified Budget shall be evidenced by a stipulation filed on the docket, and contingent upon an agreed order entered, in these chapter 7 cases.

## RELIEF REQUESTED

14.     By this joint motion, the movants seek entry of an agreed order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing, in each case pursuant to the terms thereof, (i) the Trustee to use cash collateral on a consensual basis for the period contemplated by, and in accordance with, the Budget, and (ii) the DIP Agent to exercise rights and remedies with respect to the Specified DIP Collateral, and (b) granting related relief.

## BASIS FOR RELIEF REQUESTED

15.     Section 363(c)(2) of the Bankruptcy Code authorizes the consensual use of cash collateral.  Section 105 of the Bankruptcy Code authorizes the Court to enforce its orders.  Section 362(d) of the Bankruptcy Code obligates the Court to modify the automatic stay for cause or where the Debtors do not have equity in the applicable property and such property is not necessary to an effective reorganization.

16.     Paragraph 23(b) of the Final DIP Order provides that:

> In the case of the enforcement of DIP Liens or the Prepetition Liens or other remedies with respect to the DIP Collateral or Prepetition Collateral pursuant to clause (a)(vi) of paragraph 23 [of the Final DIP Order], the DIP Agent shall first file a motion with the Court seeking emergency relief to exercise such remedies on at least five (5) Business Days' written notice seeking an emergency hearing before the Court.

At such a hearing, the Court "may fashion an appropriate remedy, including permitting the DIP Agent, the DIP Lenders, or the Prepetition Revolving Lender to exercise any or all of their rights and remedies set forth in [the Final DIP Order], the DIP Documents, or under other applicable law."  Final DIP Order ¶ 23(c).

17.     By this motion, the DIP Agent is seeking authority to exercise remedies with respect to the Specified DIP Collateral.  First, the DIP Agent has consented to the Trustee's use of cash collateral in accordance with the Budget and proposed order.  The proposed use of cash

collateral is necessary for the Trustee to preserve and protect the value of certain estate assets, including books and records. Pursuant to the DIP Orders, the DIP Agent previously consented to the funding of the Carve Out, a portion of which shall be used by the Trustee to make certain payments contemplated thereby. Whatever available cash remaining in the Debtors' estates is subject to a valid, enforceable, non-avoidable first priority lien for the benefit of the DIP Agent (together with the DIP Lenders) as security for the DIP Obligations. Upon information and belief, the DIP Agent estimates that, as of the date hereof, such available encumbered cash is approximately $2 million. With this motion, the DIP Agent seeks authority to sweep such available encumbered cash and pay down, in part, the DIP Obligations. The Trustee consents to the proposed partial paydown.

18.     Second, with respect to the Hard Assets, the DIP Agent requests authority to exercise any and all rights available under the DIP Documents and applicable law, including, without limitation, rights and remedies available under Article 9 of the Uniform Commercial Code. Upon entry of the proposed order, the DIP Agent—not the Debtors' estates—would be responsible for the maintenance, preservation, and carrying costs associated with the Hard Assets. The DIP Agent proposes to repossess, transfer, foreclose upon, and/or otherwise dispose of the Hard Assets in partial satisfaction of the DIP Obligations.

## **RESERVATION OF RIGHTS**

19.     Notwithstanding anything to the contrary herein and for the avoidance of doubt, the exercise of any remedies by the DIP Agent, on behalf of itself and the other DIP Lenders, pursuant to the proposed order is and shall be deemed without prejudice to the future exercise or assertion of any other rights, remedies, claims, causes of action, defenses, and the like available to it or any DIP Lender under the DIP Orders, the DIP Documents, the DIP Facility, or any other applicable

ACTIVE\1606076073.5

law. The relief requested in this motion is, by definition, limited in scope. For the avoidance of doubt, the DIP Agent has not requested relief with respect to other DIP Collateral such as encumbered estate claims and causes of action and/or the Specified Causes of Action Proceeds (if any). The DIP Agent, on behalf of itself and the other DIP Lenders, expressly reserves the right to seek other or additional relief in relation to the DIP Facility as and when it so chooses, and nothing contained herein shall be construed to prejudice the DIP Agent or the DIP Lenders with regard to such additional requests for relief.

## **<u>CONCLUSION</u>**

WHEREFORE, the movants respectfully request that the Court enter the proposed order, attached hereto as **<u>Exhibit A</u>**, (a) authorizing, in each case pursuant to the terms of the DIP Orders, the DIP Documents, the DIP Facility, or any other applicable document thereof, (i) the Trustee to use cash collateral on a consensual basis for the period contemplated by, and in accordance with, the Budget, and (ii) the DIP Agent to exercise rights and remedies with respect to the Specified DIP Collateral, and (b) granting related relief, all as set forth herein and grant such other relief as the Court may deem just and proper.

Dated:  February 10, 2024   Respectfully submitted,
   Houston, Texas

            **DLA PIPER LLP (US)**

            */s/ James Muenker*

            James Muenker (Texas Bar No. 24002659)
            845 Texas Avenue, Suite 3800
            Houston, TX 77002
            Telephone: (214) 743-4500
            Facsimile: (214) 743-4545
            Email: james.muenker@us.dlapiper.com

            -and-

            Rachel Ehrlich Albanese, Esq.
            1251 Avenue of the Americas

ACTIVE\1606076073.5

New York, NY  10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email: rachel.albanese@us.dlapiper.com

-and-

Ben Winger (admitted *pro hac vice*)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Telephone: (312) 368-4000
Facsimile: (312) 236-7516
Email: benjamin.winger@us.dlapiper.com

*Counsel to the DIP Agent and the DIP Lenders.*

**PORTER HEDGES LLP**

Joshua W. Wolfshohl, State Bar No. 24038592
Aaron J. Power, State Bar No. 24058058
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 226-6000
(713) 226-6295 (fax)
jwolfshohl@porterhedges.com
 apower@porterhedges.com

*Counsel for the Chapter 7 Trustee*

## <u>CERTIFICATE OF SERVICE</u>

I, James Muenker, hereby certify that on this 10th day of February, 2024, I caused a true and correct copy of the foregoing motion to be to be served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

<u>*/s/ James Muenker*</u>
James Muenker (Texas Bar No. 24002659)
**DLA PIPER LLP (US)**
845 Texas Avenue, Suite 3800
Houston, TX 77002
Telephone: (214) 743-4500
Facsimile: (214) 743-4545
Email: james.muenker@us.dlapiper.com

ACTIVE\1606076073.5

## EXHIBIT A

**Proposed Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| | (Previously Chapter 11) |
| SMILEDIRECTCLUB, INC., *et al.*,[1] | |
| | Case No. 23-90786 (CML) |
| Debtors. | |
| | (Jointly Administered) |
| | **Re: Docket No. [_]** |

**AGREED ORDER (I) AUTHORIZING (A) CONSENSUAL USE OF CASH
COLLATERAL AND (B) THE EXERCISE OF CERTAIN RIGHTS AND REMEDIES
UNDER THE FINAL DIP ORDER, AND (II) GRANTING RELATED RELIEF**

Upon consideration of the *Emergency Joint Motion of the Chapter 7 Trustee and DIP Agent (I) Authorizing (A) Consensual Use of Cash Collateral and (B) the Exercise of Certain Rights and Remedies under the Final DIP Order, and (II) Granting Related Relief* (the "Motion")[2] seeking entry of an order (a) authorizing, in each case pursuant to the terms of the DIP Orders, the DIP Documents, the DIP Facility, or any other applicable document thereof, (i) the Trustee to use cash collateral on a consensual basis for the period contemplated by, and in accordance with, the Budget, and (ii) the DIP Agent to exercise rights and remedies with respect to the Specified DIP Collateral, and (b) granting related relief; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being

---

[1] A complete list of each of the Debtors in these chapter 7 cases may be obtained on the website of the Debtors' solicitation agent (as defined herein) at https://restructuring.ra.kroll.com/SmileDirectClub. The location of Debtor SmileDirectClub, Inc.'s principal place of business and the Debtors' service address in these chapter 7 cases is 1530 Antioch Pike, Antioch, Tennessee 37013.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion related hereto.

proper before the Court pursuant to 28 U.S.C. § 1408; and the Court having found that the movants have provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances and no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having found that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and upon all of the proceedings had before the Court; and good, adequate and sufficient cause has been shown to justify the immediate entry of this Order, **IT IS HEREBY ORDERED**:

1.      The Trustee is only authorized to use cash collateral during the period set forth in, and in accordance with, the Budget attached hereto as **Exhibit 1**; *provided*, that the Trustee and the DIP Agent shall be permitted to modify the Budget by written agreement, which revised Budget shall be evidenced by a stipulation filed on the docket and contingent upon an agreed order entered in these chapter 7 cases; *provided*, *further*, that payments, if any, to the Trustee or its professionals contemplated under the Budget shall remain subject to applicable retention and/or approved compensation orders and procedures approved in these cases.  For the avoidance of doubt:  (a) the Trustee's authority to use cash collateral pursuant to this Order shall terminate on March 1, 2024, unless otherwise agreed in writing by the DIP Agent; (b) the DIP Liens shall continue to attach to such cash collateral; and (c) the DIP Agent, for itself and the benefit of the other DIP Lenders, shall continue to benefit from the DIP Liens, superpriority claims, adequate protection package, and other terms governing the consensual use of cash collateral, each as and to the extent set forth in the Final DIP Order; *provided*, that amounts set forth in the Budget for the Trustee's compensation and the compensation of her professionals, incurred prior to March 1, 2024, may be

retained by the Trustee for payment after March 1, 2024, if such amounts are not yet payable under applicable Court order(s) or compensation procedures approved by the Court.

2.      The DIP Agent is authorized to exercise all rights, remedies, and take all actions it deems necessary or appropriate under the DIP Documents, DIP Orders, and/or applicable law to repossess, transfer, foreclose upon, and/or otherwise dispose of the Specified DIP Collateral.  The Trustee is authorized and directed to execute any documents or take any actions necessary or appropriate to effectuate such transfers of the Specified DIP Collateral to the DIP Agent.  To the extent applicable, the automatic stay under section 362 of the Bankruptcy Code is modified solely to give effect to the foregoing authorizations.

3.      The transfer of the Specified DIP Collateral to the DIP Agent pursuant to this Order shall constitute a legal, valid, binding, non-avoidable, and effective transfer of the Specified DIP Collateral.  Neither the Trustee, the DIP Agent, the DIP Lenders, nor their respective representatives shall have any liability for acts or omissions taken in accordance with this Order.

4.      This Order is and shall be binding in all respects upon and govern the acts and omissions of all persons and entities, including, without limitation:  (a) the Trustee, the Debtors, their estates, the Committee, all creditors of and holders of equity interests in any Debtor, any holders of liens, claims, or other interests (whether known or unknown) in, against, or on all or any portion of the Specified DIP Collateral, and each of their respective successors and assigns; and (b) all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or

3

insure any title or state of title in or to any lease.  Each of the foregoing persons and entities is hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the repossession, transfer, foreclosure, and/or other disposition of the Specified DIP Collateral.

5.     All persons and entities that are presently in possession of some or all of the Specified DIP Collateral are hereby directed to surrender possession of the Specified DIP Collateral to the DIP Agent or its designee on or immediately after date of entry of this Order. Subject to the terms, conditions, and provisions of this Order, all persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the repossession, transfer, foreclosure, and/or other disposition of the Specified DIP Collateral pursuant to this Order.

6.     The provisions of this Order shall be without prejudice to any rights and/or remedies, of the DIP Agent, on behalf of itself or the other DIP Lenders, in relation to the DIP Orders, DIP Obligations, DIP Collateral, or DIP Facility, or the Trustee/Debtors' estates, all of which are expressly reserved and preserved.

7.     Notwithstanding the possible applicability of Bankruptcy Rules 4001(a), 6004(h), 7062, 9014, or otherwise, this Order shall be immediately effective and enforceable upon its entry.

8.     The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

Houston, Texas
Dated: _____, 2024

_____
CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE

4

## **Exhibit 1**

**Budget**

5

**Smile DirectClub**
**Trustee Initial Cash Collateral Budget**
**(in thousands)**

|  | Week Ended | | | | | | |
|---|---|---|---|---|---|---|---|
|  | Incurred | | Forecasted | | | | |
| Debtor Entities | 1/26/2024 | 2/2/2024 | 2/9/2024 | 2/16/2024 | 2/23/2024 | 3/1/2024 | Total |
| **Employee Benefits & Sales Tax** | | | | | | | |
| Medical and Prescription Claims | | | $ 25 | $ 25 | $ 25 | | $ 75 |
| Sales tax payments | | | | $ 25 | | | $ 25 |
| | | | | | | | |
| **Data Protection** | | | | | | | |
| Key SW subscriptions | | $ 30 | | | | | $ 30 |
| Other IT cost requirements | | $ 25 | $ 25 | $ 25 | | | $ 75 |
| | | | | | | | |
| **Miscellaneous Estate Expenes** | | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 50 |
| | | | | | | | |
| **Trustee Professionals** | | $ 25 | $ 35 | $ 35 | $ 30 | $ 25 | $ 150 |
| | | | | | | | |
| **Trustee's Statutory Compensation** | | | | | | $ 56 | $ 56 |
| | | | | | | | |
| **Total of Requested Use of Cash Collateral** | $ - | $ 90 | $ 95 | $ 120 | $ 65 | $ 91 | $ 461 |
| | | | | | | | |
| **Reserve Amounts** | | | | | | | |
| **US Trustee Fees** | | | | | | | $ 600 |
| **Additional reserve for potential future agreed use of cash** | | | | | | | $ 50 |
| | | | | | | | |
| **Total Reserve** | | | | | | | $ 650 |

## <u>Schedule 1</u>

**Hard Assets**

6

| Name | Model # | Description | Equipment Type | Units OH |
|---|---|---|---|---|
| **Gen 2 Production Line** | | **Gen2 Loading System, Thermoformer** | **Gen2 Production Line** | **7** |
| Fanuc Robot Controller | A05B-2651-B021 | Control Unit for Fanac M/H Robot Unit | Thermoformer | 14 |
| Fanuc Robot Arm | A05B-1142-B201 | Manipulator for Fanac M/H Robot Unit | Thermoformer | 14 |
| Foba Laser Etching System | Y.0201-DN | Etching laser system | Thermoformer | 7 |
| Foba Controller | Y.0201-DN | Control Unit for etching laser | Thermoformer | 7 |
| Allen Bradley HMI | 2711p-T12W22D8S | Allen Bradley Machine Interface touchscreen | Thermoformer | 7 |
| Sheffield Dispensing Unit | HC-810 | Cut to length plastic dispenser | Thermoformer | 21 |
| Fumex Filtration System | FA2SSD | HEPA Air Filtration System | Trimmer | 7 |
| Polyscience Chiller | 6560T11A120C | Chilling unit for laser power supply | Trimmer | 7 |
| Pulstar Laser Power Supply | PSP100SB | Power supply for trimming laser | Trimmer | 7 |
| Aerotech Galvo Laser Focus System | | Beam Focusing/ Positioning system | Trimmer | 7 |
| Aerotech 5 Axis Puck Postioning System | | Puck Positioning System | Trimmer | 7 |
| Atlas Copco Control Unit | PF600LV | Atlas Copco Driver Controller | Gen2 Conveyor Sorting System | 14 |
| Atlas Copco Driver | SL21-01-S06-T25 | Atlas Copco Screw Driver Gun | Gen2 Conveyor Sorting System | 14 |
| Allen Bradley Armor Start LT | 294E-FD1P5Z-G3 | Allen Bradley Armor Start LT Motor Drive | Gen2 Conveyor Sorting System | 238 |
| SEW Gear Motor | WA20 DRN71MS4 | SEW Gear Motor (conveyor drive unit) | Gen2 Conveyor Sorting System | 238 |
| Allen Bradley Logic Controller | 1734-AENTR | Allen Bradley PLC | Gen2 Conveyor Sorting System | 7 |
| Allen Bradley HMI | 2711P-T9W22D8S | Allen Bradley Machine Interface touchscreen | Gen2 Conveyor Sorting System | 84 |
| Allen Bradley HMI | 2711p-T12W22D8S | Allen Bradley Machine Interface touchscreen | Gen2 Conveyor Sorting System | 14 |
| Autobagger | PS125 | One Step Autobagger Machine | Gen2 Conveyor Sorting System | 22 |
| Reiser Extrusion Machine | HP30E | Extrusion Machine | Putty | 2 |
| **Eclipse Arch Sorter Machine** | | **Arch Sorter** | **Arch Sorter** | **2** |
| Cognex Vision System | IS9912M-373-50 | Vision System | Arch Sorter | 2 |
| Fanuc LR Mate 200 iD Robot Contoller | A05B-2651-B021 | Robot Controller | Arch Sorter | 2 |
| Fanuc Robot Arm | A05B-1142-B301 | Manipulator for Fanac M/H Robot Unit | Arch Sorter | 2 |
| Allen Bradley HMI | 2711p-T10C22D9 | Allen Bradley Machine Interface touchscreen | Gen2 Conveyor Sorting System | 2 |
| **HP Build Unit** | **MOP45B** | **HP Build Unit** | **3D Printing** | **78** |
| **HP 3D Jet Fusion 4200 Printer** | **2YG73Z** | **HP 3D Printer** | **3D Printing** | **30 (8+22)** |
| **HP Jet Fusion 3D 4210 Processing** | **MOP49C** | **HP 3D Processing Station** | **3D Printing** | **30 (8+22)** |
| **Clemco Reclaimer Unit** | **BNP-166** | **Clemco Shot Reclaimer Unit** | **Arch Post Processing** | **5** |
| **Clemco Blast Cabinet** | **BNP-166** | **Clemco Shot Blasting Cabinet** | **Arch Post Processing** | **5** |
| **Clemco Dust Collection System** | **RPH-2L** | **Clemco Pulse Dust Collection System** | **Arch Post Processing** | **5** |
| **3Shape R2000 3D Scanner** | **P4-WSQ-D0-R2-5MD-N-3** | **Shape 3D Scanner** | **Impressions Area** | **18** |
| **Retainer Production Line** | **na** | **Gen2 Loading System, Thermoformer** | **Gen2 Retainer Line** | **1** |
| Atlas Copco Control Unit | PF600LV | Atlas Copco Driver Controller | Gen2 Conveyor Sorting System | 2 |
| Atlas Copco Driver | SL21-01-S06-T25 | Atlas Copco Screw Driver Gun | Gen2 Conveyor Sorting System | 2 |
| Fanuc Robot Controller | A05B-2651-B021 | Control Unit for Fanac M/H Robot Unit | Thermoformer | 2 |
| Fanuc Robot Arm | A05B-1142-B201 | Manipulator for Fanac M/H Robot Unit | Thermoformer | 2 |
| Foba Controller | Y.0201-DN | Control Unit for laser | Thermoformer | 1 |
| Foba Laser Etching System | Y.0201-DN | Etching laser system | Thermoformer | 1 |
| Merc Plastic Dispensing Unit | Highline 101-104 | Controlled enviroment plastic dispencing | Thermoformer | 1 |
| Sheffield Dispensing Unit | HC-810 | Cut to length plastic dispenser | Thermoformer | 3 |
| SEW Gear Motor | WA20 DRN71MS4 | SEW Gear Motor (conveyor drive unit) | Gen2 Conveyor Sorting System | 20 |
| Allen Bradley Armor Start LT | 294E-FD1P5Z-G3 | Allen Bradley Armor Start LT Motor Drive | Retainer Conveyor  System | 20 |
| Allen Bradley HMI | 2711p-T12W22D8S | Allen Bradley Machine Interface touchscreen | Thermoformer | 1 |
| Polyscience Chiller | 6560T11A120C | Chilling unit for laser power supply | Trimmer | 1 |
| Pulstar Laser Power Supply | PSP100SB | Power supply for trimming laser | Trimmer | 1 |
| Aerotech Galvo Laser Focus System | na | Beam Focusing/ Positioning system | Trimmer | 1 |
| Aerotech 5 Axis Puck Postioning System | na | Puck Positioning System | Trimmer | 1 |
| Fumex Filtration System | FA5-2 | HEPA Air Filtration System | Trimmer | 1 |
| Precise Pick and Place Robot | PFD0-MA-00 | Pick and place robot system | Retainer RAB sort system | 2 |
| Allen Bradley HMI | 2711P-t9W21D8S | Allen Bradley Machine Interface touchscreen | Retainer RAB Sort System | 2 |
| Allen Bradley HMI | 2711P-T9W22D8S | Allen Bradley Machine Interface touchscreen | Retainer Load System | 6 |
| **Atlas Copco Air Compressor** | **GA30** | **Atlas Copco Air Compressor** | **Facility Compressed Air System** | **2** |
| **Atlas Copco Air Compressor** | **ZT37** | **Atlas Copco Air Compressor** | **Facility Compressed Air System** | **2** |
| **Atlas Copco Air Compressor** | **ZT75VSD** | **Atlas Copco Air Compressor** | **Facility Compressed Air System** | **1** |
| **Atlas Copco Air Dryer** | **FD245** | **Atlas Copco Air Dryer** | **Facility Compressed Air System** | **1** |
| **Atlas Copco Air Dryer** | **FD120** | **Atlas Copco Air Dryer** | **Facility Compressed Air System** | **1** |
| **Vertiv UPS Unit** | **51SA250NAA** | **Vertiv 250kVA UPS unit** | **Facility Electrical Distribution System** | **4** |
| **Cat 2.0MW Generator** | **CAT3516CTLYM01315** | **Emergency backup generator** | **Facility Electrical Distribution System** | **1** |
| **Gen 1 Production Equipment** | **In House** | **Front of Line Arch Scanner** | **Arch Scanner** | **9** |
| Cognex Vision System | 821-10028-2R | Vision system for Front of Line Arch Scanner Machine | Child of Arch Scanner | 9 |
| **Gen1 Worx Laser Etcher** | | **Worx laser etching system and cabinet** 182 | **Aligner Etching** | **24** |
| Keyence Etching Laser Power Supply | MD-F3200C | Child component- Worx laser etching system | Aligner Etching | 24 |
| Keyence 3 Axis Laser Focus Head | | Child component- Worx laser etching system | Aligner Etching | 24 |
| **Gen1 Milling Machine** | **ARUM 5X-200** | **Gen1 Milling Machine** | **CNC Trimming Mill** | **43** |
| **Gen1 Autopress Machine** | **37792-000-04** | **Gen1 Thermoforming Machine** | **Thermoformer** | **24** |
| Allen Bradley PLC | 5380 Compact Logix | Programmable Logic Controller | Autopress Child | 24 |
| Allen Bradley HMI | 2711p-T12W22D8S | Allen Bradley Machine Interface touchscreen | Autopress Child | 24 |
| **Autobagger** | **PS125** | **One Step Autobagger Machine** | **Product Bagging Machine** | **24** |
| **3D Systems 660 Printer** | **Projet 660Pro** | **3D Printer** | **3D Printing** | **10** |

| | | | | |
|---|---|---|---|---|
| Clemco Reclaimer Unit | BNP-166 | Clemco Shot Reclaimer Unit | Arch Post Processing | 1 |
| Clemco Blast Cabinet | BNP-166 | Clemco Shot Blasting Cabinet | Arch Post Processing | 1 |
| Clemco Dust Collection System | RPH-2L | Clemco Pulse Dust Collection System | Arch Post Processing | 1 |
| Nelmor Shreding Machine | G1012M1 | Regrind machine | Plastice Recycling | 1 |
| Atlas Copco Air Compressor | ZT90VSD | Atlas Copco Air Compressor | Facility Compressed Air System | 1 |
| Atlas Copco Air Compressor | ZT90 | Atlas Copco Air Compressor | Facility Compressed Air System | 1 |
| Atlas Copco Air Dryer | FD510 | Atlas Copco Air Dryer | Facility Compressed Air System | 1 |
| GE UPS Unit | TLE Series S2 UL | GE 250kVA UPS unit | Facility Electrical Distribution System | 4 |
| Cummins 2.0MW Generator | C190529451 | Emergency backup generator | Facility Electrical Distribution System | 1 |
| All Spare Parts | Various | Various | Various | |