UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>SMILEDIRECTCLUB, INC., *et al.*<br><br>Debtors. | § Chapter 7<br>§ **(Previously Chapter 11)**<br>§<br>§ Case No. 23-90786 (CML)<br>§<br>§ **(Jointly Administered)**<br>§ |

**TRUSTEE'S <u>EMERGENCY</u> SECOND OMNIBUS MOTION TO
REJECT UNEXPIRED REAL PROPERTY LEASES AND
<u>ABANDON PERSONAL PROPERTY RELATED THERETO</u>**

> **Emergency relief has been requested. If the Court considers the motion on an emergency basis, then you will have less than 21 days to answer If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on February 23, 2024, at 1:00 p.m. (prevailing Central Time) in Courtroom 401, 4th floor, 515 Rusk Street, Houston, Texas 77002. You may participate in the hearing either in person or by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's home page. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page. Select the case name, complete the required fields, and click "Submit" to complete your appearance.**
>
> **Represented parties should act through their attorney.**

1

15214157v1

> **PARTIES RECEIVING THIS MOTION SHOULD LOCATE THEIR RESPECTIVE NAMES AND LEASES/CONTRACTS ON THE LIST OF REJECTED AGREEMENTS IN THE EXHIBITS TO THE PROPOSED ORDER ATTACHED HERETO.**

Allison D. Byman, the Chapter 7 Trustee (the "Trustee") of the jointly administered bankruptcy estates of SmileDirectClub, Inc., *et al*. (collectively, "SmileDirect" or the "Debtors"), hereby files this Second Omnibus Motion to Reject Unexpired Real Property Leases and Abandon Personal Property Related Thereto (the "Motion"). In support of the Motion, the Trustee represents as follows.

## RELIEF REQUESTED

1. By this Motion, the Trustee requests entry of an order substantially in the form attached hereto authorizing and approving the rejection of certain real property leases, effective as of the earlier of (a) the conversion date or (b) the date that the Debtors surrendered possession of the leased premises to the landlord, and abandoning any remaining personal property located at the leased premises.

## EMERGENCY CONSIDERATION

2. Emergency relief is appropriate under the circumstances because entry of the Order will not prejudice any party-in-interest to the chapter 7 cases. The relief requested is intended to minimize costs to the Debtors' estates. Timely entry of the order and implementation of the rejection's effectiveness will benefit the estates by allowing the rejection to become effective prior to the Conversion Date. Delay in the Court's consideration of the relief sought herein for the standard notice period will, in practical terms, put the Trustee's efforts to reject these leases on pause. Such delay in the entry of the Proposed Order could lead to unnecessary disputes over administrative claims that could otherwise be avoided.

15214157v1

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of Texas, dated May 24, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

2. Venue is proper pursuant to 28 U.S.C. § 1408.

3. The legal predicates for the relief requested herein are Sections 105, 365, 554, and 1108 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6004, 6006, and 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**BACKGROUND**

**I.    The Debtors' Pre-Petition Operations**

4. Pre-petition, the Debtors were engaged in the business of providing clear aligner therapy across the nation and the world. The Debtors' physical footprint consisted of a manufacturing facility and over 100 "SmileShop" retail locations that customers could visit for 3D oral imaging and other services.

5. The Debtors were party to numerous real property leases for premises used as SmileShops, including those listed at Exhibit A (collectively, the "Rejected Leases"). While certain of the Rejected Leases may have already terminated by their own terms, the Trustee includes them in this Motion out of an abundance of caution to avoid any argument that such leases have not been rejected.

6. In addition, various pieces of tangible personal property belonging to the Debtors remain on the premises of the Rejected Leases (the "Personal Property"). The cost to remove the Personal Property exceeds their value, and there is no equity in the Personal Property which is collateral for the DIP loan.

7. Additionally, some of the counterparties to the Rejected Leases are holding a security deposit securing the Debtors' lease obligations (collectively, the "Security Deposits"). Given the large number of the Rejected Leases and the administrative expense of conducting a lease-by-lease analysis of each Security Deposit, the Trustee requests that the proposed order granting rejection of the leases permit counterparties to effectuate setoffs of their Security Deposits without further order of the Court and that the DIP Agent be authorized to reconcile asserted claims and collect payment of Security Deposits directly from the landlords listed on Exhibit A for any net amounts owing to the estate.

## II. The Bankruptcy Cases

8. On September 29, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

9. Post-petition, the Debtors operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

10. On December 8, 2023, once it became clear that no viable going-concern path existed, the Debtors commenced a wind-down of their global operations. As a result, the Debtors' business ceased operating, and the Debtors terminated their workforce.

11. Between December 14 and 19, 2023, the Debtors delivered, via email and first-class mail, notice to the counterparties to the Rejected Leases that (i) it was rejecting the lease, (ii) it had removed all Personal Property that it intended to remove from the leased premises, and (iii) it was demanding return of any Security Deposit.

12. On January 26, 2024 (the "Conversion Date"), the Court entered the *Order Denying Debtors' Motions and Converting Cases to Chapter 7* [Docket No. 617].

13. The Trustee is the duly appointed chapter 7 trustee in these cases.

14. On February 13, 2024, the Trustee filed the *Trustee's Emergency First Omnibus Motion to Reject Unexpired Real Property Leases and Abandon Personal Property Related Thereto* [Docket No. 648] (the "<u>First Omnibus Rejection Motion</u>").

15. The First Omnibus Rejection Motion is currently set to be heard on February 23, 2024, at 1:00 p.m. (prevailing Central Time).

## BASIS FOR RELIEF

### I. Legal Standard

#### A. Rejection

16. Bankruptcy Code section 365(a) authorizes the Trustee to reject executory contracts and unexpired leases subject to the approval of the bankruptcy court:

> (a) Except as provided in . . . subsections (b), (c) and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

11 U.S.C. § 365(a).

17. Courts evaluate a decision to reject an executory contract or unexpired lease under the "business judgment" standard. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) ("It is well established that the question whether a lease should be rejected is one of business judgment") (internal quotations omitted); *see also Lifemark Hospitals, Inc. v. Liljeberg Enters., Inc. (In re Liljeberg Enters., Inc.)*, 304 F.3d 410, 438 (5th Cir. 2002); *NLRB v. Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test.").

18. The standard is satisfied if the trustee determines in their business judgment that the rejection of the contract or lease would benefit the estate. *See In re Pisces Energy, LLC*, No. 09-36591-H5-11, 2009 WL 7227880, at *6 (Bankr. S.D. Tex. Dec. 21, 2009) (citing *Lubrizol*

*Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1046–47 (4th Cir.1985)); *In re MPF Holding U.S. LLS*, No. 08-36084, 2013 WL 3197658, at *9 (Bankr. S.D. Tex. June 21, 2013); *Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36, 40 (3d Cir. 1989). The business judgment standard mandates that a court approve a trustee's business decision unless the decision is the product of bad faith, whim or caprice. *In re Pisces Energy*, 2009 WL 7227880, at *6; *In re Pilgrim's Pride Corp.*, 403 B.R. 413, 422 (Bankr. N.D. Tex. 2009); *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course"). If the trustee's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease or executory contract. *See, e.g.*, *Richmond Leasing*, 762 F.2d at 1309; *In re Idearc Inc.*, 423 B.R. 138, 162 (Bankr. N.D. Tex. 2009), *aff'd*, 662 F.3d 315 (5th Cir. 2011) ("In the absence of a showing of bad faith or an abuse of business discretion, the debtor's business judgment will not be altered").

19.     Rejection under Section 365 of the Bankruptcy Code is intended to enable the trustee to relieve the estate from burdensome and unprofitable contracts. *Stewart Title Guar. Co. v. Old Republic Nat'l Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) ("[Section 365] allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed") (quoting *In re Murexco Petroleum, Inc.*, 15 F.3d 60, 62 (5th Cir. 1994)).

**B.     Abandonment**

20.     Section 554 of the Bankruptcy Code allows a trustee, after notice and a hearing, to "abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554. "Before ordering abandonment, the bankruptcy court must find either: 1) the property is burdensome to the estate; or, 2) the property is both of

6

inconsequential value and inconsequential benefit to the estate." *In re Beach Dev., L.P.*, 2010 WL 3155255, at *3 (Bankr. S.D. Tex. Aug. 10, 2010). Bankruptcy Rule 6007 provides the procedure for abandonment: any party in interest may file and serve an objection to the abandonment within 15 days of the mailing of the notice. FED. R. BANKR. P. 6007. If the motion for abandonment is opposed, the party requesting abandonment must show some likely benefit to the estate; mere speculation about possible scenarios in which there might be a benefit is not sufficient. *In re Apex Long Term Acute Care – Katy, L.P.*, 599 B.R. 314, 323 (Bankr. S.D. Tex. 2019). If there is no objection to the proposed abandonment after notice, the court may allow abandonment without a hearing. FED. R. BANKR. P. 6007.

## II.     The Court Should Authorize Rejection of the Rejected Leases

### A.     The Requested Relief Is Supported by the Trustee's Sound Business Judgment

21.     Rejection of the Rejected Leases is amply supported by sound business judgment. The Debtors ceased operations prior to conversion and provided notice to the landlords of their intent to reject the Rejected Leases. The Trustee has no further use for the leased premises. Accordingly, the Rejected Leases have no economic value to the estate and there is no business reason to justify the Trustee's continued performance under the Rejected Leases.

### B.     Nunc Pro Tunc Relief Is Appropriate

22.     The Trustee respectfully requests that the Court enter an order rejecting the Rejected Leases, effective as of the earlier of (a) the Conversion Date or (b) the date that the Debtors surrendered possession of the leased premises to the landlord. The Court may grant this retroactive rejection of unexpired leases based on a balance of the equities. *See, e.g.*, *In re Cafeteria Operators, L.P.*, 299 B.R. 384, 394 (Bankr. N.D. Tex. 2003) (granting retroactive relief for contract rejection where debtors were "receiving no benefit" from the lease and the contract counterparties "had unequivocal notice of Debtors' intent to reject to the filing of the Motions");

*In re Amber's Stores, Inc.*, 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (finding that "nothing precludes a bankruptcy court, based on the equities of the case, from approving" retroactive rejection); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (acknowledging that a bankruptcy court may approve a rejection retroactive to the date the motion is filed after balancing the equities in the particular case).

23.     Here, the balance of equities favors retroactive rejection for the Rejected Leases. The Debtors ceased operations on December 8, 2023, and, shortly thereafter, delivered notices surrendering the premises of the Rejected Leases to the landlords. *Nunc pro tunc* relief is appropriate to ensure that no further administrative costs occur related to the Rejected Leases after the Conversion Date.

**III.    The Court Should Authorize the Abandonment of the Personal Property and Allow the DIP Agent and Counterparties to Reconcile and, As Applicable, Setoff or Collect Security Deposits.**

24.     Abandonment of the Personal Property is appropriate here because there is no equity in the Personal Property and it has inconsequential value relative to the cost of removal. Prior to the conversion, the Debtors provided notice to the counterparties of the Rejected Leases that it had already removed all property that it intended to remove. Accordingly, abandonment of the Personal Property is appropriate and necessary.

25.     Given that there will be over 100 Rejected Leases, requiring the Trustee to evaluate and negotiate individual agreed stay relief orders permitting the counterparties to setoff the Security Deposits would be a waste of estate resources and almost certainly incur more expenses than any recovery. To be clear, the Trustee is not abandoning the estate's interest in the Security Deposits only agreeing to setoff. If a counterparty's claim against the estate is less than the Security Deposit, it is still required to return the balance of the Security Deposit to the Trustee. Given that the stay will be lifted for the DIP Lender to foreclose on cash, the most efficient method

for collecting any net amounts of the Security Deposits related to the Rejected Leases will be to permit the DIP Agent to reconcile asserted claims and demand payment directly from the landlords listed on Exhibit A.  Otherwise, the estate will incur unnecessary administrative expenses seeking to collect a relatively small amount of money only for those funds to be swept by the DIP Agent. Accordingly, granting the relief requested with respect to the Security Deposits without further Court order is in the best interests of the estates.

**IV.     The Requirements of Bankruptcy Rule 6006(f) Are Satisfied**

26.     Bankruptcy Rule 6006(f) requires, in relevant part, that a motion to reject multiple executory contracts or unexpired leases:

a. state in a conspicuous place that parties receiving the motion should locate their names and their contracts or leases in the motion;

b. list parties alphabetically and identify the corresponding contract or lease;

c. be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and

d. be limited to no more than 100 executory contracts or unexpired leases.

The Trustee has complied with the foregoing requirements.

## NOTICE

27.     The Debtors will provide notice of this Motion to all parties listed on Exhibit A.

## CONCLUSION

28.     WHEREFORE the Debtors respectfully request that the Court (i) grant the Motion and (ii) grant such other and further relief as is just and proper.

Dated: Houston, Texas  
       February 16, 2024

Respectfully submitted,

**PORTER HEDGES LLP**

By: */s/ Aaron J. Power*  
Joshua W. Wolfshohl (TX Bar No. 24038592)  
Aaron J. Power (TX Bar No. 24058058)  
1000 Main Street, 36th Floor  
Houston, TX 77002-2764  
Telephone: (713) 226-6000  
Facsimile: (713) 226-6248  
Email: jwolfshohl@porterhedges.com  
Email: apower@porterhedges.com

*Proposed Counsel for the Chapter 7 Trustee*

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on February 16, 2024, a true and correct copy of the foregoing document has been served on all parties receiving ECF notice in the above-referenced cases and on the parties listed on Exhibit A by U.S. first-class mail.

*/s/ Aaron J. Power*  
Aaron J. Power

**CERTIFICATE OF ACCURACY PURSUANT TO B.L.R 9013-1(i)**

In accordance with Bankruptcy Local Rule 9013-1(i), I hereby certify the accuracy of the matters set forth in the foregoing Motion.

*/s/ Aaron J. Power*  
Aaron J. Power

15214157v1