**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: § | Chapter 7 |
| § | (Previously Chapter 11) |
| **SMILEDIRECTCLUB, INC.,** *et al.* § | |
| § | Case No. 23-90786 (CML) |
| Debtors. § | |
| § | (Jointly Administered) |

**EMERGENCY JOINT MOTION OF CHAPTER 7 TRUSTEE AND DIP AGENT TO (I) SUPPLEMENT THE AGREED ORDER (A) AUTHORIZING (1) CONSENSUAL USE OF CASH COLLATERAL AND (2) THE EXERCISE OF CERTAIN RIGHTS AND REMEDIES UNDER THE FINAL DIP ORDER, AND GRANTING RELATED RELIEF, (II) APPROVE COMPROMISE PURSUANT TO RULE 9019, AND (III) GRANTING RELATED RELIEF**
(Relates to Doc. No. 655)

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**
>
> **Represented parties should act through their attorney.**
>
> **Emergency relief has been requested. If the Court considers the motion on an emergency basis, then you will have less than 21 days to answer. If you object to the requested relief or if you believe that the emergency consideration is not warranted, you should file an immediate response.**
>
> **Emergency consideration is requested on or before June 5, 2024.**

**TO THE HONORABLE CHRISTOPHER M. LOPEZ,**
**UNITED STATES BANKRUPTCY JUDGE:**

15390169

Allison D. Byman, in her capacity as the Chapter 7 Trustee (the "Trustee") of the jointly-administered bankruptcy estates of SmileDirectClub, Inc. and the affiliated debtors (collectively, the "Debtors") in the above-captioned chapter 7 cases, and Cluster Holdco, LLC, in its capacity as administrative agent and collateral agent (the "DIP Agent"), by and through their respective undersigned counsel, hereby file this joint motion (this "Motion") seeking to (I) supplement the agreed order regarding the use of cash collateral and the DIP Agent's exercise of remedies [Docket No. 655] (the "Agreed Order"), and (II) approve one or more compromises between them on issues not addressed in the Agreed Order.[1]  In support thereof, the movants respectfully state as follows.

## EMERGENCY RELIEF REQUESTED

1. The Final DIP Order (defined below) permits the DIP Agent to seek relief to exercise its remedies on at least five (5) Business Days' written notice.  The DIP Agent desires to take immediate action upon entry of the relief requested which will preserve and maximize the value of the assets being foreclosed upon which benefits the estate.  Further delay in the exercise of its remedies could impair the value of its collateral.

2. Accordingly, the parties request relief on or before June 5, 2024.

---

[1] For the avoidance of doubt, by this motion, the DIP Agent has not requested relief with respect to other DIP Collateral such as the pledged equity of the SPV (as defined herein) and/or the Specified Causes of Action Proceeds (if any).  As set forth herein, the DIP Agent, for itself and the other DIP Lenders, expressly reserves the right to request such further relief in relation to the DIP Facility as and when it so chooses, and nothing contained herein shall be construed to prejudice the DIP Agent or the DIP Lenders with regard to such additional requests for relief.

15390169

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C. 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. § 1408.

4. The predicates for the relief requested herein are the Agreed Order, the DIP Orders, and sections 105, 361, 362, 363, 364, and 507 of title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

### A. The Bankruptcy Case

5. On September 29, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (prior to the Conversion Date, the "Chapter 11 Cases"). The Chapter 11 Cases were jointly administered and procedurally consolidated pursuant to Bankruptcy Rule 1015(b). On October 13, 2023, the United States Trustee for Region 7 (Southern and Western Districts of Texas) (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors in these Chapter 11 Cases pursuant to Bankruptcy Code section 1102(a)(1) [Docket No. 138] (the "Committee").

6. The Debtors operated their businesses and managed their properties as debtors and debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code until the Court entered its *Order Denying Debtors' Motions and Converting Cases to Chapter 7* [Docket No. 617] on January 26, 2024 (the "Conversion Date"). The Debtors are no longer operating. On the Conversion Date, the U.S. Trustee appointed Allison D. Byman as the Chapter 7 Trustee in these bankruptcy cases.

15390169

### B. The DIP Facility

7. On the Petition Date, the Debtors filed a motion (Doc. No. 16) (the "<u>DIP Motion</u>") seeking interim and final approval of, among other things, a senior secured superpriority new money delayed-draw DIP Facility in the aggregate principal amount of up to $80 million (the "<u>DIP Facility</u>"), pursuant to the terms of that certain Debtor-in-Possession Credit Agreement, dated as of September 29, 2023 (as subsequently modified in accordance with the terms therewith, the "<u>DIP Credit Agreement</u>" and, together with that certain Collateral Agreement and such other related documents, the "<u>DIP Documents</u>"), and related orders.

8. On October 2, 2023, the Court approved the DIP Motion on an interim basis [Docket No. 61] (the "<u>Interim DIP Order</u>"). Shortly thereafter, the DIP Lenders funded $20 million of Initial Draw T-1 Loans. On October 3, 2023, the Debtors and the DIP Agent entered into that certain DIP Collateral Agreement—which agreement comprises part of the DIP Documents.

9. On November 7, 2023, the Court approved the DIP Motion on a final basis [Docket No. 296] (the "<u>Final DIP Order</u>" and, together with the Interim DIP Order, the "<u>DIP Orders</u>").

10. Pursuant to the DIP Orders and DIP Documents, the DIP Agent, for the benefit of itself and the other DIP Lenders, was granted a valid, binding, continuing, enforceable, non-avoidable, and automatically and properly perfected first-priority lien on and security interests in all real and personal property, whether then existing or thereafter arising and wherever located, tangible or intangible, of each of the Debtors (i.e., the DIP Collateral), subject and subordinate only to the Carve Out, to secure the DIP Obligations.[2] Furthermore, all DIP Obligations are allowed superpriority administrative claims and, subject to the Carve Out, have priority over all

---

[2] *See, e.g.*, Final DIP Order ¶ 8. As used in this Motion, the term "DIP Collateral" shall have the meaning ascribed to it in the Final DIP Order.

15390169

administrative expense claims, adequate protection and other diminution claims, priority and other unsecured claims, and all other claims against the Debtors.[3]

### C. Prior Cash Collateral and Stay Relief

11. On February 10, 2024, the parties jointly filed an emergency motion seeking approval of the consensual use of cash collateral and permitting the DIP Agent to exercise certain remedies under the Final DIP Order [Docket No. 638].

12. On February 15, 2024, the Court entered that certain *Agreed Order (I) Authorizing (A) Consensual Use of Cash Collateral, and (B) the Exercise of Certain Rights and Remedies Under the Final DIP Order, and (II) Granting Related Relief*—i.e., the Agreed Order.

13. The Agreed Order grants the DIP Agent stay relief to exercise against certain collateral defined therein as "Specified DIP Collateral." The Agreed Order also authorizes the Trustee's use of cash collateral pursuant to, among other things, an agreed budget covering the period from the Conversion Date through February 29, 2024.

14. On April 23, 2024, the Court entered that certain *Stipulation and Agreed Order Extending Certain Consensual Uses of Cash Collateral Through March 2024* [Docket No. 787] (the "March Stipulation"), which modified and extended the use of cash collateral authorized by the Agreed Order through March 31, 2024, pursuant to the terms thereof.

### D. Supplemental Relief and Proposed Compromise

15. The Trustee and the DIP Agent engaged in hard-fought, good faith, arms' length negotiations regarding further issues that relate to the Agreed Order, the disposition of further DIP Collateral, and other matters concerning the future administration of the estates. Those efforts led

---

[3] *See, e.g.*, *id.* ¶ 10.

15390169

to the jointly requested, proposed relief set forth herein. Each of the following terms and compromises are conditioned on each other as part of a negotiated global resolution.

*Cash Collateral*

16. The Trustee and the DIP Agent have agreed to the further use of cash collateral through the end of April 2024 on the terms and conditions set forth in the Stipulation and Agreed Order Extending Certain Consensual Uses of Cash Collateral Through April 2024 (the "April Stipulation"), which is attached hereto as **Exhibit A**. A redline copy showing changes between the March Stipulation and the April Stipulation is attached hereto as **Exhibit B**.

17. The parties request that the Court enter the April Stipulation in addition to the proposed order granting this Motion.

*Estate Claims and Causes of Action*

18. The chapter 7 estate will assign all estate claims and causes of action[4] against persons that are not current or former insiders (as such term is defined in section 101 of the Bankruptcy Code or otherwise is employed by bankruptcy courts beyond the scope of the definition of the term in section 101 of the Bankruptcy Code) of the Debtors and current or former affiliates of any such persons (such persons, collectively, "Insiders") to the DIP Agent (the "Assigned Claims and Causes of Action"[5]); *provided*, *however*, that the Assigned Claims and

---

[4] Without limiting the scope of DIP Collateral in any respect, such collateral, by way of example only, includes any and all of the Debtors' commercial tort claims, causes of action, substitutions, indemnification rights, and/or actions brought under section 549 of the Bankruptcy Code to recover any postpetition transfer of DIP Collateral, together with all accessions, products, rents, profits, and proceeds of the foregoing. *See* Final DIP Order ¶ 8.

[5] As noted herein, paragraph 8 of the Final DIP Order granted "valid, binding, continuing, continuing enforceable, non-avoidable, and automatically and properly perfected security interests and liens on all real and personal property, whether [then] existing or [thereafter] arising and wherever located, tangible or intangible, of each of the Debtors", including, without limiting the scope of DIP Collateral in any respect, the "Specified Causes of Action Proceeds", which is inclusive of proceeds of any "Recovery Actions" under the Final DIP Order. As used in this Motion, "Assigned Claims and Causes of Action" shall be deemed to exclude claims and causes of action, if any, against any subsequent transferees of an Insider under section 550 of the Bankruptcy Code that comprise "Recovery Actions" under the Final DIP Order; *provided*, *however*, for the avoidance of doubt the proceeds, if any, of any such claims and

15390169

Causes of Action shall not include preference claims which are separately discussed below;[6] *provided*, *further*, *however*, that, for the avoidance of doubt, the Assigned Claims and Causes of Action shall include those claims and causes of action set forth in paragraphs 1-5 on Schedule 1.1B annexed to Schedule 1 attached to that certain proposed sale order filed at Docket No. 585, except to the extent that any such claims are against Insiders.

19. The DIP Agent shall have sole and exclusive authority and standing to investigate, file, prosecute, settle or release, arrange financing for, retain professionals (including counsel), and/or otherwise administer all matters in relation to the Assigned Claims and Causes of Action. The DIP Agent shall use commercially reasonable efforts to monetize the Assigned Claims and Causes of Action.

20. Any net proceeds derived from the Assigned Claims and Causes of Action—after deducting any and all fees, costs, and expenses actually incurred related to the litigation—shall be applied to the balance of the DIP Facility. If and when the DIP Facility has been repaid or otherwise satisfied indefeasibly in full, any further net proceeds from the Assigned Claims and Causes of Action shall be allocated 90% to the DIP Agent and 10% to the chapter 7 estates.

***Select Foreign Non-Debtor Subsidiaries***

21. On March 25, 2024, the Trustee filed her Notice of Intent to Abandon Equity Interests in Certain Non-Debtor Subsidiaries [Docket No. 766] (the "Abandonment Notice"). The

---

causes of action against subsequent transferees of an Insider under section 550 of the Bankruptcy Code that comprise Recovery Actions shall be subject to the Final DIP Order, including paragraph 8 thereunder.

[6] For the avoidance of doubt, the relief requested with respect to Assigned Claims and Causes of Action is exclusive of (x) estate claims and causes of action, if any, against SDC U.S. SmilePay SPV ("SPV"), and (y) estate claims and causes of action, if any, against Camelot Venture Group or any persons affiliated with Camelot Venture Group; *provided*, that, with respect to subpart (y), the movants acknowledge and agree that nothing contained in this Motion shall be deemed to be, or construed as, an admission or waiver by such parties in relation to any rights, claims, defenses, arguments, and the like that they may assert, without prejudice in any respect, in connection with any matters related to these bankruptcy cases or elsewhere.

DIP Agent shall be granted stay relief to exercise remedies on account of the Debtors' pledge of the 65% majority equity interests in certain foreign non-Debtor subsidiaries which were not included in the Abandonment Notice, including entities in Ireland, the United Kingdom, and Canada, but excluding the entity in Australia (the "Select Foreign Subsidiaries").

22. The estate shall retain a 35% minority share in each of the Select Foreign Subsidiaries. For the avoidance of doubt, nothing in the proposed order shall be construed to enlarge, impair, or otherwise modify any applicable rights the estate may have with respect to such minority interests under applicable foreign law.

23. The DIP Agent reserves all rights to seek further relief with respect to other non-debtor subsidiary interests, including the SPV interests pledged as DIP Collateral, at a later time.

***Other Remaining DIP Collateral***

24. The DIP Agent shall be granted relief from the automatic stay to foreclose on any other remaining DIP Collateral,[7] subject to the foregoing limitations:

   a. The Trustee shall retain control of the Debtors' books and records. The Trustee shall grant access to the DIP Agent to the Debtors' books and records as necessary or appropriate to monetize the DIP Collateral, including with respect to the Assigned Claims and Causes of Action, and file appropriate tax returns or like documents, subject to a cost-sharing agreement related to the preservation of the data to be subsequently negotiated by the DIP Agent and the Trustee. The Trustee shall not be deemed to waive any privilege as a result of sharing data access with the DIP Agent.

---

[7] Without limiting the scope of other remaining DIP Collateral in any respect, such collateral, by way of example only, includes any and all of the Debtors' deposit accounts, securities accounts, accounts, receivables, promissory notes, chattel paper, contract rights, instruments, documents, securities, investment property, rights to the payment of money (including, without limitation, tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, present and future intercompany debt, books, records, files, correspondence, general intangibles, and/or intellectual property, together with all accessions, products, rents, profits, and proceeds of the foregoing. *See* Final DIP Order ¶ 8.

15390169

    b.  The proceeds of collection of any notes receivable or accounts receivable (net of any and all fees, costs, and expenses actually incurred related to such receivables) shall be applied to the balance of the DIP Facility.

***Agreed Preference Funding Arrangement***

  25.  The Final DIP Order granted the DIP Agent liens on the proceeds of any avoidance action brought pursuant to chapter 5 of the Bankruptcy Code or applicable state law or foreign law equivalents (the "<u>Avoidance Actions</u>"). The Final DIP Order did not grant a lien on the Avoidance Actions themselves, only the proceeds from the Avoidance Actions.

  26.  The Trustee has negotiated a contingency fee arrangement with Porter Hedges LLP ("<u>PH</u>") for the prosecution of the claims to avoid preferential transfers pursuant to sections 547 and 550 of the Bankruptcy Code against non-Insiders of the Debtors (the "<u>Preference Claims</u>"), pursuant to which PH's compensation will equal 17.5% of any recoveries obtained prior to filing suit and 27.5% of any recoveries obtained after filing suit, net of costs and expenses, if any, incurred in prosecution of the Preference Claims. This arrangement is subject to Court approval by a separate application by the Trustee to expand PH's employment. For purposes of this Motion, the DIP Agent has agreed that PH's contingency fees up to the amounts set forth above, plus the Trustee's statutory compensation under section 326 of the Bankruptcy Code on distributions of the proceeds (if any) of the Preference Claims, may be paid to PH and the Trustee, respectively, out of the net proceeds (if any) from the Preference Claims. The Trustee has agreed that (a) any costs and expenses incurred in prosecution of the Preference Claims that are paid from cash collateral shall be limited to such amounts set forth on an agreed budget with the DIP Agent, and (b) such agreed fees, costs, and expenses (if any) due and payable to PH and the Trustee shall be the only fees and costs incurred by the estate to prosecute the Preference Claims. The net proceeds from the Preference Claims shall be distributed pursuant to the Final DIP Order.

15390169

## RELIEF REQUESTED AND BASIS FOR RELIEF

*Cash Collateral*

27. The Agreed Order permits the parties to modify the budget by written agreements subject to a stipulation and agreed order filed on the docket. The request for entry of the April Stipulation is contemplated and authorized by the Agreed Order.

*DIP Agent Remedies*

28. Paragraph 23(b) of the Final DIP Order provides that the DIP Agent may seek emergency relief to exercise its remedies on at least five business days' notice. The Court "may fashion an appropriate remedy, including permitting the DIP Agent, the DIP Lenders, or the Prepetition Revolving Lender to exercise any or all of their rights and remedies set forth in the [Final DIP Order], the DIP Documents, or under other applicable law." Final DIP Order ¶ 23(c).

29. The DIP Agent requests authority to exercise any and all rights available under the DIP Documents and applicable law. First, the DIP Agent has consented to the Trustee's continued use of cash collateral in accordance with the modified budget, April Stipulation, and proposed order. The proposed continued use of cash collateral is necessary for the Trustee to preserve and protect the value of certain estate assets, including books and records. Second, the chapter 7 estate lacks resources to fund the prosecution of the Assigned Claims and Causes of Action. The claims have speculative value at this time. The compromise with the DIP Agent ensures that the net proceeds from the Assigned Claims and Causes of Action will be applied to the balance of the DIP Facility and gives the estate an interest in the net proceeds of these claims and causes of action in excess of the DIP Facility. Were the DIP Agent to simply foreclose on the Assigned Claims and Causes of Action, the estate may lose any potential upside from these claims and causes of action.

15390169

30. The DIP Agent and the Trustee continue to assess whether positive equity value can be realized from the Select Foreign Subsidiaries, including the costs and expenses that are necessary to realize upon any such positive equity value. Rather than seek to resolve any such issues now, the parties have agreed that the DIP Agent may foreclose on its pledge of the 65% majority interests in the Select Foreign Subsidiaries and the estate will retain its 35% minority interest along with any applicable rights associated with such minority interest.

*Agreed Preference Funding Arrangement*

31. The DIP Agent has a lien on the proceeds of Avoidance Actions, but not on the Avoidance Actions themselves. Therefore, in order to monetize the Preference Claims, the parties need an agreed funding arrangement that will allow for the prompt and economical prosecution of the Preference Claims. The chapter 7 estate does not have cash available to fund the prosecution of the Preference Claims on an hourly basis. By separate application, the Trustee will seek approval to amend PH's employment to include prosecution of the Preference Claims on a contingency fee basis. By this Motion, the only relief sought by the movants is to enforce their agreement regarding the economics associated with prosecuting the Preference Claims, namely a contingency fee up to an amount equal to 17.5% of any recoveries obtained prior to filing suit and 27.5% of any recoveries obtained after filing suit plus PH's actual costs and the Trustee's statutory compensation under section 326 of the Bankruptcy Code, and no other fees and costs. The employment terms remain subject to approval by separate application.

## RESERVATION OF RIGHTS

32. Notwithstanding anything to the contrary herein and for the avoidance of doubt, the exercise of any remedies by the DIP Agent, on behalf of itself and the other DIP Lenders, pursuant to the proposed order is and shall be deemed without prejudice to the future exercise or assertion

of any other rights, remedies, claims, causes of action, defenses, and the like available to it or any DIP Lender under the DIP Orders, the DIP Documents, the DIP Facility, or any other applicable law. The relief requested in this motion is, by definition, limited in scope. For the avoidance of doubt, the DIP Agent has not requested relief with respect to other DIP Collateral such as encumbered estate claims and causes of action and/or the Specified Causes of Action Proceeds (if any). The DIP Agent, on behalf of itself and the other DIP Lenders, expressly reserves the right to seek other or additional relief in relation to the DIP Facility as and when it so chooses, and nothing contained herein shall be construed to prejudice the DIP Agent or the DIP Lenders with regard to such additional requests for relief.

WHEREFORE, the Trustee and the DIP Agent request the Court enter the attached proposed order granting the relief requested and grant the parties such other and further relief as is just.

Dated: May 24, 2024  
       Houston, Texas

Respectfully submitted,

**PORTER HEDGES LLP**

*/s/ Aaron J. Power*  
Joshua W. Wolfshohl, State Bar No. 24038592  
Aaron J. Power, State Bar No. 24058058  
1000 Main Street, 36th Floor  
Houston, Texas 77002  
(713) 226-6000  
(713) 226-6295 (fax)  
jwolfshohl@porterhedges.com  
apower@porterhedges.com

*Counsel for the Chapter 7 Trustee*

**DLA PIPER LLP (US)**

*/s/ Ben Winger*  
James Muenker (Texas Bar No. 24002659)  
845 Texas Avenue, Suite 3800  
Houston, TX 77002  
Telephone: (214) 743-4500  
Facsimile: (214) 743-4545  
Email: james.muenker@us.dlapiper.com

-and-

Rachel Ehrlich Albanese, Esq.  
1251 Avenue of the Americas  
New York, NY 10020  
Telephone: (212) 335-4500  
Facsimile: (212) 335-4501  
Email: rachel.albanese@us.dlapiper.com

-and-

15390169

Ben Winger (admitted *pro hac vice*)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Telephone: (312) 368-4000
Facsimile: (312) 236-7516
Email: benjamin.winger@us.dlapiper.com

*Counsel to the DIP Agent and the DIP Lenders*

15390169

## CERTIFICATE OF SERVICE

      I hereby certify that on May 24, 2024, I caused a true and correct copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on all parties receiving ECF notice and on the parties listed on the attached limited service list by United States first-class mail.

                                            */s/ Aaron J. Power*
                                            Aaron J. Power

15390169

### LIMITED SERVICE LIST

### All service made by US First Class Mail, postage prepaid unless otherwise indicated

**Debtor**
SmileDirectClub, Inc.
1530 Antioch Pike
Antioch, TN 37013

**Debtor's Counsel**
Matthew D. Cavenaugh
Rebecca Blake Chaikin
Genevieve M. Graham
Emily Meraia
Jackson Walker LLP
1401 McKinney Street, Suite 1900
Houston, TX 77010
Via ECF

Joshua A. Sussberg, P.C. (admitted pro hac vice)
Kirkland & Ellis LLP
Kirkland & Ellis International LLP
601 Lexington Avenue
New York, New York 10022
Via ECF

Spencer A. Winters, P.C. (admitted pro hac vice)
Rachael M. Bentley (admitted pro hac vice)
300 North LaSalle Street
Chicago, Illinois 60654
Via ECF

**Chapter 7 Trustee**
Allison D Byman
Byman & Associates PLLC
7924 Broadway, Suite 104
Pearland, TX 77581
Via ECF

**Office of the U.S. Trustee**
Jayson B. Ruff
Christopher R. Travis
Office of the United States Trustee
515 Rusk Street, Suite 3516
Houston, TX  77002
Via ECF

Internal Revenue Services
Centralized Insolvency Operation
1111 Pennsylvania Ave NW
Washington, DC 20004-2541

Internal Revenue Services
Centralized Insolvency Operation
PO Box 7436
Philadelphia, PA 19101-7346

**Counsel for Cluster Holdco LLC**
Benjamin Winger
DLA PIPER
444 West Lake Street, Suite 900
Chicago, Illinois 60606-0089

**20 Largest Creditors**
Wilmington Trust,
National Association
Rodney Square North
1100 North Market Street
Wilmington, DE 19890

Align Technology, Inc.
2820 Orchard Parkway San Jose, CA 95134

2987 Horizon Media, Inc.
75 Varick Street
New York, NY 10013

Foley & Lardner LLP
321 N Clark St, Ste 2800
Chicago, IL 60654-5313

Legility, LLC
216 Centerview Drive 7
City Park, Suite 250
Brentwood, TN 37027

Salesforce.com
PO Box 203141
Dallas, TX 75320-314

15276261v1

| | |
|---|---|
| GOOGLE Inc<br>DEPT 33654<br>PO BOX 39000<br>San Francisco, CA 9413 | PJT Partners LP<br>280 Park Avenue<br>17th Floor<br>New York, NY 10017 |
| LTIMindtree Limited<br>25, Independence Blvd., Suite 401<br>Warren, NJ 07059 | Gen.G esports<br>1615 16th St<br>Santa Monica, CA 9040 |
| Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, NY 10004 | Commission Junction, INC.<br>P.O. Box 735538<br>Dallas, TX 75373-5538 |
| Heraeus Kulzer, LLC<br>300 Heraeus Way<br>South Bend IN 46614- 2517 | Joel R. Daniel<br>jdaniel@premier-service.com |

DASH BPO, LLC
10524 Moss Park Rd Ste 204-349
Orlando, FL 32832

Skadden Arps Slate
Meagher & Flom, LLP
360 Hamilton Ave
White Plains, NY 10601

Ernst & Young U.S. LLP
P.O. Box 773712
Chicago, IL 60677-3712

Merkle Inc.
7001 Columbia Gateway Dr.
Columbia, MD 21046

Globant LLC
875 Howard Street
Suite 320
San Francisco, CA 9410

Troutman Pepper
Hamilton Sanders LLP
PO BOX 933652
Atlanta, GA 31193-3652

15276261v1