## FIN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| SMILEDIRECTCLUB, INC., *et al.* | Case No. 23-90786 (CML) |
| Debtors. | (Jointly Administered) |

## EMERGENCY MOTION TO COMPEL ORRICK TO COMPLY WITH SUBPOENA

This motion seeks emergency relief. Relief is requested not later than February 3, 2025 at 1:00 p.m (prevailing Central Time).

If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested. A hearing will be conducted on this matter at a time and place to be scheduled by the Court. Participation at the hearing will only be permitted by an audio and video connection.

Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's homepage. The meeting code is "Judge Lopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.

Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's homepage. Select the case name, complete the required fields, and click "Submit" to complete your appearance.

Pursuant to Federal Rule of Bankruptcy Procedure 9016 and Federal Rules of Civil Procedure 37 and 45, Interested Parties David Katzman, Steven Katzman, Susan Greenspon Rammelt, Kyle Wailes, and Richard Schnall (together, "SDC's Former Officers and Directors"), together with Camelot Venture Group (collectively with SDC's Former Officers and Directors, "Interested Parties"), move to compel Orrick, Herrington & Sutcliffe LLP ("Orrick") to comply

with the Interested Parties' subpoena ("Subpoena").[1]  In support of this motion and objection, Interested Parties state as follows:[2]

## I.    <u>PRELIMINARY STATEMENT</u>

1.    Orrick has refused to comply with the Interested Parties' properly issued Subpoena. The discovery sought by that Subpoena is directly relevant to the resolution of the *Renewed Application for Entry of an Order Authorizing the Retention and Employment of Orrick, Herrington & Sutcliffe LLP as Special Litigation Counsel to the Chapter 7 Trustee* [Dkt. No. 957] ("Renewed Application").  Consequently, this Court should compel Orrick to comply.

2.    Orrick has tried to conceal its actions for months.  Since at least June 2024, it has acted as the Trustee's shadow counsel both here and in two pending securities class actions in Tennessee (the "Securities Plaintiffs" in the "Securities Cases"[3]).  As shadow counsel in the Securities Cases, Orrick purported to resolve an alleged discovery dispute with the Securities Plaintiffs.  This discovery dispute arose from pre-bankruptcy document productions made by the Debtor and Interested Parties' shared counsel in the Securities Cases.  Despite the fact that the discovery dispute concerned productions made by both the Debtor and the Interested Parties, Orrick, now acting as the Debtor's counsel in the Securities cases, did not include Interested Parties in its "resolution" discussions.

---

[1] All exhibits referenced herein are attached to the *Declaration of Michael B. Silverstein in Support of Interested Parties' Emergency Motion to Compel Orrick to Comply with Subpoena*.  The at-issue Subpoena is Exhibit 1.  Orrick's Responses and Objections is Exhibit 2.

[2]  The Interested Parties have noticed the hearing on this motion for the same date and time as the hearing on the Trustee's Renewed Application for Retention of Orrick.

[3]  The Securities Cases are *Franchi v. SmileDirectClub, Inc., et al.*, Case No. 3:19-cv-00962 (M.D. Tenn.) (Consol.), and *In re: SmileDirectClub, Inc. Secs. Litig.*, Case No. 19-1169-IV (Tenn. Ch. Ct.) (Consol.)

3.      And no wonder; Orrick went beyond resolving the purported discovery dispute and in fact switched sides to cooperate with the Securities Plaintiffs.  Orrick did so by advising the Trustee regarding waiving the Debtors' privileges—at least those that the Debtors were empowered to waive—and admitting that, "at ***Orrick's direction***, [a vendor] granted the Securities Plaintiffs" unfettered access to a litigation database created by shared pre-petition counsel for the Debtors and Interested Parties (the "Database").  [Decl. of Jeffrey W. McKenna in Supp. of Ch. 7 Tr.'s Omnibus Reply in Supp. of Renewed Orrick Retention Application, Dkt. No. 978 ("McKenna Declaration") ¶ 7 (emphasis added).]

4.      In "directing" this misconduct, Orrick entered into a common-interest relationship with the Securities Plaintiffs that put them on both sides of the Securities Cases.  In those cases, one of the Debtors and Interested Parties remain co-defendants.  Orrick sought to resolve a purported discovery dispute on behalf of Debtors as defendants in those cases.  By siding with the Securities Plaintiffs, Orrick violated its ethical duties of confidentiality and reviewed privileged information that would disqualify it from representing the Trustee.

5.      Notwithstanding Orrick's recent and carefully chosen admissions, neither the Court nor the Interested Parties know the full extent of Orrick's actions, communications, or agreements with the Securities Plaintiffs or which documents Orrick and the Securities Plaintiffs have reviewed in the Database.  The Interested Parties, therefore, served the Subpoena to get that story.

6.      This Court can consider a wide range of factors when evaluating whether to approve special counsel retention under Section 327.  Among those factors, it can consider that counsel's conduct in connection with this matter.  The Interested Parties argue that Orrick's conduct regarding the Database and alignment with Securities Plaintiffs warrant denial of the Renewed

Application. They also argue that this Court should adjourn the Renewed Application until they have the facts about Orrick's conduct.

7.     Without this information, this Court will lack a complete record, and will be deciding whether to permit the retention of Orrick—who has engaged in work behind the scenes to provide privileged information to the Debtors and Interested Parties' adversaries—without a full picture. This Court and the Interested Parties should have that full picture.

8.     Accordingly, this Court should grant this Motion to Compel ("Motion").[4]

## II.     <u>FACTUAL BACKGROUND</u>

9.     Orrick's access to and decision to give the Securities Plaintiffs improper access to privileged documents have been the subject of briefing and a December 20, 2024 hearing. [*See* Dkt. 954 (*Emergency Mot. to Continue Hr'g on Secs. Pls.' Emergency Mot. for Order Confirming Ch. 7 Tr. is Authorized and Empowered to Waive the Debtors' Attorney/Client Privileges* [Dkt. Nos. 920, 940]).] Without unnecessary repetition, and for the Court's convenience, Interested Parties will summarize certain facts that are particularly relevant here.

### A.     <u>Orrick acted as Trustee's counsel in a discovery dispute in the Securities Cases.</u>

10.     The Interested Parties and one of the Debtors are defendants in the Securities Cases pending in Tennessee state and federal court. The Securities Plaintiffs filed the Securities Cases in 2019. Before the bankruptcy, the Interested Parties and Debtors retained common counsel to defend them in the Securities Cases. [Dkt. 951-1 ("12/9/2024 M. Silverstein Decl.") ¶ 1.]

---

[4] As discussed below, Jeffrey McKenna has agreed to sit for a deposition regarding his declaration in support of the Trustee's Omnibus Reply. Given the impending hearing on the Renewed Application, the Interested Parties file this Motion before that deposition so that this Court has adequate time to consider all of their arguments, and to give Orrick adequate time to respond to the Motion. Further, McKenna's declaration does not discuss all of topics the Subpoena seeks information regarding, so even a fulsome deposition—which seems unlikely given Orrick's objections to the Subpoena—would not fully resolve this Motion. Regardless, after the deposition, the Interested Parties will apprise the Court which—if any—issues remain.

To facilitate their defense, the Interested Parties and Debtors hired Consilio, LLC, an e-discovery vendor, to assist in document discovery. [*Id.* ¶ 3; Dkt. ¶ 10.] As the Interested Parties have previously detailed, the Interested Parties' common counsel used Consilio to create a curated database of documents for the common cause of defending against the Securities Cases. [*See* Dkt. 951 ¶¶ 11-13; Dkt. 973 ¶¶ 13–14.]

11.  The Securities Cases are stayed as to the Debtor named in the cases, but Debtor is still a party.

12.  In March 2024—after this Court appointed the Trustee—the Securities Plaintiffs approached the Trustee regarding purported pre-bankruptcy discovery disputes. [*See* Dkt. 977 ("Trustee Decl.") ¶ 12; Dkt. 976 ¶¶ 11, 16.] The Securities Plaintiffs had purported concerns about the pre-bankruptcy productions' completeness and privilege assertions. [*See* Dkt. 951-4 at 5 (5/9/2024 C. Wood E-Mail).] The Debtor and Interested Parties' common counsel made these pre-bankruptcy productions and privilege assertions on behalf of all their clients. [Dkt. 973 ¶ 12.] In fact, the Securities Plaintiffs raised these issues with the Debtor and Interested Parties' common counsel six months before Debtor's bankruptcy petition. [Dkt. 974-2 (3/27/2023 M. Schwartz Letter).] But the Trustee and Securities Plaintiffs did not include the Interested Parties' counsel in these discussions. Instead, the Trustee "delay[ed] a response to the Securities Plaintiffs for several months." [Byman Decl. ¶ 12.]

13.  The eventual response came from Orrick. In June 2024, the Securities Plaintiffs asked the Trustee to state whether or not she would assert privilege in an upcoming deposition. [Dkt. 951-5 at 2 (6/11/2024 C. Wood E-Mail).] The Trustee's counsel at Porter Hedges LLP referred the Securities Plaintiffs to Orrick. [Dkt. 951-6 at 2–3 (6/12/2024 J. Wolfshodhl E-Mail).] Porter Hedges stated that Orrick was "generally up to speed" on the "housing of documents and

the redaction/privilege issues we have been discussing." [*Id.*]  Porter Hedges then stated that attorneys at Orrick would be "running point on this." [*Id.*]

14.    Orrick then told the Securities Plaintiffs that the Trustee would not instruct the deponent "to refrain from answering any question on the ground that it may call for the disclosure of communications protected by SmileDirectClub's attorney-client privilege." [*Id.* at 1 (6/14/2024 N. Poli email).]  Further, Orrick designated the deponent's transcript as "Highly Confidential" pursuant to the protective order in the Federal Securities Case and reserved the right to review the transcript and claw-back any privileged material. [*Id.*]

15.    Neither Orrick nor any other representative of the Trustee informed the Interested Parties' counsel about these discussions.  Instead, the Interested Parties learned of the waiver through Securities Plaintiffs' counsel, the night before the deposition. [*See* Dkt. 951-7 (6/14/2024 C. Wood e-mail).]

16.    Neither Orrick nor any other representative of the Trustee attended this deposition.

17.    After the deposition, the Interested Parties' counsel told Porter Hedges that the Trustee's privilege waiver implicated "many layers of privilege." [Dkt. 951-9 (6/15/2024 D. Rammelt E-Mail).]  The Interested Parties' counsel further told Porter Hedges that the Database included documents covered by privileges that the Trustee could not waive—including privileges owned jointly or solely by the Interested Parties. [12/9/2024 M. Silverstein Decl. ¶ 14.]  Porter Hedges assured the Interested Parties' counsel that the Trustee was not waiving any privilege that she did not have authority to waive. [*Id.*; *see also* Dkt 951-10 (7/12/2024 A. Power E-mail).]

18.    Despite this warning, Orrick provided the Securities Plaintiffs with access to the Database.  According to Securities Plaintiffs, in June 2024, Securities Plaintiffs and the Trustee agreed to provide Securities Plaintiffs with access to the Database. [Dkt. 920 ¶ 23.]  Orrick handled

these negotiations. [Dkt. 951-3 ("Trustee Dep. Tr.") at 27:1-16.] Orrick then entered into an agreement with Consilio for Database access and received a copy of the Database supposedly without Benesch's work-product on September 19, 2024. [McKenna Decl. ¶¶ 3–8.] Securities Plaintiffs received a similar copy of the Database on October 25, 2024. [*Id.* ¶ 8.] But before Consilio finished creating these copies of the Database, both Orrick and Securities Plaintiffs had "limited access" to the Interested Parties' copy of the Database. [*Id.* ¶ 7.] The Interested Parties do not know what Orrick considered to be the Interested Parties' counsel's work product, or what "limited access" means.

19.     The Interested Parties have been unable to obtain discovery regarding Orrick's discussions or agreements with Securities Plaintiffs. Accordingly, the Interested Parties do not know: (1) to what extent Orrick and the Securities Plaintiffs were aware that the Database contained jointly and solely privileged documents; (2) what efforts Orrick and the Securities Plaintiffs made to avoid review of confidential/privileged information; or (3) what agreements or *quid-pro-quo* was reached for access to the Database.

20.     On the latter point, the Trustee believed that Orrick had entered into some kind of cost-sharing arrangement with the Securities Plaintiffs. [Trustee Dep. at 34:4-15.] The Trustee specifically stated that the Securities Plaintiffs' agreement is with Orrick, not her. [*Id.* at 34:14-15.]

21.     When the Interested Parties learned about the Securities Plaintiffs' clandestine access, they objected. After the Interested Parties objected, the Securities Plaintiffs brought an emergency motion in this Court to justify its conduct. [*See* Dkt. 920.]

**B.**     **The Trustee lacked knowledge of Orrick's actions, and the Securities Plaintiffs refused to comply with discovery.**

22.     The Interested Parties sought discovery regarding the Securities Plaintiffs' discussions with the Trustee and their access to the Database.  [*See* Dkt. 954 ¶¶ 14–26.]  They noticed a deposition of the Trustee, and subpoenaed the Securities Plaintiffs' law firms and Consilio.

23.     The Securities Plaintiffs' law firms refused to appear for their depositions and filed motions to quash after the date and time noticed for their depositions.  [*Id.* ¶ 17.]  Those motions remain pending.

24.     At Consilio's deposition, the Consilio representative could not answer questions regarding which documents Orrick and the Securities Plaintiffs have reviewed in the Database, or which individuals specifically had access to the Database.  [*Id.* ¶ 24.]  The representative referred to another Consilio employee.  [*Id.*]  The Interested Parties noticed that employee's deposition, but the Securities Plaintiffs have objected.

25.     The Securities Plaintiffs also objected at Consilio's deposition—and the Trustee's—asserting that it had a common-interest privilege with the Trustee.  [*See id.* ¶¶ 22, 25.]  No party has offered any explanation of—or evidence to support—such a privilege.

26.     Further, at the Trustee's deposition, even though Orrick has acted as her agent, she could not testify about Orrick's activities undertaken on her behalf.  She could not testify which documents Orrick has reviewed in the Database:

```
     Q.  To your knowledge, has Orrick looked at any
documents in the Consilio database?
     A.  Yes.
     Q.  Do you know what documents they've looked at?
     A.  No.
```

[Trustee Dep. Tr. at 21:3-7.]  She could not testify whether anyone else has requested access to the

Database:

```
     Q.  Other than the Orrick law firm and Mr. Wood and
any of the lawyers for the Securities Plaintiffs, have
any other parties requested access to the Consilio
database?
     A.  I don't -- no, I don't think so.
```

[*Id.* at 26:19-23.]  She testified that Orrick, not her, could answer questions regarding discussions

and negotiations with Securities Plaintiffs:

```
     Q.  In speaking with Aaron yesterday, he had
mentioned -- and, Aaron, I'm not taking words out of
your mouth; I'm just generalizing -- but basically that
you're obviously very busy, and that you kind of turned
it over to Orrick and delegated to Orrick, working with,
having discussions with, negotiating with the
plaintiffs' securities lawyers about accessing documents
in the Consilio database.
          Is that a -- is that a fair statement?
     A.  Yes.
     Q.  So if I want to figure out what was discussed
and what limitations were placed on access or anything
like that, I'd have to talk to the Orrick lawyers,
right?
          MR. WOOD:  Objection to form.
          THE WITNESS:  Yes.
```

[*Id.* at 27:1-16.]  She could not testify what limits, if any, Orrick placed on Securities Plaintiffs'

access to the documents in the Database:

> Q.  Do you know, Ms. Byman, whether Orrick or anyone on your behalf made any attempt to limit or restrict the types of access that the Securities Plaintiffs had to the Consilio database?
>
>             MR. POWER:  Objection; form.
>
>             THE WITNESS:  Other than what I've already explained, that my understanding is they were only granted access to a certain portion of all of the debtors' records that are in Consilio, I do not know of any additional specific restrictions.

[*Id.* at 33:10-19.] And she could not testify regarding the agreement between Orrick and Securities Plaintiffs on access to the Database:

> Q.  Did you -- do you know whether they did pay for access, is the first question?
>
> A.  I do not think they have paid anything yet.  I believe there is an agreement to share costs, and that agreement is with Orrick.  It's not an agreement with me.

[*Id.* at 34:10-15.]

### C.   **The Interested Parties subpoenaed Orrick after the Trustee could not answer the questions posed during her deposition.**

27.    After the Trustee's deposition, the Interested Parties noticed and served a subpoena to Orrick.  [Ex. 3 (12/9/2024 Orrick subpoena.]  The subpoena sought documents and testimony regarding: (1) discussions with Consilio and Securities Plaintiffs regarding access to the Database; (2) discussions with Securities Plaintiffs generally; (3) any contracts with Consilio; (4) which documents Orrick and the Securities Plaintiffs accessed in the Database; and (5) the decisions to waive privilege and give Securities Plaintiffs access to the Database.  [*See id.* at 9–10.]  The next day, the Trustee filed the Renewed Application.

28.     The Interested Parties and Orrick agreed to meet and confer regarding this subpoena.  But right before they met and conferred, this Court granted the Interested Parties' Emergency Motion to Continue Hearing on Securities Plaintiffs' Emergency Motion.  [Dkt. 959.] Orrick and the Interested Parties, therefore, agreed to wait until after this Court's status conference on Securities Plaintiffs' Emergency Motion before meeting and conferring.  [Ex. 4 at 2–3 (12/16/2024 A. Fiorella E-Mail).]

29.     On December 20, 2024, this Court stated that it would not decide the Securities Plaintiffs' Emergency Motion, deferring to the United States District Court for the Middle District of Tennessee.  But the Renewed Application remained pending.

30.     Accordingly, on December 31, and then again on January 6, the Interested Parties asked to meet and confer with Orrick regarding their first subpoena.  [*Id.* at 1–2 (1/6/2025 M. Meuti E-Mail).]   Orrick expressed confusion, as it stated it was "not aware of any ongoing contested matter relevant to the information sought in your subpoena."   [*Id.* at 1 (1/6/2025 K. Askew E-Mail).]  Orrick and the Interested Parties' counsel met and conferred on January 8, 2025. The Interested Parties' counsel explained why it believed the information sought in the subpoena was relevant to the Trustee's Renewed Application.  The parties agreed that, for the sake of clarity, the Interested Parties would serve a new subpoena.

31.     The Interested Parties served the Subpoena on January 9, 2025.  The Subpoena has some overlap with the first subpoena, but the Subpoena aims at information relevant to the Renewed Application, rather than information solely related to the Securities Plaintiffs' dispute.

32.     The Subpoena seeks the following information:

| Information Sought | Discovery Requests |
|---|---|
| **Discussions with Securities Plaintiffs regarding the Database** | Request for Production Numbers 2–5<br>Deposition Topic Numbers 3, 4, 6, 9, 10, 11<br>Interrogatory Numbers 3, 5, 8, 11, 12<br>Request for Admission Numbers 1–8, 14–15 |
| **Discussions with Consilio regarding access to the Database** | Request for Production Number 1<br>Deposition Topic Numbers 2, 5<br>Interrogatories Number 9 |
| **Agreements regarding access to the Database** | Request for Production Numbers 6<br>Deposition Topic Numbers 8, 9, 11<br>Interrogatory Numbers 3, 8<br>Request for Admission Numbers 5–10 |
| **Documents reviewed in the Database** | Request for Production Numbers 8, 10–12<br>Deposition Topic Numbers 12–15<br>Interrogatory Numbers 1, 2, 6<br>Request for Admission Numbers 18–21 |
| **Parties that have access to the Database** | Request for Production Number 7<br>Interrogatory Number 7 |
| **Efforts taken to protect confidential or privileged information in the Database** | Request for Production Number 9<br>Interrogatory Numbers 11, 12<br>Request for Admission Numbers 22–27 |

33.     While the Interested Parties could have served Interrogatories and Requests for Admission on the Trustee, she had already stated under oath that she did not have knowledge on the topics in the Subpoena.

**D.     The Interested Parties objected to the Renewed Application based on Orrick's acquisition and dissemination of the Database.**

34.     One day after serving the Subpoena, the Interested Parties filed their Motion to Adjourn the Renewed Application/Objection.  [Dkt. 973.]  In it, the Interested Parties argue that this Court should wait for a complete record before ruling on the Renewed Application.  [*Id.* ¶ 8.]

Based on the information currently available, Orrick appears to have taken information generated through the Debtor and Interested Parties' joint-defense relationship and given it to their shared adversaries: the Securities Plaintiffs.  [*Id.* ¶¶ 46–49.]  And it did so through some form of a common-interest relationship with those adversaries.  [*Id.*]  Thus Orrick both placed one of the Debtors on both sides of the Securities Cases and violated its ethical duties of confidentiality by disclosing jointly privileged information.  [*Id.*]

35.     Further, Orrick's access to the Database threatens to prejudice the Interested Parties. The Trustee seeks to retain Orrick to prosecute claims against Debtors' former officers and directors, which include many of the Interested Parties.  The Database contains information that is privileged solely as to those Interested Parties.  So now Orrick has access to confidential, privileged information the Debtors have no rights to, and can use it against the Interested Parties in a future trial.  [*Id.* ¶ 50.]

36.     The Interested Parties asked the Court to wait to rule on the Renewed Application until the Court has a complete record on Orrick's conduct, including information sought through the Subpoena.

37.     But, if the Court chooses not to wait, the Interested Parties asked this Court to deny the Renewed Application based on the same arguments discussed above.

**E.     Even though the Trustee deferred questions to Orrick, Orrick refused to comply with the Subpoena.**

38.     Orrick served its Responses and Objections on January 15, 2025.  [Ex. 2.] Orrick stated that it would not produce any documents or sit for a deposition.  [*Id.* at 2–3.] Orrick stated three primary objections, and repeated them for each production request and noticed deposition topic.  ***First***, Orrick objected on the basis of attorney/client privilege and the work-product doctrine.  Orrick did not explain how the Interested Parties' requests on Orrick's

communications with parties besides the Trustee are privileged. **Second**, Orrick objected that the Subpoena did not seek information relevant to any contested matter. But that objection is unsupportable. The Interested Parties objected in part because of Orrick's access to and dissemination of the Database. Requests seeking information related to that access and dissemination are plainly relevant to that objection. **Third**, Orrick claimed that the requests were unduly burdensome on a non-party when the information could be sought elsewhere. Orrick ignored that the Trustee and Consilio could not answer questions about Orrick, the Securities Plaintiffs refused to comply with their subpoenas, and Consilio refused to answer questions on the basis of an unsubstantiated common-interest privilege.

39. Orrick also refused to respond to any Interrogatories or Requests for Admission, asserting that it need not answer those requests because it is not a party. Orrick did not explain why it deserves the protections of a non-party when it has intentionally inserted itself into this matter as shadow counsel and now finally seeks to represent the Trustee through the Renewed Application—perhaps *the* most-important party in this proceeding.

40. Orrick and the Interested Parties' counsel met and conferred on January 17, 2025. Orrick provided little additional information regarding its objections. Regarding privilege, Orrick stated that it believes its communications with Consilio are privileged. Regarding relevance, Orrick conceded that the Subpoena sought information relevant to the Interested Parties' arguments; instead, Orrick argued that the Interested Parties' arguments against the Renewed Application were not relevant to whether the Trustee should be permitted to retain Orrick.

**F.**  **The Trustee, in a pleading signed by Orrick, does not argue irrelevance and contradicts the record.**

41. After the meet-and-confer session, Orrick filed the Trustee's Omnibus Reply in Support of the Renewed Application. [Dkt. 976.] The Omnibus Reply focuses on the DIP Agent's

objections, devoting only one section to the Interested Parties' arguments.  [*Compare id.* ¶¶ 23–44 *with id.* ¶¶ 45–57.]

42.     The Trustee *never* argues that the Interested Parties' arguments are irrelevant. Instead, she argues only that the Interested Parties' arguments are wrong.  [*See id.* ¶¶ 45–57.]

43.     Further, the Trustee's filing leaves more questions than answers.  The filing clashes with previous filings and other, albeit limited evidence the Interested Parties received to date.

44.     The Interested Parties have identified the following inconsistencies so far:

45.     **Orrick's role in giving the Securities Plaintiffs access to the Database**: Orrick and the Trustee assert that the Trustee decided to give the Securities Plaintiffs to the Database and that she then delegated that task to Orrick.  [Dkt. 976 ¶¶ 16; Trustee Decl. ¶¶ 12-13.] But the Trustee testified that she had no knowledge regarding the negotiations to give the Securities Plaintiffs access to the Database, and that Orrick handled those negotiations.  [Trustee Dep. Tr. at 27:1-16.]  Further, Porter Hedges stated that Orrick attorneys would be "running point" on the discovery dispute with Securities Plaintiffs.  [*See* Dkt. 951-6 (June 2024 emails between Orrick, Porter Hedges, and Securities Plaintiffs' counsel).]

46.     **The scope of Orrick's retention**:  The Trustee asserts that Orrick's engagement is limited to investigating, prosecuting, and negotiating settlements of claims against the Debtors' former officers and directors.  [Dkt. 976 ¶ 4.]  But Orrick also negotiated the resolution of a purported discovery dispute in the Securities Cases and designated a deposition transcript confidential on behalf of the Debtor-party to the Securities Cases.  [*See* Dkt. 951-6 (June 2024 E-Mails between Orrick, Porter Hedges, and Securities Plaintiffs' counsel).]

47.     **The Trustee's knowledge of the Interested Parties' access to the Database**: In the Omnibus Reply's supporting declarations, the Trustee and Orrick claim that they did not

know that the Interested Parties' counsel had access to the Database until July 25, 2024. [Trustee Decl. ¶¶ 11; McKenna Decl. ¶ 4.]  But the Interested Parties communicated with Porter Hedges—the Trustee's court-approved counsel—regarding the documents in the Database in June 2024.  [12/9/2024 M. Silverstein Decl. ¶ 14.]

48.     **The Trustee's knowledge of privileged documents in the Database:**  The Trustee asserts that she believed she had unilateral authority to waive privilege for any documents in the Database.  [Trustee Decl. ¶ 8.]  But the Interested Parties' counsel told Porter Hedges in June 2024 that any privilege waiver by the Trustee implicated privileges beyond those the Trustee could waive.  [*See* Dkt. 951-9 (6/15/2024 D. Rammelt E-Mail); 12/9/2024 M. Silverstein Decl. ¶ 14.]

49.     **The Trustee's knowledge of a joint-defense arrangement between the Interested Parties and the Debtors**:  The Trustee stated that she is not aware of any joint-defense arrangement between the Debtors and the Interested Parties.  [Trustee Decl. ¶ 15.]  But the Trustee is aware—from previous filings and here and dealings with the Interested Parties' counsel—that the Debtors and Interested Parties had shared counsel in the Securities Cases.

50.     **The extent of Orrick's and Securities Plaintiffs' access to the Database**:  Consilio testified that Orrick communicated with it about the Database in April 2024, and that it had given Orrick access to a copy of the Database, stripped of work product.  [Consilio Dep. Tr. at 27, 31–32.]  But the Trustee does not mention any discussions before the July 2024 contract with Consilio.  [Trustee Decl. ¶ 10.]  Further, Orrick stated that Consilio gave it and the Securities Plaintiffs access to the original Database in August 2024.  [McKenna Decl. ¶ 6.]

51.     Should this Court grant this Motion, the Interested Parties will seek clarity on the above—and any other—inconsistencies.

52.     After filing the Omnibus Reply, McKenna from Orrick and the Trustee agreed to sit for depositions limited to the content of their respective declarations.  [*See* Ex. 5 (E-mail chain regarding McKenna deposition); Ex. 6 (E-mail chain regarding Trustee deposition).]   But McKenna's declaration is limited to when Orrick executed its agreement with Consilio, Orrick's discovery that Interested Parties' counsel had access to the Database, and the broad fact that Orrick and the Securities Plaintiffs gained access to the original Database and supposedly clean copes of the Database.  [*See generally* McKenna Decl.]  McKenna's declaration does not touch on Orrick's communications with the Securities Plaintiffs, agreements between Orrick and Securities Plaintiffs, or which documents Orrick and the Securities Plaintiffs have reviewed, all key topics in the Subpoena.  Given the representations regarding the scope of McKenna's deposition, it appears unlikely that McKenna will answer questions on those remaining Subpoena topics.

## III.     **LEGAL STANDARD**

53.     Federal Rule of Civil Procedure 45 applies to bankruptcy proceedings through Federal Rule of Bankruptcy Procedure 9016.

54.     The scope of discovery under Rule 45 is the same as the scope of discovery under Rule 26: "any nonprivileged matter that is relevant to any parties claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1); *see Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019).  The party seeking discovery bears the burden of showing that the discovery falls within the scope of Rule 26.  *See Earl v. Boeing Co.*, 515 F. Supp. 3d 590, 599 (E.D. Tex. 2021).

55.     But the party resisting discovery bears the burden of showing "how the requested discovery is overly broad, unduly burdensome, or oppressive."  *Apollo MedFlight, LLC v. BlueCross BlueShield of Texas*, No. 2:18-CV-166-Z-BR, 2020 WL 520608, at *2 (N.D. Tex. Jan. 13, 2020).

56.     Further, while discovery from opposing counsel is generally disfavored, it is not verboten.  *See Nguyen v. Excel Corp.*, 197 F.3d 200, 208–09 (5th Cir. 1999).  Indeed, the fact that the subject of discovery is a lawyer "does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices."  *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003) (Sotomayor, J.).  Courts in the Fifth Circuit consider the following factors when considering whether to allow discovery to be propounded upon opposing counsel: (1) whether the information cannot be otherwise obtained, (2) whether the information is relevant and non-privileged; and, (3) whether the information is crucial to the discovering party's case.  *Nguyen*, 197 F.3d at 208–09 (citing *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986)); *In re Pro. Fee Matters Concerning Jackson Walker L. Firm*, No. 23-645, --- B.R. ----, 2024 WL 4774402, at *1 (Bankr. S.D. Tex. Nov. 13, 2024).

## IV.   <u>ARGUMENT</u>

57.     This Court should grant the Motion because the Interested Parties seek relevant and nonprivileged information from Orrick.  Orrick has not and cannot show otherwise.  It asserts that as both opposing counsel and a nonparty, this Court should spare it from discovery regarding its conduct.  But all of the factors regarding opposing counsel discovery favor compliance, and Orrick's third-party status is nominal at best.

58.     *First*, the Subpoena seeks relevant and crucial discovery.  As stated in their Motion to Continue/Objection, this Court can and should consider whether Orrick has any interests adverse to the Debtors or has engaged in any improper conduct in relation to this matter.  [Dkt. 973 ¶ 44.]  In connection with this matter, Orrick has placed the Debtors on both sides of the Securities Cases, violated ethical duties of confidentiality, and exposed itself to privileged information it can improperly use against the Interested Parties.  This Court should have the full scope of Orrick's

conduct before deciding the Renewed Application, which is exactly what the Subpoena seeks to do.

59. **Second**, the Interested Parties cannot obtain the information from other sources. They have tried, and have been stymied.  Indeed, even the Trustee—on whose behalf Orrick supposedly has been acting—lacked personal knowledge regarding Orrick's conduct.

60. **Third**, the Subpoena seeks nonprivileged information.  The Subpoena focuses on Orrick's dealings with third parties, not the Trustee.  And any work-product protections give way to the Interested Parties' substantial need for the information.

61. **Fourth**, Orrick's role as opposing counsel negates its hyper-technical role as a nonparty.  Their opposing-counsel role, in fact, favors the forms of discovery Orrick did not even respond to—Interrogatories and Requests for Admission.  If Orrick responded fully to those requests and the Requests for Production, a deposition might not be necessary, a compromise some courts prefer with opposing-counsel discovery.

62. **Finally**, Orrick's boilerplate objections are meaningless, and should be disregarded.

63. Orrick has acted as the Trustee's shadow counsel since at least June 2024, but refuses to answer discovery regarding its conduct.  This Court should not abide, and should instead compel Orrick to provide discovery.

A. **Orrick's attempts to resist discovery are unconvincing.  Orrick cannot avoid relevant, nonprivileged discovery by claiming opposing-counsel and nonparty status.**

64. The Interested Parties' objections to the Renewed Application center on Orrick's acquisition and dissemination of the Database.  Opposing counsel or not, "the proposed discovery focuses on matters concerning which [Orrick] is a percipient witness and a principal actor." *In re Chevron Corp.*, 749 F. Supp. 2d 141, 163 (S.D.N.Y. 2010) (permitting discovery into opposing

counsel). This alone warrants discovery. As Orrick conceded during the last meet-and-confer process, the Subpoena seeks factual information relevant to those arguments.

65.     Instead, Orrick argued that the Interested Parties' objections are legally irrelevant to whether or not this Court should grant the Renewed Application. Just because Orrick "believes that [it] will or should prevail" in the Renewed Application does not render the Subpoena irrelevant. *Apollo MedFlight*, LLC, 2020 WL 520608, at *2. In the Omnibus Reply, Orrick and the Trustee did not argue that the Interested Parties' objections were irrelevant; instead, they argue that the Interested Parties are wrong. Orrick, therefore, has no support for its relevance objection to the discovery.

66.     But even if it tried to debate the legal and factual relevance of the Subpoena, Orrick would fail. The information the Interested Parties seek is both factually and legally relevant to the Renewed Application.

67.     ***Discovery into discussions and agreements with Securities Plaintiffs regarding the Database is relevant to whether Orrick (1) has a prohibitive conflict/adverse interest and (2) violated its professional duty to protect confidential information.*** Professionals retained under Section 327 must "be free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate or which might impair the high degree of impartiality and detached judgment expected of them during the course of administration." *In re W. Delta Oil Co., Inc.*, 432 F.3d 347, 355 (5th Cir. 2005). This inquiry prevents the employment of professionals who cannot represent the best interests of the estate, and have violated professional duties in connection with the estate. *See* 11 U.S.C. § 327(a), (e); *In re Universal Bldg. Prods.*, 486 B.R. 650, 660–61 (Bankr. D. Del. 2010). As explained above and in the Interested Parties' Objection, Orrick's deal with Securities Plaintiffs to give them access

to the Database: (1) placed the Debtors on both sides of the Securities Cases, creating a conflict; and (2) violated its duty to protect jointly privileged information. [*See* Dkt. 973 ¶¶ 46–49.] Their discussions and agreements with the Securities Plaintiffs, then, are plainly relevant to these arguments because it is through these discussions that Database access was given.

68. ***Discovery into discussions and agreements with Consilio regarding the Database is relevant to whether Orrick: (1) has a prohibitive conflict/adverse interest; (2) violated its professional duty to protect confidential information; and (3) accessed the Interested Parties' solely privileged information***. In addition to the standards under Section 327 discussed above, counsel can be disqualified from a case if it has accessed the other side's privileged information that "is so sensitive that disqualification is necessary to ensure a fair trial." *In re Meador*, 968 S.W.2d 346, 351 (Tex. 1998). Discussions and agreements with Consilio, therefore, bear on all of the Interested Parties' objections. They go to conflicts/adverse interests because Consilio gave both Orrick and the Securities Plaintiffs access to the Database—the center point of the conflictual relationship created by Orrick. Further, these discussions will show to what extent Orrick asked Consilio to prevent the disclosure of either jointly or solely privileged information—the former bearing on Orrick's professional duties and the latter with whether Orrick has accessed information that would disqualify it.

69. ***Discovery into documents reviewed in the Database is relevant to whether Orrick violated its professional duty to protect confidential information and accessed the Interested Parties' solely privileged information***. The only way to know whether Orrick has seen privileged information that would disqualify it from pursuing claims against the Interested Parties is to know which documents it reviewed. Further, if the Securities Plaintiffs have reviewed jointly privileged

material, that will demonstrate that Orrick did nothing to fulfill its professional obligations to protect this material.

70.     ***Discovery into parties that have access to the Database is relevant to all of the Interested Parties' objections***.  The Interested Parties do not know whether Orrick gave any other parties access to the Database.  When they asked the Trustee, she could not answer.  To the extent any other parties have access to the Database, Orrick could have created additional conflicts, violated its professional duties again, and engaged in other conduct that might disqualify it from prosecuting claims against the Interested Parties.

71.     ***Discovery regarding efforts to protect confidential and privileged information in the Database are relevant to whether Orrick violated its professional duty to protect confidential information and accessed the Interested Parties' solely privileged information***.  If Orrick took no steps to prevent itself or the Securities Plaintiffs from viewing solely or jointly privileged information, this fact would help demonstrate its violation of its professional duties and its disqualification to serve as counsel.

72.     These topics have become even more relevant and crucial given the Trustee's Omnibus Reply.  As detailed above, the Omnibus Reply does nothing to quell the Interested Parties' concerns.  If anything, it added more confusion to an already murky picture.  This confusion necessitates more discovery.  For example, the Trustee stated that Orrick merely facilitated Securities Plaintiffs' access to the Database.  But her deposition testimony and the documents suggest that Orrick had a much-more-robust role.  This role included representing the Debtors to resolve purported discovery disputes with the Securities Plaintiffs—the role that led to Securities Plaintiffs' Database access in the first place.  So now the Interested Parties cannot even be sure that they know what they thought they knew.

73.     This makes discovery from Orrick crucial.  It is Orrick's conduct that has created this dispute.  Orrick has worked behind the scenes for months, and much remains unknown about its conduct.  But what the Interested Parties do know is that Orrick resolved a purported pre-petition discovery dispute by providing privileged information to the Debtor and Interested Parties' shared adversary.  It is this conduct that forms the basis for the Interested Parties' arguments against the Renewed Application.  *See Doe v. Town of Greenwich*, No. 3:18CV01322(KAD), 2019 WL 4267692, at *5 (D. Conn. Sept. 10, 2019) (permitting opposing-counsel discovery when opposing-counsel's conduct "forms part of the basis for plaintiff's claim"); *Chevron Corp. v. Donziger*, No. 11 CIV. 0691 LAK, 2013 WL 1087236, at *31–32 (S.D.N.Y. Mar. 15, 2013), *adhered to on reconsideration,* No. 11 CIV. 0691 LAK, 2013 WL 1975439 (S.D.N.Y. May 14, 2013).

74.     The Interested Parties and this Court should have the information from the horse's mouth.  Orrick created these issues, so it should be Orrick who answers them.

**B.     The sought information is not available from other sources.**

75.     The Interested Parties have tried to obtain the information they seek elsewhere, but have been stymied.  They deposed the Trustee and asked her questions regarding Orrick's conduct, but she could not answer because she lacked personal knowledge.  She stated that Orrick would be able to answer those questions.  The Interested Parties attempted to obtain discovery from the Securities Plaintiffs, but they refused to comply with their duly noticed subpoenas.  And the Interested Parties deposed Consilio, but the Consilio representative could not answer questions regarding Orrick's Database access because the representative did not know the answers.  The Interested Parties noticed a deposition of another Consilio employee—the one that the corporate representative said could testify about these matters.  But the Securities Plaintiffs have objected to

- 23 -

that deposition notice.  Even if that additional deposition occurs, Consilio cannot testify regarding Orrick's and the Securities Plaintiffs' discussions.

76.     Courts will permit discovery from opposing counsel when a party tried to seek discovery from other sources but could not obtain it.  *See, e.g.*, *Nguyen*, 197 F.3d at 208–09; *Sec. & Exch. Comm'n v. Contrarian Press*, No. 16-CV-6964 (VSB), 2020 WL 7079484, at *4 (S.D.N.Y. Dec. 2, 2020).  And discovery from Consilio and the Securities Plaintiffs has proved largely fruitless.  Consilio could not respond meaningfully to questions, and the Securities Plaintiffs refused to comply with their subpoenas and have sought to interfere with further Consilio discovery.  There is no guarantee that further attempts to get the information from these parties will be fruitful, so the fact that other parties may also have the information is meaningless as to Orrick.  *See id.*  And even if the Interested Parties obtain that information, they will not get it until after the currently scheduled hearing on the Renewed Application.

77.     And discovery from the Trustee has proved similarly fruitless.  At her deposition, she repeatedly referred to Orrick and stated that Orrick would have to answer questions about its conduct.  The Fifth Circuit has permitted opposing-counsel discovery under similar circumstances.  In *Nguyen*, the Fifth Circuit affirmed an order allowing plaintiffs to depose defense counsel partially because the plaintiff tried and could not obtain information from other sources.  *Nguyen*, 197 F.3d at 208–09.  The plaintiff deposed the defendant's executives, but the defendant's executives "offered only 'vague and non-specific' explanations" and could not respond without conferring with counsel.  *Id.* at 209.  And the defendants conceded that defendants' counsel was the only other source of information.  *Id.*  Consequently, the Fifth Circuit concluded that plaintiff could depose opposing counsel because defendant "could not respond meaningfully to the questions to be posed."  *Id.*

- 24 -

78.     So too here.  The Interested Parties deposed the Trustee and asked her questions about Orrick's conduct.  She could not meaningfully respond to those questions because she lacked knowledge.  Instead, she told the Interested Parties that they would have to get that information from Orrick.  The Interested Parties have done just that, but Orrick is trying to avoid its client's referral.

79.     Further, the fact that the Trustee does not know what its agent was doing should give the Court pause.  Orrick was acting on her behalf, but she does not know what actions it took.  And then, in her Omnibus Reply, she provides information that contradicts the documents the Interested Parties have been able to obtain—such as Orrick's role in the purported discovery dispute.  The fact that Orrick has been acting without apparent guidance or oversight just demonstrates that discovery from other parties besides it would be fruitless.  Apparently, only Orrick knows what it has done.

80.     In short, the Interested Parties are stuck in a loop.  The Trustee sends the Interested Parties to Orrick.  Orrick kicks the can to the Securities Plaintiffs.  The Securities Plaintiffs' firms point their fingers back to the Trustee.  And round it goes.  At some point, someone must be compelled to provide responses.  Since the Trustee and Consilio lack personal knowledge, and this Court has no authority over the Securities Plaintiffs, the only party left is Orrick.

### C.     The Subpoena seeks non-privileged information.

81.     Orrick has not demonstrated that the information the Interested Parties seek is privileged.  The party asserting a privilege bears the burden of proving it.  *See In re Liprie*, 480 B.R. 658, 663 (W.D. La. 2012).  But here, Orrick offered nothing to substantiate its privilege assertions.  In its Responses and Objections, it simply parrots that each document request and deposition topic "seeks information protected by the attorney-client privilege and the attorney work product protection."

82.     But even if Orrick tried, it could not substantiate its claims.  The Subpoena—in the most general terms—seeks information regarding Orrick's discussions with third parties, specifically Consilio and the Securities Plaintiffs, and information regarding Orrick's and the Securities Plaintiffs' access to documents.   The former is not privileged because the communications are with a third party, not Orrick's client.  Indeed, the Securities Plaintiffs are still adverse to one of the Debtors—Orrick's proposed future client—so how Orrick can have a privilege with counsel opposed to the Debtor is at best a mystery, and more likely a legal impossibility.

83.     Further, Orrick notably omits any assertion of a common-interest privilege from its objections.  Indeed, though Securities Plaintiffs and Consilio each asserted such a privilege, no one to date has substantiated it.  Orrick must either defend such an assertion—something they do not do—or let it fall by the wayside.

84.     And regarding Consilio, Orrick asserted that communications with Consilio fall under work-product protection.  But work-product protection, unlike attorney/client privilege, is not absolute.  *See Enron Corp. Savings Plan v. Hewitt Assocs., L.L.C.*, 258 F.R.D. 149, 161 (S.D. Tex. 2009).   Work product that does not comprise an attorney's "mental impressions, conclusions, opinions, or legal theories" is "ordinary work product."  *Id.*   A party can discover ordinary work product if it has a substantial need and cannot obtain the information otherwise without undue hardship.  *Id.*  One common form of substantial need is when the discovery relates to matters that "can only be shown by the documents themselves."  *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1241 (5th Cir. 1982).  Such is the case here.  The Interested Parties need to know about Orrick's arrangements with Consilio regarding access to the Database, and the only way to get that information—without the substantial burden of continuing to fight

against Consilio and the Securities Plaintiffs—is to obtain documents between Orrick and Consilio.

85.     Further, the Interested Parties' requests for search terms and document logs does not interfere with work-product protection.  Disclosing search terms and documents reviewed "goes to the underlying facts," not any work product.  *FormFactor, Inc v. Micro-Probe, Inc.*, No. C-10-03095 PJH JCS, 2012 WL 1575093, n.4 (N.D. Cal. May 3, 2012) (citing cases).  And even if it did implicate work-product issues, the Interested Parties have a substantial need for that information because that is the only way to figure out whether Orrick reviewed and provided access to privileged information.  *Id.*

### D.     Orrick's hyper-technical status as a nonparty does not prevent other forms of discovery.

86.     Orrick claims that it should not have to respond to the Interrogatories or Requests for Admission because it is a nonparty.  But this hyper-technical argument ignores the on-the-ground facts.

87.     Orrick is functionally a party.  It seeks to represent the Trustee, the most important party in this case.  In fact, it has signed pleadings recently on behalf of the Trustee.  Trying to disguise itself as a nonparty, then, is unconvincing.

88.     Further, its status as counsel for a party suggests that discovery typically unavailable to nonparties is warranted.  Some courts have requested that a party try other methods of discovery—including those typically reserved for parties—before trying to depose opposing counsel.  *See, e.g.*, *Kelling v. Bridgestone/Firestone, Inc.*, 153 F.R.D. 170, 171 (D. Kan. 1994).  These courts prefer that parties request documents, and serve interrogatories and requests for admission before deposing opposing counsel  *Id.*

89.     If this Court grants the Interested Parties' Motion to Continue, they would certainly be willing to receive documents and fulsome discovery responses before evaluating the need for a deposition. Of course, should Orrick not provide fulsome responses, a deposition would still be necessary.

### E.     The Court should overrule Orrick's boilerplate objections.

90.     In response to each Request for Production and Deposition Topic, Orrick copy-pasted the same standard objections.  But such boilerplate objections are not proper.

91.     Objections to discovery must be "made with specificity, and the responding party has the obligation to explain and support its objections." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 578 (N.D. Tex. 2018).  Objections that have no support behind them are boilerplate, and preserve nothing.  *See id.* at 581.

92.     Here, Orrick has repeated the same stock objections over and over.  It provides no basis for them, other than their own words.  Absent actual evidence supporting these objections, they are unsupported objections that this Court should ignore.  *See id.* at 580.

## V.     CONCLUSION

93.     Interested Parties, therefore, respectfully request that this Court compel Orrick to comply with the Subpoena.

94.     Interested Parties reserve the right to supplement this Motion with additional information.

Dated:  January 24, 2025

Respectfully submitted,

**BENESCH, FRIEDLANDER,**
    **COPLAN & ARONOFF, LLP**

 */s/ Michael B. Silverstein*
David A. Rammelt (*admitted pro hac vice*)
71 South Wacker Drive, Suite 1600
Chicago, Illinois  60606
Telephone:    (312) 212-4949
Facsimile:    (312) 767-9192
E-Mail:    drammelt@beneschlaw.com

*-and-*

Michael D. Meuti (*admitted pro hac vice*)
Andrew G. Fiorella (*admitted pro hac vice*)
127 Public Square, Suite 4900
Cleveland, Ohio  44114
Telephone:    (216) 363-4500
Facsimile:    (216) 363-4588
E-Mail:    mmeuti@beneschlaw.com
        afiorella@beneschlaw.com

*-and-*

Michael B. Silverstein (*admitted pro hac vice*)
41 South High Street, Suite 2600
Columbus, Ohio  43215
Telephone:    (614) 223-9300
Facsimile:    (614) 223-9330
E-Mail:    msilverstein@beneschlaw.com

*Attorneys for the Interested Parties*

## CERTIFICATION OF SERVICE

I hereby certify that on the 24th day of January 2025, I caused a true and correct copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on all parties receiving ECF notice.


By: */s/ Michael B. Silverstein*


Dated: January 24, 2025