IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: <br><br> SMILEDIRECTCLUB, INC., *et al.*,[1] <br><br> Debtors. | Chapter 7 <br><br> (Previously Chapter 11) <br><br> Case No. 23-90786 (CML) <br><br> (Jointly Administered) |

### DIP AGENT'S EMERGENCY MOTION TO COMPEL DISCOVERY

**Emergency relief has been requested. If the Court considers the motion on an emergency basis, then you will have less than 21 days to answer. If you object to the requested relief or if you believe that the emergency consideration is not warranted, you should file an immediate response.**

**Emergency Relief is requested by no later than February 3, 2025.**

Cluster Holdco LLC, in its capacity as administrative agent and collateral agent (the "DIP Agent"), by and through its respective undersigned counsel, hereby submits this *Emergency Motion to Compel Discovery* (this "Motion") from (i) Allison D. Byman, in her capacity as the Chapter 7 Trustee (the "Trustee") and (ii) Orrick, Herrington & Sutcliffe LLP ("Orrick"). In support thereof, the DIP Agent respectfully states as follows.

### PRELIMINARY STATEMENT[2]

1. As detailed in the DIP Agent's Objection, there are serious issues and questions with the Trustee's second application to retain Orrick as proposed special litigation counsel. Among other infirmities, Orrick may have a conflict of interest with the estate as a result of its handling of discovery issues with the Securities Plaintiffs on behalf of the Debtors.

---

[1] A complete list of each of the Debtors in these chapter 7 cases may be obtained on the website of the Debtors' solicitation agent (as defined herein) at https://restructuring.ra.kroll.com/SmileDirectClub. The location of Debtor SmileDirectClub, Inc.'s principal place of business and the Debtors' service address in these chapter 7 cases is 1530 Antioch Pike, Antioch, Tennessee 37013.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the Requests or the DIP Agent's Objection, as applicable and as defined below.

1

2. Notably, Orrick's retention in this case is fraught with secrecy and disclosure issues. Orrick has acted as shadow counsel since February 2024, as Orrick's retention was not disclosed to this Court and parties in interest until the filing of the First Orrick Retention Application in August 2024. The Trustee explained that she intentionally delayed filing the First Orrick Retention Application because she was concerned that the disclosure of Orrick's role may have "negatively impact[ed]" her ability to use the DIP Parties' cash collateral for her own purposes. Contemporaneously with the First Orrick Retention Application, the Trustee filed the Nonconsensual Priming Litigation Finance Motion which improperly sought to prime the DIP Lenders' liens in plain violation of this Court's Final DIP Order. After this Court denied the First Orrick Retention Application and the Nonconsensual Priming Litigation Finance Motion, the Trustee—advised by Orrick—appealed the Court's ruling. However, after this Court indicated that it was not inclined to consider a renewed retention application while an appeal of the First Orrick Retention Appeal was still pending, the Trustee quickly dismissed the appeal.

3. Retention applications under section 327 of the Bankruptcy Code demand full disclosure of all potential connections in order to, among other things,[3] fully vet that professionals representing the Debtors' estates are free of any adverse interests. This disclosure obligation is so manifestly important that professionals are required to continuously supplement their disclosure obligations even after their retention is approved. Here, Orrick's role in facilitating document access to the Securities Plaintiffs—a party adverse not only to the Individual Defendants but also the Debtors themselves—was only just recently discovered by the

---

[3] *See In re C&C Demo, Inc.*, 273 B.R. 502, 507 (Bankr. E.D. Tex. 2001) (quoting *In re Olsen Indus., Inc.*, 222 B.R. 49, 60 (Bankr. D. Del. 1997) ("A court may find a disclosure violation without holding that it would have found the law firm not disinterested given timely and complete disclosure."). To quote Judge Parker in *C&C Demo*: "[i]t is *simply imperative that every doubt which might arise in the mind of a debtor's attorney in this area is construed in favor of disclosure*, and every attorney seeking employment under § 327 must exercise dedicated diligence in disclosing and, if necessary, supplementing a prior disclosure, regarding any 'connections' which he may have with the debtor, creditors, other parties in interest *or risk the consequences of any failure in that regard*." *Id*. at 508 (emphasis added).

DIP Agent during the deposition of the Trustee in connection with the Comfort Motion. The thorny privilege, confidentiality, and document access issues in the Securities Litigation, in conjunction with the still, at best, ***partially and selectively disclosed role*** of Orrick for nearly a year working on these chapter 7 cases, raises serious questions about whether Orrick can even be properly retained.

4. Accordingly, the DIP Agent propounded discovery requests on both the Trustee and Orrick to investigate what work Orrick has performed on behalf of the Trustee and the Debtors' estates in these chapter 7 cases, and on what issues Orrick has advised the Debtors or the Trustee. It cannot seriously be disputed that these are "connections" to the Debtors for purposes of Bankruptcy Rule 2014. Yet, remarkably, both the Trustee and Orrick have elected to ***withhold disclosure***, refusing to produce any non-privileged documents or respond to interrogatories regarding the scope of Orrick's prior and ongoing work for the Debtors (beyond quoting the Retention Application) or related commercial relationships with third parties like Consilio, the Securities Plaintiffs, and possibly others.

5. During separate meet and confer meetings with the Trustee's counsel and Orrick, counsel for the DIP Agent learned that Orrick had provided the Trustee two detailed invoices of the legal services it provided to the Trustee from February 2024 through at least July 2024, which invoices were directly responsive to the DIP Agent's document request. DIP Agent's counsel offered to consider accepting, in lieu of the invoices, a supplemental interrogatory response detailing issues and orders that Orrick advised on, similar to the type of information that would be found on a privilege log or that would be submitted as part of a customary fee application in bankruptcy cases. Neither Orrick nor the Trustee were willing to provide that, nor a redacted copy of the invoices prepared by Orrick, instead asserting that (i) the other party was

3

responsible to provide that discovery to the DIP Agent, (ii) the requested information was irrelevant, and (iii) such unredacted information is subject to the attorney-client privilege, and it would be too much work to provide a redacted version.

6. As discussed in this Motion, the Trustee and Orrick are wrong as to the scope of required disclosures of "connections" under Bankruptcy Rule 2014 and the attorney-client privilege. Both parties' refusal to cooperate and instead point the finger at the other simply further muddies the Trustee's proposed retention of Orrick. Moreover, the Trustee and Orrick's reliance on privilege is improper where it prohibits the disclosures that are required to be made under Bankruptcy Rule 2014 on a redacted basis.

7. In its Omnibus Reply, the Trustee states that no such disclosures need to be made because everything Orrick has done has been in furtherance of prosecuting the Insider Claims. *See* Omnibus Reply ¶ 32. But this merely assumes the conclusion. The Trustee's contentions should not and cannot be blindly accepted without a full and fair disclosure of the facts supporting that conclusion, and the newly disclosed partial facts are contrary to the Trustee's position. Indeed, the Trustee and Orrick *first disclosed in their Omnibus Reply* alleged activity associated with the Consilio database that was not previously disclosed to the parties in interest or the Court in connection with the First Orrick Retention Application, the litigation and hearing on the Comfort Motion, and the Second Orrick Retention Application. As to the Comfort Motion, that litigation (including the Trustee's deposition) and hearing was focused almost exclusively on apparent issues associated with the Consilio database and Orrick's access to, and disclosure of, privileged and confidential information contained in that database. Neither section 327 of the Bankruptcy Code nor Bankruptcy Rule 2014 permit selective, untimely disclosures like this—yet with every filing in connection with the proposed retention of Orrick, the DIP

Agent, the Court, and all parties in interest learn something new about Orrick's "connections" to the Debtors.

8. For the avoidance of doubt, the DIP Agent is simply making a good-faith inquiry as to what Orrick has advised the Debtors and/or Trustee on, not the contents of that advice. The discovery requested, particularly the request for all invoices and similar statement of work that the Trustee received from Orrick, is directly relevant to the Second Orrick Retention Application and the requirements under section 327 of the Bankruptcy Code and Bankruptcy Rule 2014 for full disclosure of "connections" from the professional seeking to be employed to ensure, among other things, that such professional is free from conflicts. Moreover, the information requested with this Motion is not unusual and is standard as part of any privilege log or bankruptcy fee application for a retained professional. There are outstanding questions regarding whether Orrick has an actual conflict of interest with the estates or otherwise has an adverse relationship, and the discovery requested should shed further light on Orrick's "connections" to the Debtors and role in these chapter 7 cases.[4]

9. Accordingly, this Court should compel the production of Orrick's invoices for services provided to the Trustee (redacted for any privileged information), similar to a privilege log (without disclosing the substance of the advice or any other privileged information). The services Orrick has actually rendered to the Debtors or their estates since February 2024 are *per*

---

[4] For example, the filing of the Second Orrick Retention Application in the midst of the disputed issues raised by the Individual Defendants—and currently still being decided in state and federal courts in Tennessee—suggests, among other things, a potential conflict of interest is present that could lead to Orrick being disqualified after it begins prosecuting the Insider Claims. Such a disqualification could materially prejudice the prosecution of Insider Claims—and repayment of the DIP Obligations. But instead of being fully transparent about Orrick's role in these cases and with the Securities Plaintiffs, and waiting for the Tennessee courts to decide the issue, the Trustee instead seeks to quickly push through an approved retention of Orrick, despite these serious concerns. The better approach is to fully develop a factual record to confirm that Orrick is qualified to act as conflict-free counsel for the Trustee and ferret out any issues now before prosecuting the Insider Claims in earnest. The Trustee and Orrick's refusal to fully comply with narrow, targeted discovery to simply answer what work Orrick has performed for the last eleven months suggests that the Trustee and Orrick have something to hide.

*se* "connections" to the Debtors for Bankruptcy Rule 2014 purposes. Without such information, the DIP Agent, the Court, and all parties in interest will be unable to assess whether and to what extent the proposed retention can meet the retention requirements under the Bankruptcy Code and Bankruptcy Rules.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

11. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

12. This Motion seeks relief pursuant to Federal Rules of Civil Procedure 26, 33, 34 and 37, as made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 7026, 7033, 7034, and 7037.

## GENERAL BACKGROUND

13. On December 10, 2024, the Trustee filed the *Renewed Application for Entry of an Order Authorizing the Retention and Employment of Orrick, Herrington & Sutcliffe LLP as Special Litigation Counsel to the Chapter 7 Trustee* [Dkt. No. 957] (the "Second Orrick Retention Application").

14. On January 10, 2025, the DIP Agent filed its objection to the Second Orrick Retention Application [Dkt. No. 972] (the "DIP Agent's Objection"). That same day, the DIP Agent served the Trustee with its *First Set of Interrogatories and Requests for the Production of Documents to the Chapter 7 Trustee* (the "Trustee Requests") and served Orrick with its *First Set of Interrogatories and Requests for the Production of Documents to Orrick, Herrington & Sutcliffe LLP* (the "Orrick Requests," together with the Trustee Requests, the "Requests"). True and correct copies of the Requests are attached hereto as **Exhibit A** and **Exhibit B** respectively.

6

15. The DIP Agent's Requests to the Trustee and Orrick were identical, consisting of three interrogatories (the "Interrogatories") and one request for document production (the "Document Request"). Interrogatory No. 1 sought a general description of the scope of work that Orrick has performed on behalf of the Trustee and/or the Debtors' estates, regardless of whether that work was performed in connection with the scope of services identified in the Second Orrick Retention Application. The Document Request sought copies of invoices for the services Orrick had performed on behalf of the Trustee and/or Debtors' Estates. The DIP Agent's discovery requests were narrowly tailored and intentionally did not call for the disclosure of any privileged information.

16. On January 15, 2025, the Trustee served its responses and objections to the Trustee Requests (the "Trustee Responses and Objections"). On January 16, 2025, Orrick served its responses and objections to the Orrick Requests (the "Orrick Responses and Objections" together with the Trustee Responses and Objections, the "Responses and Objections"). True and correct copies of the Trustee Responses and Objections and the Orrick Responses and Objections are attached hereto as **Exhibit C** and **Exhibit D** respectively.

17. Both the Trustee and Orrick objected to Interrogatory No. 1 on the grounds that such information is protected by the attorney-client privilege. Both parties then restated the scope of work delineated in the Original Retention Application to retain Orrick, adding only that "Orrick worked on preserving and securing electronically stored information belonging to the chapter 7 estate."

18. Similarly, both the Trustee and Orrick refused to produce *any* documents in response to the Document Request, asserting that any such documents were (i) protected by the

7

attorney-client privilege and (ii) not relevant to the Second Orrick Retention Application because Orrick is being retained on a contingency-fee basis.

19. On January 15, 2025, counsel for the DIP Agent and counsel for the Trustee held a meet and confer to discuss the Trustee's Responses and Objections. During the meet and confer, counsel for the Trustee explained that there was an invoice from Orrick in existence, but that counsel did not see the value and relevance in producing a redacted copy given the retention of Orrick on a contingency fee basis. Counsel for the DIP Agent explained that the scope of services is relevant to (i) ensuring that Orrick has not waded into other conflicted or privileged waters and (ii) whether Orrick is actually working in a limited capacity as special counsel under section 327(e) of the Bankruptcy Code and is not working on matters unrelated to its retention. Further, the DIP Agent proposed an alternative if a redacted copy of the invoice was too burdensome for the Trustee – that a general, bulleted item list of all of the orders and issues that Orrick had advised the Trustee on (without disclosing the actual advice provided) may be sufficient. Nevertheless, on January 17, 2025, the Trustee's counsel confirmed that it would not provide either a redacted invoice or bulleted item list responsive to the DIP Agent's Request, and refused to reconsider their position.

20. On January 21, 2025, counsel for the DIP Agent and Orrick held a meet and confer to discuss Orrick's Responses and Objections. During the meet and confer, Orrick refused to consider providing a redacted copy of any invoices. Again, the DIP Agent offered that a list of issues and orders that Orrick had advised on may have been sufficient to resolve the discovery dispute. While Orrick agreed to review a list of potential issues and orders that the DIP Agent wanted clarity on, Orrick ultimately refused to provide answers to whether it had advised the Trustee on such issues and continued to refuse to produce copies of the invoices.

21. On January 17, 2025, the Trustee filed its reply in support of the Second Orrick Retention Application [D.I. 976] (the "Omnibus Reply"). The Omnibus Reply provided some additional information about the scope of Orrick's representation, supported, in part, by a new declaration from the Trustee. But the Trustee should not be permitted to trickle out only those Orrick "connections" that serve her parochial litigation agenda. All parties in interest and the Court are entitled to review and understand exactly what Orrick has been doing on behalf of the Debtors or the Trustee—these are per se "connections with the [Debtors]" for Bankruptcy Rule 2014 purposes—to permit, among other things, a full and fair assessment of whether that prior, undisclosed work in these chapter 7 cases and the Securities Litigation creates a conflict or adverse interest that disqualifies the proposed retention as Special Litigation Counsel.

22. On January 27, 2025, the DIP Agent and the Individual Defendants deposed the Trustee related to new issues raised in the Omnibus Reply. During the deposition, the Trustee seemed to draw a distinction between "advice" she received from Orrick and mere "discussions" she had with Orrick. *See* Byman Dep. Tr. at 84:15–85:9.[5] The Trustee admitted, however, that whenever she communicated with Orrick, it was in their capacity as her lawyers. *See id.*; *see also* 106:3–19. The Trustee appears to be attempting to draw a distinction between "advice" and "discussions" to somehow insulate Orrick from its apparent involvement in dealing with the Securities Plaintiffs concerning access to the Consilio Database and possibly other undisclosed matters. Of course, if Orrick is the Trustee's counsel, then whether it is "advice" or "discussions," Orrick is clearly in the middle of these issues. Orrick, the Trustee, and Consilio have also apparently entered into an undisclosed "Maintenance Agreement," pursuant to which Orrick is financially responsible for amounts due and payable to Consilio. *Id.* at 78:1–81:1, 105:16–106:2. Further, it is possible that Orrick has a side-deal with the Securities Plaintiffs

---

[5] The Byman Deposition transcript and exhibits therewith are attached to the Winger Declaration.

9

themselves to fund payments to Consilio. *See id*. at 80:10–81:13. All of these are "connections with the [D]ebtors" that must be fully disclosed. The Orrick invoices would show the nature and extent of Orrick's role in the Securities Litigation. The tripartite maintenance agreement should also be disclosed.

23. The hearing on the Second Orrick Retention Application was originally scheduled for February 3, 2025 at 1:00 p.m. CST (the "Hearing"), and has now been converted by the Court to a Status Conference (the "Status Conference"). The Trustee's and Orrick's refusal to provide the requested information severely prejudices the DIP Agent. These documents and answers are necessary in order for the DIP Agent to properly evaluate whether Orrick can meet the requirements under section 327 of the Bankruptcy Code and Bankruptcy Rule 2014.

## BASIS FOR RELIEF

24. The DIP Agent requests that the Court enter an order compelling the Trustee and Orrick to produce all documents responsive to the DIP Agent's Request for Production No. 1, specifically requesting "all invoices or similar statements of work for services Orrick performed on behalf of the Trustee and/or the Debtors' estates" as set forth herein. *See* Fed. R. Civ. P. 37(a)(3)(B)(iii) and (iv).

## ARGUMENT

I. **Legal Standard**

25. The Second Orrick Retention Application represents a contested matter pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure. Pursuant to Federal Rules of Bankruptcy Procedure 9014(c) and 7026, Federal Rule of Civil Procedure 26(b) is applicable to discovery in connection with the DIP Agent's objection. A "party may move to compel a discovery response when a party fails to provide a complete answer to an interrogatory or fails to

produce requested documents." *Ries v. Galmor Family Ltd. P'ship (In re Galmor)*, Nos. 18-20209-RLJ-7, 18-20210-RLJ-7, 20-02003, 2021 Bankr. LEXIS 3208, at *7 (Bankr. N.D. Tex. Nov. 19, 2021) (citing Fed. R. Civ. P. 37(a)(3)(B), 37(a)(4)).

26. Rule 34 of the Federal Rules of Civil Procedure requires that the respondent state, for each item or category requested, that the inspection will be permitted or "state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). Moreover, an "objection must state whether any responsive materials are being withheld on the basis of that objection." *Id*. at 34(b)(2)(C). Rule 33 of the Federal Rules of Civil Procedure provides that when responding to interrogatories, the responding party must answer each interrogatory "separately and fully in writing under oath."

27. Rule 37 of the Federal Rules of Civil Procedure, made applicable to these proceedings by Rule 7037 of the Federal Rules of Bankruptcy Procedure, provides that a party may move for an order compelling discovery for failing to produce documents pursuant to Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iv). In addition, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

28. Pursuant to Rule 37, the party moving to compel discovery has the burden of establishing that the requested information is relevant under Rule 26(b)(1). Parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Ries,* 2021 Bankr. LEXIS 3208, at *7 (citing Fed. R. Civ. P. 26(b)(1)); *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 465–66 (5th Cir. 2015). "[I]nformation within the scope of discovery need not be admissible in evidence to be discovered." Fed. R. Civ. P. 26(b)(1).

11

29. In responding to a motion to compel, a "party resisting discovery is swimming against a strong upstream policy current [which] encourages *more* rather than less discovery, and discourages obstructionist tactics." *Lowe v. Veliz (In re Tex. Bumper Exch., Inc.)*, 333 B.R. 135, 139–40 (Bankr. W.D. Tex. 2005). The party opposing discovery has the burden of showing why the discovery should be prohibited, and the Trustee and Orrick therefore must "provide specific bases for each objection to avoid its requested discovery obligations." *Ries*, 2021 Bankr. LEXIS 3208, at *7 (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1484–85 (5th Cir. 1990)).

30. "Application of the attorney-client privilege is a question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents." *Ictech-Bendeck v. Waste Connections Bayou, Inc.*, No. CV 18-7889, 2024 WL 962313, at *6 (E.D. La. Mar. 6, 2024) (citations omitted). "Determining the applicability of the privilege is a highly fact-specific inquiry, and the party asserting the privilege bears the burden of proof." *Id.* "Attorney-client privilege is not presumed and ambiguities as to whether the elements of a privilege claim have been met are construed against the proponent." *Id.*

**II. Attorneys' Fee Invoices Can Be Redacted So They Are Not Privileged.**

31. Retained professionals regularly submit invoices in connection with fee applications under sections 328 and 329 of the Bankruptcy Code, redacted appropriately for privilege, without any implication that the privilege has been waived. *In re Rheuban*, 121 B.R. 368, 384–85 (Bankr. C.D. Cal. 1990); *see, e.g., Matter of Evangeline Ref. Co.*, 890 F.2d 1312, 1326 (5th Cir. 1989) (discussing that under Rule 2016 of the Federal Rules of Bankruptcy Procedure, fee applications require "detailed statements"), *In re Sylvester*, No. 18-12064, 2022 WL 2229772, at *4 (Bankr. E.D. La. June 21, 2022) (court ruled on whether services were reasonable and necessary based on review of invoices attached to fee application); *In re*

12

*Lincolnshire Campus, LLC*, No. 10-34176, 2010 WL 7698392, at *1 (Bankr. N.D. Tex. Aug. 3, 2010) (interim compensations procedures order ordering that debtors and creditors' committee professionals must submit detailed time entries and summaries of time in each monthly fee statement, redacted appropriately for privilege). In fact, the Trustee's counsel has submitted several fee applications and monthly fee statements in this case, attaching redacted invoices for the services performed. *See, e.g.,* Docket Nos. 782; 794; 814, Ex. 4 (redacting time entries for the months of March and April).

33. The Responses and Objections incorrectly assert that no invoices need to be provided in discovery because Orrick is being retained on a contingency fee basis and therefore the invoices and time entries are irrelevant. The Trustee and Orrick miss the point on relevancy. Section 327 of the Bankruptcy Code and Bankruptcy Rule 2014 are focused on issues beyond compensation. That is, the invoices are being sought ***not*** to examine whether the fee charged for the amount of work is reasonable—which amount the DIP Agent suspects is already easily into the millions on an hourly basis—but rather to understand the nature and scope of Orrick's representation of the Debtors and the Trustee for timely disclosure, conflicts, adverse interest, and Bankruptcy Rule 2014 compliance purposes.[6]

33. For example, the DIP Agent is entitled to know whether Orrick has provided advice on any issues that may have created a conflict of interest between Orrick and the Debtors' estates. The invoices may show that Orrick has connections with other parties based on the issues or orders on which it has advised the Debtors or the Trustee. Notably, the DIP Agent offered to consider forgoing production of any invoices if the Trustee and Orrick instead

---

[6] For the avoidance of doubt, Bankruptcy Rule 2014 requires professionals to disclose "connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." These disclosure obligations are ongoing and continuing even after retention is approved.

13

provided a general list of issues, orders, and other items that Orrick provided advice on, without disclosing the substance of that advice. But, the Trustee and Orrick have also rejected that offer.

34. Specifically, through the discovery request and now this Motion, the DIP Agent seeks the invoices from the Trustee and Orrick to ideally answer whether Orrick advised on:

- the various, agreed cash collateral orders between the Trustee and the DIP Agent;
- the Final DIP Order;
- issues regarding DIP Collateral, including which assets comprise DIP Collateral and monetization of DIP Collateral;
- resolution of any administrative claim or general unsecured claim (including but not limited to the claims of Consilio, Securities Plaintiffs, or Align);
- answering or otherwise resolving discovery requests from the Securities Plaintiffs or any other party (excluding the Individual Defendants and DIP Agent);
- disposition of the estates' assets;
- other litigation claims unrelated to the Insider Claims;
- appealing the denied litigation financing motion;
- the information access motion with Microsoft;
- the Securities Plaintiffs' comfort motion;
- any other pleadings, notices, orders, or other documents filed on the docket after the Conversion Date; and
- any other issues related to administration of the chapter 7 estates and its assets that have not yet been disclosed.

35. Answering these questions will allow this Court, the DIP Agent, and other parties in interest to evaluate whether Orrick has performed work and services outside the scope of special counsel under section 327(e), whether the Second Orrick Retention Application is untimely, and whether Orrick has a disqualifying adverse interest for purposes of the proposed retention. DIP Agent's Obj. ¶¶ 36–38, 46–49; *see* Fed. R. Civ. P. 33(a)(2) ("An interrogatory may relate to any matter that may be inquired into under Rule 26(b)"). An affirmative answer to

14

any or all of these questions will inform whether the Second Orrick Retention Application cannot meet the applicable requirements.

36. Deposition testimony in connection with the Second Orrick Retention Application further highlights why these questions must be answered. For example, the Trustee was asked about whether she consulted counsel in March of 2024 after the Securities Plaintiffs contacted her regarding a discovery dispute. Byman Dep. Tr. at 84:6–21. The Trustee responded affirmatively. *Id.* at 85:1–3. When asked who she spoke with, the Trustee confirmed that she spoke with Orrick. *Id.* However, she asserted that she did not get "advice" from Orrick, but rather just "discussed it" with them. *Id.* at 85:4–9. This response leaves a significant gray area on material facts and legal issues as to the work Orrick performed on behalf of the Debtors and/or the Trustee. It also raises the question that such a "discussion" was work performed outside the scope of investigating and pursuing the Insider Claims. Or whether such "discussions" could even be eligible for attorney-client privilege protection insofar as no legal advice was given as part of those communications. Orrick's invoices would quickly shed light on whether Orrick, for instance, considered these conversations to be "advice" to the Debtors' estates.

37. Without the invoices, the DIP Agent will be prejudiced and unable to fully evaluate whether Orrick meets the retention requirements. Further, failing to provide responses to the Request does not comport with the requirement of full disclosures under section 327 of the Bankruptcy Code and Bankruptcy Rule 2014 and is grounds for denial of the Second Orrick Retention Application. *See* DIP Agent's Obj. ¶ 41. This Court must compel the Trustee to provide responsive documents (i.e., the invoices) in response to this Document Request.

## **REQUEST FOR EMERGENCY CONSIDERATION**

38. Emergency consideration of this Motion is warranted. The Status Conference is set for February 3, 2025. The DIP Agent has attempted to negotiate with the Trustee and Orrick with no successful resolution of these issues. These issues are ripe for adjudication and emergency consideration is warranted.

[*Remainder of page intentionally left blank*]

**CONCLUSION**

WHEREFORE, the DIP Agent respectfully requests that the Court grant the Emergency Motion and order the Trustee and Orrick to produce all documents responsive to the Document Request and grant such other and further relief as the Court deems just and proper.

Dated: January 29, 2025
       Houston, Texas

Respectfully submitted,

**DLA PIPER LLP (US)**

_/s/  James P. Muenker_
James P. Muenker (Texas Bar No. 24002659)
845 Texas Avenue, Suite 3800
Houston, Texas 77002
Telephone: (214) 743-4500
Facsimile: (214) 743-4545
Email: james.muenker@us.dlapiper.com

-and-

Brett Ingerman (admitted *pro hac vice*)
Dale K. Cathell (admitted *pro hac vice*)
650 South Exeter Street, Suite 1100
Baltimore, Maryland 21202
Telephone: (410) 580-3000
Facsimile: (410) 580-3001
Email: brett.ingerman@us.dlapiper.com
Email: dale.cathell@us.dlapiper.com

-and-

W. Benjamin Winger (admitted *pro hac vice*)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Telephone: (312) 368-4000
Facsimile: (312) 236-7516
Email:   benjamin.winger@us.dlapiper.com

*Counsel to the DIP Agent and the DIP Lenders.*