IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: <br><br> SMILEDIRECTCLUB, INC., *et al.*, <br><br> Debtors. | Chapter 7 <br> (Previously Chapter 11) <br><br> Case No. 23-90786 (CML) <br><br> (Jointly Administered) |

**NON-PARTY ORRICK, HERRINGTON & SUTCLIFFE LLP'S OPPOSITION TO THE INSIDER DEFENDANTS' EMERGENCY MOTION TO COMPEL**

Non-party Orrick, Herrington & Sutcliffe LLP ("Orrick"), in its capacity as proposed Special Litigation Counsel for Allison D. Byman, the Chapter 7 Trustee (the "Trustee") of the jointly-administered bankruptcy estates of SmileDirectClub, Inc. and the affiliated debtors (collectively, the "Debtors") in the above-captioned Chapter 7 cases, files this opposition (the "Opposition") to the Emergency Motion to Compel Orrick to Comply [Docket. No. 979] (the "Motion to Compel") filed by David Katzman, Steven Katzman, Susan Greenspon Rammelt, Kyle Wailes, Richard Schnall, and Camelot Venture Group (collectively, the "Insider Defendants").[1] In support of this Opposition, Orrick states as follows:

**PRELIMINARY STATEMENT**

1. The Motion to Compel is part of a continued campaign by the Insider Defendants to block the Trustee's retention of Orrick to investigate and prosecute certain claims against the

---

[1] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion to Compel, the *Renewed Application for Entry of an Order Authorizing the Retention and Employment of Orrick, Herrington & Sutcliffe LLP as Special Litigation Counsel to the Chapter 7 Trustee* (the "Renewed Application") [Dkt. 957], or the Chapter 7 Trustee's Omnibus Reply In Support of Renewed Orrick Retention Application (the "Omnibus Reply") [Dkt. 976], as applicable.

Insider Defendants for their widely publicized fraud and misconduct.[2]  After months fighting Orrick's original retention application, the Insider Defendants (through the Insider DIP Agent they control) stated at the hearing on the application that they would have no objection to the Trustee's retention of Orrick on a non-priming basis.[3]  The Court, too, acknowledged that the issues surrounding Orrick's original retention application would be resolved if Orrick agrees to a contingency fee and "assuming the DIP liens get paid back," because in seeking to retain Orrick as Special Litigation Counsel, "the Trustee has exercised her duty . . . to maximize value for the estate."[4]

2. Orrick accordingly submitted the Renewed Application, which does not seek to prime the DIP Agent and instead seeks to prosecute claims on behalf of the Trustee against various parties, including current and former officers of the Debtors (as well as certain of the Insider Defendants) on a fully contingent basis, placing all the risk of loss or non-payment on Orrick. Hoping to insulate themselves from liability to the estate, the Insider Defendants now oppose the Renewed Application on a new and spurious theory that they could have raised—but deliberately chose not to—more than five months ago, and seek extraordinary discovery from Orrick that they purportedly need in connection with their opposition to Orrick's retention.  In fact, the discovery is irrelevant to, and meant solely to delay, the Court's determination on Orrick's retention.

---

[2]  *See, e.g.,* https://www.nbcnews.com/health/health-news/things-didn-t-feel-right-some-smiledirectclub-customers-report-problems-n1134056; https://www.bbc.com/news/business-67734200; https://www.cbc.ca/news/canada/hidden-camera-investigation-finds-misleading-information-questionable-treatment-plans-from-smiledirectclub-1.5511095; https://www.theverge.com/2023/6/23/23771112/smile-direct-club-dental-retainers-nda-customer-refunds.

[3]  *See* Oct. 1, 2024 Hr'g Tr. at 29:13-15 (Mr. Winger: "If the proceeds respect the waterfall – if the distribution of proceeds respects the waterfall in the final DIP order, then no, there is no issue.").

[4]  *See* Docket No. 916 (Bench Ruling Tr.) at 18:4-23.

3. The Insider Defendants' new theory, which serves as the basis for the discovery they seek in the Motion to Compel, relates to the Trustee's decision to waive privilege belonging to the estates over materials in a database (the "Consilio Database") that were collected from the Debtors' servers and transferred into the Trustee's possession as property of the estate. After the Consilio Database was cleaned of content the Insider Defendants had added to it (without authorization), the Trustee instructed Orrick to grant access to the cleaned Consilio Database to the plaintiffs in the Securities Cases based on her waiver of privileges associated with the information contained therein.

4. Nothing related to the Trustee's decision, or Orrick's actions in furtherance of that decision, bears on Orrick's independence or qualifications to serve as the Trustee's counsel under Section 327(e). Despite this, and despite the Court's conclusion that the scope and effect of the Trustee's privilege waiver is "not a bankruptcy issue" and should be resolved by the Tennessee courts in the Securities Cases, the Insider Defendants continue to push their theory forward by serving voluminous discovery on Orrick.[5] In addition to a request for a corporate representative deposition of Orrick on fifteen topics, the Insider Defendants served thirteen Requests for Production ("RFPs"), twelve Interrogatories ("ROGs"), and twenty-seven Requests for Admission ("RFAs") regarding Orrick's communications with Consilio and the Securities Plaintiffs. ECF No. 980-1.

5. The Insider Defendants' motivation is clear: they are trying to manufacture a discovery dispute that could delay the Court's ruling on what should be a straightforward retention application beyond the statutes of limitations and repose applicable to the causes of action the

---

[5] Docket No. 966 (Dec. 20 Hr'g Tr.) at 34:24-37:15.

Trustee is pursuing against them, which in effect, would secure a release for their prepetition actions.[6]

6.      Setting aside the Insider Defendants' motivation and unfounded attacks on Orrick's integrity, their entire motion should be denied for one simple reason: none of the discovery they seek is relevant to Orrick's Renewed Application. According to the Insider Defendants, the discovery they seek is necessary to assess whether Orrick (i) "placed the Debtors on both sides of the Securities Cases;" (ii) violated a purported duty to the Insider Defendants to protect confidential information; or (iii) accessed the Insider Defendants' solely privileged information.

7.      But the Insider Defendants already know the answer to all of these questions and no discovery is needed. Orrick has always acted solely on behalf of the Trustee, including actions it took with respect to the Consilio Database to effectuate the Trustee's decision to waive privilege—it has never represented or purported to represent any other party, much less any party to the Securities Cases. Orrick's duty of confidentiality, which runs exclusively to its client, the Trustee (and not the Insider Defendants), was not implicated by the actions it took at the direction of the Trustee. And the Insider Defendants' claims of "individual privilege" rest on an unsupported assertion that such a privilege exists. The Insider Defendants bear the burden of establishing this purported privilege, yet despite months of conclusory assertions in the Securities Cases and in this Court, the Insider Defendants have not identified, described, or clawed back *a single document* in the Consilio Database. Their inability to prove with any modicum of specificity the existence of

---

[6]   The Insider Defendants' stalling strategy is also evident in their decision to break the written agreement they reached with Orrick to file any motion to compel related to the Subpoena by January 17, 2025. ECF No. 973 ¶ 32; ECF No. 974-3. Without any explanation for the delay, they filed the Motion to Compel a week later on January 24, 2025, presumably with the intention of further postponing the hearing on the Renewed Application that had been set for February 3, 2025.

4

privileged documents constitutes a failure to satisfy their burden under common law, qualifies as a waiver of any privilege that may have existed, and more importantly for the instant motion, reflects the hollowness of their argument against Orrick's retention. Indeed, the Insider Defendants' inability to articulate any "individual privilege" for former company employees is unsurprising given that the Debtors' company policy, consistent with most company policies, explicitly states that *all data created on corporate systems belong to the company and there is no expectation of privacy or privilege in any such communications*.

8. Put simply, any privilege attaching to the information in the database belongs to, and can be waived by, the estate and hence the Trustee, and to the extent that the Insider Defendants somehow can establish a separate privilege claim, that issue is appropriately resolved in the Securities Cases through claw-back and other mechanisms. It is not an issue for this Court. The Insider Defendants privilege concerns (however wrong and unsubstantiated they are) have nothing to do with Orrick's Renewed Application.

9. The relief the Insider Defendants seek is extraordinary and improper. A deposition of opposing counsel is "highly disfavored" in the Fifth Circuit as it "disrupts the adversarial system[,] . . . lowers the standards of the profession, . . . adds to the already burdensome time and costs of litigation[, and] . . . detracts from the quality of client representation." *Nguyen v. Excel Corp.*, 197 F.3d 200, 208-209, n.26 (5th Cir. 1999). It can only be permitted if the information sought is "crucial." *Id*. That is far from the case here, where the information sought is not even relevant. The Insider Defendants ROGs and RFAs are also plainly improper under the Federal Rules of Civil Procedure. The Insider Defendants served a Rule 45 subpoena, which may be used to seek document productions and deposition testimony from a nonparty—nothing more. Orrick

is indisputably a nonparty and has no obligation to respond to any RFAs and ROGs. Accordingly, the Insider Defendants' Motion to Compel should be denied in its entirety.

## RELEVANT BACKGROUND

10. Factual background regarding these chapter 7 cases and the Original Application, and the relief requested is set forth in the Renewed Application and the Omnibus Reply and incorporated by reference as if fully set forth herein. ECF Nos. 957, 976.

## LEGAL STANDARD

11. Subpoenas issued under Federal Rule of Civil Procedure 45 to non-parties, such as Orrick, are subject to the same scope limitations as those under Federal Rule of Civil Procedure 26, meaning that the information sought must be relevant and proportional to the needs of the case. *MetroPCS v. Thomas*, 327 F.R.D. 600, 609 (N.D. Tex. 2018). Rule 45 also includes specific protections for non-parties, including that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *Am. Fed'n of Musicians of the U.S. and Can. v. Skodam Films, LLC*, 313 F.R.D. 39, 43 (N.D. Tex. 2015).

12. Where, as here, a party subpoenas information from opposing counsel under Rule 45, the bar is even higher. Discovery from opposing counsel is "highly disfavored" as it "disrupts the adversarial system[,] . . . lowers the standards of the profession, . . . adds to the already burdensome time and costs of litigation[, and] . . . detracts from the quality of client representation." *Nguyen v. Excel Corp.*, 197 F.3d 200, 208-209, n.26 (5th Cir. 1999) (internal citations omitted). The rationale for this conclusion is that depositions of counsel, "even if limited to relevant and non-privileged information, are likely to have a disruptive effect on the attorney-client relationship and on the litigation of the case." *Roznitsky v. Schwartz Cobb & Scheinert*, No. 98 CIV. 6643 CSH MHD, 1999 WL 187074, at *2 (S.D.N.Y. Apr. 6, 1999); *see also Shelton v.*

6

*Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) (the "'chilling effect' that [a practice of permitting regular discovery from opposing counsel] will have on the truthful communications from the client to the attorney is obvious.").

13.  Acknowledging that discovery from opposing counsel "should only be allowed in limited circumstances," the Fifth Circuit has previously relied on the Eighth Circuit's "Shelton Test" to evaluate requests to depose opposing counsel. *Securus Techs., Inc. v. Glob. TelLink Corp.*, 331 F.Supp.3d 633, 637 (N.D. Tex. 2017). In *Shelton*, the Eighth Circuit developed a three-part test for determining whether depositions of opposing counsel should be permitted. 805 F.2d at 1327. It considered that such discovery was *only* appropriate where: (1) "no other means exist to obtain the information;" (2) "the information sought is relevant and nonprivileged;" and (3) "the information is crucial to the preparation of the case." *Id.* This high bar is consistent with the "highly disfavored" status of opposing counsel depositions.

### ARGUMENT

**A. The Insider Defendants' Discovery Requests Do Not Seek Relevant—Let Alone "Crucial"—Information.**

14.  Repeating the same mistakes and the same sleight of hand they used in their Objection, the Insider Defendants claim that discovery related to Orrick's conduct is necessary for resolution of the Renewed Application because "Orrick has placed itself on both sides of the Securities Cases, violated ethical duties of confidentiality, and exposed itself to privileged information it can improperly use against the Interested Parties." Motion to Compel ¶ 58. None of these assertions have any legal or factual merit, none of them are relevant to Orrick's retention under Section 327(e), and therefore, none of them require additional discovery.[7]

---

[7] The Insider Defendants falsely claim that Orrick has "no support for its relevance objection" because the Trustee in her Omnibus Reply "*never* argues that the [Insider Defendants] arguments are irrelevant." Motion to Compel ¶¶ 42, 65 (emphasis in original). A brief glance at

7

15. After months of fighting Orrick's retention, three depositions of the Trustee, and a three-day evidentiary hearing where they examined the Trustee, the Insider Defendants have found no evidence suggesting that Orrick is conflicted or has acted against the Trustee's interests. A "highly disfavored" Rule 45 deposition of Orrick regarding these issues is entirely unnecessary, let alone "crucial" to resolving the Renewed Application. *Tech Pharmacy Servs., LLC v. Alixa Rx LLC*, No. 4:15-CV_766, 2017 WL 2901716, at *2 (E.D. Tex. Jan. 6, 2017) (quashing defendants' subpoena to opposing counsel where defendants sought an "exploratory deposition" without evidence or suggestion of misconduct). It is a transparent filibustering ploy, nothing more.

16. **Orrick Has Never Placed Itself on Both Sides of the Securities Cases**. First, as set forth in the Omnibus Reply, Orrick has not placed itself on either "side[] of the Securities Cases," as the Insider Defendants contend. Motion to Compel ¶ 67. From the inception of its involvement in this case, Orrick has acted only on behalf of the Trustee. Orrick has never participated in the Securities Cases, never represented any party to the Securities Cases, and certainly has not placed itself on both sides of those entirely separate cases. Accordingly, the Securities Cases do not, and cannot, create any conflict between Orrick and the Trustee and the estates because Orrick does not represent any party in those actions, much less one adverse to the

---

the Omnibus Reply proves this claim to be false. Indeed, the heading of the Trustee's response to the Insider Defendants' objection to the Renewed Application is that their arguments "*have no bearing* on the Section 327(e) analysis." Omnibus Reply, Section E (emphasis added); *see also* ¶ 6 ("The Insiders attempt to manufacture factual issues regarding the Trustee's decision to waive privilege over documents in the Securities Cases . . , but the Trustee's waiver has no bearing on Orrick's retention."), ¶ 48 ("At bottom, the Insider Defendants are arguing that the Trustee should not have allowed the Securities Plaintiffs access to the Clean Database. That argument has no bearing on whether Orrick should be retained as special litigation counsel to represent the Trustee."). Moreover, the Insider Defendants cite no support for their contention that Orrick conceded during a meet and confer that the Subpoena seeks relevant factual information. Motion to Compel ¶ 66. That is of course because no such concessions were made.

Trustee or the estates. Orrick's actions on behalf of the Trustee, including administratively effectuating the Trustee's decision to share access to a portion of the Consilio Database with the Securities Plaintiffs, were done solely in furtherance of its representation of the Trustee. The Insider Defendants' argument that Orrick's actions created a "prohibitive conflict/adverse interest" (Motion to Compel ¶ 67) with the Trustee by following the Trustee's instructions makes no sense.

17. The Insider Defendants' related contention that the Trustee/Orrick violated a joint-defense arrangement suffers from the same flawed legal reasoning. The Insider Defendants cite no law holding that a trustee (or counsel acting on her behalf) cannot take actions adverse to the *prepetition* debtor entity or former insiders. To the contrary, courts uniformly recognize that a bankruptcy trustee is "an independent and disinterested entity, separate and distinct from the debtor as well as the pre-petition company, and as such does not strictly 'stand in the shoes' of the debtor." *In re Palmaz Sci., Inc.*, No. 16-50552-CAG, 2018 WL 3343597, at *10 (Bankr. W.D. Tex. June 4, 2018); *see also, e.g*, *In re Cnty. Seat Stores, Inc.*, 280 B.R. 319, 325 (Bankr. S.D.N.Y. 2002) ("[A] bankruptcy trustee is a legal entity separate and distinct from the debtor.").

18. Tellingly, the Insider Defendants do not present any evidence of a formal or written joint-defense agreement, nor would it matter if they did. The Trustee in this case was appointed for the express purpose of investigating and pursuing claims *against* the Insider Defendants. *See* ECF No. 619 (Jan. 24, 2024 Hr'g Tr.) at 203:4-5 (converting case to Chapter 7 after concluding that "the releases and the exculpations provided [in the Debtors' proposed structured dismissal] are too broad"). To the extent a limited common interest or joint-defense arrangement existed at some point between the prepetition Debtor and the Insider Defendants in the Securities Cases, as the Insider Defendants assert, the Trustee never agreed to it, and it dissolved—at the absolute latest—when the Trustee was appointed to pursue claims against those same insiders.

19. Next, in another attempt to manufacture a fact issue where none exists by attacking Orrick's integrity, the Insider Defendants also insinuate that Orrick took certain actions without the Trustee's authorization or knowledge. *See* Motion to Compel ¶ 79 ("[T]he fact that the Trustee does not know what its agent was doing should give the Court pause."). They do so by misleadingly citing to several excerpts from the Trustee's deposition transcript that are taken out of context, and regardless, do not support the conclusion that Orrick acted improperly. *Id. ¶* 26.

20. For example, the Insider Defendants claim that because the Trustee did not know every logistical or administrative detail about how Orrick facilitated granting access to the Consilio Database to the Securities Plaintiffs, discovery into Orrick's actions is warranted. *Id.* This argument strains both logic and credulity. As in any attorney-client relationship, the client issues a directive, and the attorney facilitates the client's wishes. The attorney does not need to provide second-to-second updates on every minute detail required to complete a task. The Trustee asked Orrick to facilitate access to the Consilio Database to the Securities Plaintiffs, and Orrick did so. That the Trustee was unfamiliar with every minor step that Orrick took to effectuate her decision does not suggest that Orrick was acting outside of the scope of its representation or took any actions that would place it in a conflicted position vis-a-vis the Trustee or the estates. Indeed, the Trustee has repeatedly confirmed that she authorized Orrick to take these actions and has never suggested Orrick ever acted outside the scope of her authorization. *See generally* ECF No. 977 Omnibus Reply, Byman Decl. The Insider Defendants are not entitled to know every minor detail of how Orrick has performed its job in representing the Trustee, particularly when those details are irrelevant, let alone "crucial," to resolving the Renewed Application.

21. **The Insider Defendants' Claim That Orrick Violated a Duty to Protect Jointly Privileged Information Is Baseless**. The Insider Defendants' speculation that Orrick may have

10

violated a duty of confidentiality by viewing purportedly privileged documents and coordinating the Securities Plaintiffs' access to the Consilio Database rests on the flawed assumption that Orrick had a duty to the Insider Defendants to begin with. Orrick's duties run to the Trustee, not to any party in the Securities Cases, including parties making dubious assertions of privilege (as explained in more detail below). Accordingly, following the Trustee's instructions to share access to the Database could not constitute a breach of Orrick's duties *to the Trustee*. Further, even if the Insider Defendants had properly asserted privilege—which they have not—the issue is irrelevant to Orrick's qualification to serve as the Trustee's counsel under Section 327(e). The Insider Defendants cite no case law where counsel was disqualified from representation under Section 327(e) because it viewed privileged documents.

22. **The Insider Defendants' Unsupported "Individual Privilege" Claims Are Not Credible**. The Insider Defendants' last-ditch argument—that Orrick may have viewed their purportedly "individually privileged" documents—is belied by the Insider Defendants' own actions. Underlying this argument—and without which it falls apart—is the Insider Defendants' claim that there are documents in the Consilio Database for which they, as former insiders of the Debtors, exclusively hold all privilege claims independent of the Debtors. *See, e.g.,* Motion to Compel ¶¶ 17, 19, 35, 68, 71. But the Insider Defendants have not even attempted to bear their burden of proving the existence of such uniquely privileged documents. *In re Santa Fe Int'l Corp.,* 272 F.3d 705, 710 (5th Cir. 2001) ("A party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability."). That burden requires the Insider Defendants to identify a privilege that could not be waived by the Trustee and prove that the attorney-client privilege "applies to each and every communication [they are] claiming as privileged." *See In re Royce Homes, LP*, 449 B.R. 709, 726 (Bankr. S.D. Tex. 2011); *see also United States v. El Paso*

11

*Co.,* 682 F.2d 530, 539 (5th Cir. 1982) ("The privilege must be specifically asserted with respect to particular documents."). To date, and despite having unfettered access to the Consilio Database for at least a half-year (and possibly longer),[8] the Insider Defendants have not identified a single document—or described any concrete category of documents—that they contend is subject to their supposedly unique individual privilege. Instead, they have made only "blanket and conclusory assertions" that privileged documents may be contained in the Consilio Database. *See In re McDowell*, 483 B.R. 471, 482 (Bankr. S.D. Tex. 2012). But "the attorney-client privilege may not be tossed as a blanket over an undifferentiated group of documents." *El Paso Co.,* 682 F.2d at 539. This failure, by itself, should sink the Insider Defendants' campaign to block Orrick's retention. When coupled with the Insider Defendants' inability to identify any privilege that they control, their motion crumbles.

23. Moreover, even assuming that the Consilio Database contains a hypothetical document over which the Insider Defendants hold the privilege, they have waived their privilege rights by failing to timely assert them. The Insider Defendants seized the Consilio Database long ago and have known for months that the Trustee—who is actively pursuing claims against them—has been in possession of these documents. Despite this, the Insider Defendants have failed to claw back or identify a single document they believe is privileged. These actions are "inconsistent with [their] assertion of privilege" and constitute waiver. *See, e.g.*, *In re Washington Prime Grp. Inc.*, No. 21-31948, 2024 WL 4615552, at *7 (Bankr. S.D. Tex. Oct. 29, 2024) (finding that a party waived privilege where it failed to send a claw-back letter or seek a protective order for at least a month after learning of disclosure of purportedly privileged documents); *Apex Mun. Fund. v. N–*

---

[8] Orrick understands that the Trustee is still assessing the Insider Defendants' improper decision to commandeer the Consilio Database post-petition without the Trustee's knowledge or authorization and reserves all rights to take appropriate legal action.

*Group Sec.*, 841 F. Supp. 1423, 1433 (S.D. Tex. 1993) ("Simply put, a one-year delay in taking any action to attempt to preserve the privilege exemplifies carelessness."); *In re Grand Jury (Impounded)*, 138 F.3d 978, 982 (3d Cir. 1998) ("While we cannot set an exact time within which such a motion must be made, we hold that the district court did not abuse its discretion in holding that Capano waived the privilege as we are satisfied that Capano acted unreasonably in waiting nearly four months to seek a judicial vindication of his assertion of the privilege."); *United States v. de la Jara*, 973 F.2d 746, 749-50 (9th Cir. 1992) (finding that the defendant's failure to act within six months of a letter's seizure by the government waived attorney-client privilege).

24. The Insider Defendants' inability to demonstrate their privilege rights is not surprising. As employees of the Debtors, they had no reasonable expectation of privacy, and thus no privilege rights, as to the materials in the Consilio Database that belong exclusively to the Debtors' estates.[9] *See Royce Homes*, 449 B.R. at 724 ("the party invoking the attorney-client privilege must have had a reasonable expectation of confidentiality or privacy"). The Debtors' data policy states that "[employees] should be aware that the data they create on the corporate systems remains *the property of SmileDirectClub* and that *they should have no expectation of privacy* with respect to any activity on such system and all such activity is subject to monitoring." ECF No. 977, Omnibus Reply, Byman Decl. Ex. A at 30 (emphasis added). The "particular language of a company's policy regarding the treatment of e-mail and other electronically stored information on company computers is '*critically important* in determining whether an employee

---

[9] The Insiders Defendants falsely claim they hired Consilio jointly with the Debtors to support their argument that they hold privilege over documents in the Consilio Database. Motion to Compel ¶ 10. The contract with Consilio was exclusively entered into by Debtor SmileDirectClub, LLC, and therefore, it is the exclusive property of the estate. Declaration of Nicholas A. Poli, Exhibit A. Orrick notes that Consilio acquired Legility, the original signatory to the contract with SmileDirectClub. *https://www.consilio.com/resource/consilio-acquires-legal-services-provider-legility*.

has a reasonable expectation of privacy in such materials.'" *United States ex rel. Ray v. GSD&M Idea City LLC*, No. 3:11-CV-1154-O, 2012 WL 12925016, at *4 (N.D. Tex. May 15, 2012) (citing *In re Rsrv. Fund Sec. & Derivative Litig.*, 275 F.R.D. 154, 164 (S.D.N.Y. 2011)) (emphasis added). When, as here, a company policy "warns employees that their email communications will be automatically saved and are subject to review [by the company]," it weighs heavily in favor of finding that employees waived privilege as to all materials on their employer's systems. *Id.*; *see also Royce Homes*, 449 B.R. at 740 ("[T]hird parties undeniably had access to [an employee's] e-mails by virtue of their mere placement on the [company's] server . . . [where the company] could monitor [the employee's] e-mails at any time."). In short, the Insider Defendants' "individual privilege" claims are nothing more than a baseless attempt to gin up a fact issue where none exists.[10]

### B. The Insider Defendants' Have No Legal Basis to Seek Responses to Requests for Admission or Interrogatories.

25. While none of the Insider Defendants' requested discovery is proper, the ROGs and RFA are particularly egregious because they are not valid means of seeking discovery from a non-party through a Rule 45 subpoena. *See Obinyan v. Prime Therapeutics LLC*, No. 3:18-CV-0933-D, 2021 WL 135983, at *1 (N.D. Tex. Jan. 14, 2021) ("Interrogatories may not be directed to

---

[10] While the Court can deny the Insider Defendants' Motion to Compel in its entirety because the requested information is irrelevant, Orrick reiterates the privilege and work product objections identified in its Objections and Responses to the Subpoena. ECF No. 980-2. For example, the Insider Defendants seek all of Orrick's communications with Consilio, the Trustee's document vendor. As an agent of the Trustee, communications with Consilio are entitled to both attorney-client privilege and work product protection. *See United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961) ("the complexities of modern existence prevent attorneys from effectively handling clients' affairs without the help of others; few lawyers could now practice without the assistance of secretaries, file clerks . . . and aides of other sorts. The assistance of these agents being indispensable to his work and the communications of the client being often necessarily committed to them by the attorney or by the client himself, the privilege must include all the persons who act as the attorney's agents.").

nonparties."); *Marzett v. Tigner,* No. 1:18-CV-00110, 2020 WL 231491, at *1 (W.D. La. Jan. 14, 2020) (a party "cannot serve interrogatories and admissions on non-parties"); Fed. R. Civ. P. 33(a)(1) (party may serve interrogatories on "any other party"); Fed. R. Civ. P. 36(a)(1) (a party may serve requests for admission on "any other party"). Orrick is not a party, and it is not required to respond to RFAs or ROGs.

26. The Insider Defendants do not seriously contest this black-letter law. Instead, they argue that Orrick "is functionally a party" because it seeks to represent the Trustee through the filing of its retention application. Motion to Compel ¶ 87. There is, of course, no law to support this contention. Indeed, by the Insider Defendants' (flawed) logic, every law firm that represents a party to a litigation is somehow transformed into a party and subject to subject to ROGs and RFAs under Rule 45. This is ridiculous and would turn Rules 33, 36, and 45 of the Federal Rules of Civil Procedure—made applicable to this contested matter—on their heads. The Court should summarily reject the Insider Defendants' request to compel responses to the ROGs and RFAs.

## CONCLUSION

WHEREFORE, Orrick respectfully requests that the Court deny the Motion to Compel.

*[Remainder of Page Intentionally Left Blank]*

Dated: January 29, 2025  Respectfully submitted,

By: */s/ Ryan C. Wooten*
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
Ryan C. Wooten, Texas Bar No. 24075308
609 Main Street, 40th Floor
Houston, TX 77002-3106
Telephone: (713) 658-6400
Facsimile: (713) 658-6401
Email: rwooten@orrick.com

Raniero D'Aversa, Jr. (admitted *pro hac vice*)
Darrell Cafasso (admitted *pro hac vice*)
David Litterine-Kaufman (admitted *pro hac vice*)
Nicholas Poli (admitted *pro hac vice*)
Mark Franke (admitted *pro hac vice*)
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
Email: rdaversa@orrick.com
dlitterinekaufman@orrick.com
npoli@orrick.com
mfranke@orrick.com

*Proposed Special Litigation Counsel for
the Chapter 7 Trustee*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on the 29th day of January 2025, I caused a true and correct copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on all parties receiving ECF notice.

            */s/ Ryan C. Wooten*
            Ryan C. Wooten