**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>SMILEDIRECTCLUB, INC., *et al.*,<br><br>Debtors. | Chapter 7<br>(Previously Chapter 11)<br><br>Case No. 23-90786 (CML)<br><br>(Jointly Administered) |

**OMNIBUS OBJECTION OF CHAPTER 7 TRUSTEE AND NON-PARTY ORRICK, HERRINGTON & SUTCLIFFE LLP IN OPPOSITION TO THE INSIDER DIP AGENT'S EMERGENCY MOTION TO COMPEL**

Non-party Orrick, Herrington & Sutcliffe LLP ("Orrick"), in its capacity as proposed Special Litigation Counsel for Allison D. Byman, the Chapter 7 Trustee (the "Trustee") of the jointly-administered bankruptcy estates of SmileDirectClub, Inc. and the affiliated debtors (collectively, the "Debtors") in the above-captioned Chapter 7 cases, and the Trustee, file this omnibus opposition (the "Opposition") to the Emergency Motion to Compel [ECF No. 985] (the "Motion to Compel") filed by Cluster Holdco LLC (the "Insider DIP Agent").[1] In support of this Opposition, Orrick and the Trustee state as follows:

**PRELIMINARY STATEMENT**

1. Yet again, the Insider Defendants and the Insider DIP Agent they control seek to make a mockery of these retention proceedings and insulate themselves from liability by serving abusive and wholly irrelevant discovery that, in any event, has already been provided. It should

---

[1] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion to Compel, the *Renewed Application for Entry of an Order Authorizing the Retention and Employment of Orrick, Herrington & Sutcliffe LLP as Special Litigation Counsel to the Chapter 7 Trustee* (the "Renewed Application") [ECF No. 957], or the *Chapter 7 Trustee's Omnibus Reply In Support of Renewed Orrick Retention Application* (the "Omnibus Reply") [ECF No. 976], as applicable.

be transparent to everyone what's really going on here: with no valid objection to Orrick's retention, the Insider DIP Agent, controlled by the Insider Defendants who desperately want to evade the Trustee's claims, is trying to distract the Court from the narrow and straightforward question before it by leveling unfounded and irresponsible allegations of bad faith and lack of candor against both the Trustee and her selection of Special Litigation Counsel, both very familiar to this Court. Respectfully, enough is enough.

2. Four months ago, during Orrick's original retention application, the Insider DIP Agent told the Court that it would have no objection to the Trustee's retention of Orrick on a non-priming basis.[2] It is undisputed that Orrick addressed that objection and is willing to pursue causes of action on a fully contingent and subordinated basis. The Insider DIP Agent—which claims to be a mere innocent bystander focused on finding the best counsel possible to ensure its DIP loan is paid off—should be supportive of Orrick's retention: without prosecution there will be no significant recovery for the Insider DIP Agent.

3. But, of course, the Insider DIP Agent is no innocent bystander and does not actually care about getting paid back. It is exclusively controlled by the former company insiders who would prefer not to be sued by the Trustee for their widely publicized fraudulent conduct. So, the Insider DIP Agent (in reality, the potential future defendants in the Trustee's lawsuit) is understandably engaging in a desperate mudslinging exercise in which it disregards logic, facts, and law in favor of spurious legal theories that have nothing to do with the Trustee's retention of Orrick.

---

[2] *See* Oct. 1, 2024 Hr'g Tr. at 29:13-15 (Mr. Winger: "If the proceeds respect the waterfall – if the distribution of proceeds respects the waterfall in the final DIP order, then no, there is no issue.").

4.      The Insider DIP Agent's latest scheme:  identical Requests for Production ("RFP") and Interrogatories ("ROGs") served on both the Trustee and Orrick (a nonparty) that essentially seek all invoices and minute details of Orrick's work for the Trustee.  The Insider DIP Agent's latest request has nothing to do with the Renewed Application and should be rejected out of hand.  In addition, the Trustee and Orrick have satisfied the statutorily required disclosure obligations through the D'Aversa Declaration (ECF No. 957-1).

5.      According to the Insider DIP Agent, the discovery it seeks is "standard" and required under Section 327 of the Bankruptcy Code and Bankruptcy Rule 2014 to ensure full disclosure of a professional's "connections" to the Debtors' estate.  Tellingly, the Insider DIP Agent cannot cite a single case in which a retention application—let alone one seeking retention on a contingent fee basis—includes a law firm's invoices.  That's because no rule, including Bankruptcy Rule 2014, requires proposed counsel to expressly enumerate each and every task it performs or may perform in furtherance of its essential purpose as Special Litigation Counsel.  As the Insider DIP Agent has known for months, Orrick was retained to investigate and prosecute claims against the Insiders.  Every action Orrick has taken has been in furtherance of this mandate.  In addition, Orrick is not seeking payment of any fees incurred in connection with work done prior to filing the Renewed Application.

6.      The Insider DIP Agent's lack of legal support is unsurprising because Rule 2014 is designed to uncover financial connections (such as fees received from a Debtor), business connections (such as pre-petition representation of the Debtor) or personal connections to a Debtor (such as being in a relationship with a former officer of a Debtor).  Orrick has no such undisclosed connections and there is no credible allegation to the contrary.

7. Putting aside that Rule 2014 does not require the disclosure the Insider DIP Agent seeks, the Trustee has already provided it. On January 27, 2025, the Trustee was deposed by both the Insider DIP Agent and the Insider Defendants, affording both parties the opportunity to ask questions about every topic identified in the Motion to Compel. Consider the following representative example: the Insider DIP Agent claims that it desperately needs invoices to confirm whether Orrick advised on "the Final DIP Order." Setting aside the fact that the Final DIP Order was entered before Orrick ever spoke with the Trustee, the Trustee already gave sworn testimony on that exact issue:

> **Q**. Did you receive advice from Orrick in connection with the negotiation of the DIP Order, the final DIP Order?
> **A**. The only -- the only reason that I or the only discussions I had with Orrick about the DIP Order related to preservation of causes of action against the insiders.
> **Q**. To make sure that the final DIP Order preserved those claims?
> **A**. Correct, that I wasn't doing anything to hamstring my ability to pursue the causes of action.
> **Q**. Okay.
> **A**. The final DIP Order I did not negotiate at all. That existed before I existed. The final cash collateral order was something that I would have discussed with Orrick.
> **Q**. Fair point. The final DIP Order was before you were on the scene.
> **A**. Right.[3]

8. Despite this unequivocal testimony and concession by the Insider DIP Agent's counsel that the Final DIP Order was entered before the Trustee or Orrick were involved, the Insider DIP Agent remarkably claims that it needs something more. This is not a credible, let alone legally sound basis, to seek discovery. In sum, the Trustee has been cooperating in good faith and answering every question asked of her over the course of multiple depositions.

9. Orrick similarly takes its obligations to this Court and the Trustee seriously. The discovery record shows that Orrick has always acted solely on behalf of the Trustee, including

---

[3] ECF No. 986-1 (Byman Dep.) at 75:15-76:13.

4

actions it took with respect to the Consilio Database to effectuate the Trustee's decision to waive privilege.  It has never represented or purported to represent any other party, much less any party to the Securities Cases.  The Insider DIP Agent knows this because it just deposed the Trustee on this very issue.  Indeed, the Insider DIP Agent's actions don't suggest that it actually wants more discovery—its motivation is to flood Orrick with papers and distract the Court with serial baseless motions intended to burden Orrick and the Trustee (knowing that Orrick is not currently being paid for any of its services) in the hope that the Court will delay ruling long enough so that Orrick will either give up or the statutes of limitations and repose will expire.  Rest assured, neither Orrick nor the Trustee will be deterred by these abusive practices.

## RELEVANT BACKGROUND

10. Factual background regarding these Chapter 7 cases and the Original Application, and the relief requested is set forth in the Renewed Application and the Omnibus Reply and incorporated by reference as if fully set forth herein. ECF Nos. 957, 976.

## LEGAL STANDARD

11. The Federal Rules of Civil Procedure authorize "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). On a motion to compel discovery, "the onus is on [movant] to detail why [nonmovant]'s responses are deficient and to direct the Court's attention to the discovery requests at issue." *Cantu v. State Farm Lloyds*, No. 7:15-CV-00317, 2016 WL 10732200, at *2 (S.D. Tex. June 17, 2016).

12. A party's right to discovery "is not unfettered," and a court "must limit discovery if it finds that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . . [or] if it

finds that the burden or expense of the requested discovery outweighs its likely benefit." *In re Air Crash near Clarence Ctr., New York, on Feb. 12, 2009,* No. 09-CV-294S, 2013 WL 5936975, at *2 (W.D.N.Y. Nov. 4, 2013) (citations omitted). Further, Courts place great weight behind this balancing of proportionality, and such considerations are intended to "*encourage judges to be more aggressive in identifying and discouraging discovery overuse.*" *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 605 B.R. 617, 629 (Bankr. S.D.N.Y. 2019) (emphasis added).

## ARGUMENT

**A. The Insider DIP Agent's Request For Invoices Are Irrelevant To An Application To Employ Professionals, Particularly Where A Professional Seeks Employment On A Contingent Fee Basis.**

13. According to the Insider DIP Agent, despite Orrick's and the Trustee's already robust disclosures regarding Orrick's limited role in these Chapter 7 cases, Bankruptcy Rule 2014 requires the production of Orrick's invoices to the Trustee. While this is legally baseless (as described below), the Court should see this request for what it is: a transparent attempt to manufacture factual issues regarding the Trustee's decision to waive privilege in the Securities Cases—which has nothing to do with Orrick's Renewed Application.

14. Rule 2014 requires a professional seeking retention to set forth the professional's connections to the debtor, creditors, or any other party in interest. Fed. R. Bankr. P. 2014. The overarching goal of Rule 2014 is disclosure of a professional's financial, business, and personal interests "which could reasonably have an effect on the attorney's judgment in the case." *In re Tribeca Market, LLC*, 516 B.R. 254, 279 (Bankr. S.D.N.Y. 2014); *see also In re Arlan's Dept. Stores, Inc.*, 615 F.2d 925, 934-37 (2d Cir. 1979) (Debtor's counsel received a substantial retainer despite debtor having insufficient cash to fund operations); *In re Leslie Fay Companies, Inc.*, 175 B.R. 525, 533-38 (Bankr. S.D.N.Y. 1994) (Debtor's counsel represented board members and the debtor's outside auditors prepetition, who were potential litigation targets of the Debtor); *In re El*

6

*San Juan Hotel Corp.*, 239 B.R. 635, 646-51 (1st Cir. BAP 1999) (Trustee's counsel was retained in a separate bankruptcy case by the previous trustee of the estate who was convicted of embezzlement from the estate and was close friends with attorney serving as counsel to the former trustee in litigation with the current trustee).

15. Orrick has already provided robust sworn disclosures that satisfy Rule 2014's requirements. ECF No. 957-1 (D'Aversa Declaration). Since those disclosures, the Insider DIP Agent has not seriously contended that Orrick has any actual improper personal, business, or financial interest that prevents its retention. Instead, it speculates that by retrieving documents from a database owned by the Trustee and administratively facilitating access to the Trustee's books and records to the Securities Plaintiffs (at the Trustee's direction), a hypothetical potential conflict of interest could exist that precludes Orrick's retention unless and until the Insider DIP Agent gets to review Orrick's invoices. No such conflict exists, for all the reasons stated in the Renewed Application [ECF No. 957], the Omnibus Reply [ECF No. 976], and Orrick's Opposition to the Insider Defendants' Motion to Compel [ECF No. 987]. And the Insider DIP Agent (as discussed in the following section) has already been provided with ample discovery. Simply put, the Insider DIP Agent's request for invoices stretches far beyond the bounds of Rule 2014 disclosures and improperly seeks to know "every conceivable interpretation of [Orrick's] connections and possible consequence resulting from the connections; as well as a prediction of the outcome of any litigation that may result from, or be related to, the referenced connection." *In re Enron Corp.*, No. 01-16034, 2002 Bankr. LEXIS 1720, at *17-18 (Bankr. S.D.N.Y. May 23, 2002). This is plainly improper.

16. Noticeably absent from the Insider DIP Agent's discussion is *a single case* in which a party was ordered to produce invoices in connection with a retention application. That's likely

7

because no such case exists—particularly where the professional is seeking retention on a contingent fee basis. Quite remarkably, the Insider DIP Agent's sole argument is that "[r]etained professionals regularly submit invoices in connection with *fee applications* under sections 328 and 329 of the Bankruptcy Code, redacted appropriately for privilege." Motion to Compel ¶ 31 (emphasis added). While that may be a factually true statement, as the Insider DIP Agent knows, this is not a fee application under Sections 328 or 329—it is an application to employ under Section 327. Without a legal leg to stand on, the Insider DIP Agent's entire argument crumbles.

### B. The Insider DIP Agent Already Received The Discovery It Now Seeks And This Court Should Prevent Unduly Repetitive Discovery.

17. Setting aside the legal deficiencies with the Insider DIP Agent's request, the Motion to Compel should be rejected for the simple reason that the discovery the DIP Agent seeks has already been provided. There is no basis to seek needlessly cumulative and harassing discovery.

18. According to the Insider DIP Agent, it needs to understand whether Orrick advised the Trustee on twelve issues (Motion to Compel ¶ 34), all of which were identified to the Trustee in advance of her January 27 deposition (ECF No. 980-6). The Trustee agreed that the Insider DIP Agent could ask questions about all twelve issues—indeed, that was the entire point of permitting the Insider DIP Agent to depose the Trustee for the third time. And the Trustee provided testimony on those issues:

- "the various, agreed cash collateral orders between the Trustee and the DIP Agent"

    **Q** . . . As I understand it, the only advice you were getting from Orrick in connection with the cash collateral orders was to make sure that you didn't do anything to impair your ability to pursue the insider claims; is that fair?
    **A**. That is correct. I wanted to safeguard that. I wasn't -- Porter [] Hedges to negotiate with the DIP Lender in negotiating cash collateral they were not allowed to investigate or charge

8

time related to the insider claims so I reached out to Orrick to make sure I was safeguarding those.[4]

- "the Final DIP Order"

    **Q**. Did you receive advice from Orrick in connection with the negotiation of the DIP Order, the final DIP Order?
    **A**. The only -- the only reason that I or the only discussions I had with Orrick about the DIP Order related to preservation of causes of action against the insiders.[5]

- "answering or otherwise resolving discovery requests from the Securities Plaintiffs or any other party (excluding the Individual Defendants and DIP Agent)"

    **Q**. Did Orrick advise you on the topic of responding to discovery requests from the securities plaintiffs? Again, I'm not asking for the advice, just whether they advised you on that topic at all.
    **A**. No. They did not. The way I understand, the discovery in that securities case was completed before I even existed.
    **Q**. Well, you had the ongoing discovery dispute about the privileged documents, right?
    **A**. Right, but I did not[6]

- "the information access motion with Microsoft"

    **Q**. Did Orrick advise you on the topic of information access with respect to Microsoft?
    **A**. Only again tangentially. It would have been making sure that I was safeguarding the estate with respect to being able to bring those causes of action and just making sure I wasn't foreclosing any access or availability that I wasn't thinking of.[7]

- "the Securities Plaintiffs' comfort motion"

    **Q**. Were there any other discovery matters with the securities plaintiffs that Orrick advised you on?
    **A**. The only -- the only discussions that I would have had with Orrick would have been related to the discovery I think they -- I can't remember if you served it or if Mr. Rammelt served it, but after -- with respect to the comfort order I had to reach out to Orrick to be able to respond to that.[8]

---

[4]   ECF No. 986-1 (Byman Dep.) at 76:16-77:6.

[5]   ECF No. 986-1 (Byman Dep.) at 75:15-21.

[6]   ECF No. 986-1 (Byman Dep.) at 96:11-21.

[7]   ECF No. 986-1 (Byman Dep.) at 97:11-18.

[8]   ECF No. 986-1 (Byman Dep.) at 97:1-10.

9

19. At every turn, the Trustee was forthcoming and responsive to the Insider DIP Agent's inquiries. Notably, the Insider DIP Agent does not reference any of this testimony or explain why this testimony is insufficient to satisfy its purported "good-faith inquiry." Motion to Compel ¶ 8. The Insider DIP Agent's silence speaks volumes. Moreover, while the Insider DIP Agent claims that it is not seeking the contents of Orrick's advice to the Trustee (Motion to Compel ¶ 8), given the Trustee's detailed testimony to date, it is hard to imagine what additional information the Trustee could provide other than Orrick's privileged advice.

20. In addition, while the Insider DIP Agent did not ask any questions about certain of the ancillary topics for which it now seeks further discovery, that is a problem of its own making. The Trustee stood ready and willing to answer questions, but the Insider DIP Agent made the strategic litigation decision to forego certain topics. That decision does not entitle them to a do-over of the Trustee's deposition. Indeed, "while the Court is here to help the parties resolve their dispute, it is not here to insulate counsel from the foreseeable consequences of their strategic choices." *Murphy Oil USA, Inc. v. Love's Travel Stops & Country Stores, Inc.*, No. 3:18-CV-01345-X, 2019 WL 9103416, at *2 (N.D. Tex. Nov. 8, 2019). The Insider DIP Agent does not get a second bite at the apple to pursue cumulative and irrelevant discovery.

## CONCLUSION

WHEREFORE, Orrick and the Trustee respectfully request that the Court deny the Motion to Compel.

*[Remainder of Page Intentionally Left Blank]*

Dated: January 31, 2025                    Respectfully submitted,


By: */s/ Ryan C. Wooten*
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
Ryan C. Wooten, Texas Bar No. 24075308
609 Main Street, 40th Floor
Houston, TX 77002-3106
Telephone: (713) 658-6400
Facsimile: (713) 658-6401
Email: rwooten@orrick.com

Raniero D'Aversa, Jr. (admitted *pro hac vice*)
Darrell Cafasso (admitted *pro hac vice*)
David Litterine-Kaufman (admitted *pro hac vice*)
Nicholas Poli (admitted *pro hac vice*)
Mark Franke (admitted *pro hac vice*)
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
Email: rdaversa@orrick.com
cafasso@orrick.com
dlitterinekaufman@orrick.com
npoli@orrick.com
mfranke@orrick.com


*Proposed Special Litigation Counsel for the Chapter 7 Trustee*


By: /s/ Aaron J. Power
**PORTER HEDGES LLP**
Joshua W. Wolfshohl (TX Bar No. 24038592)
Aaron J. Power (TX Bar No. 24058058)
1000 Main St., 36th Floor
Houston, TX 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
Email: jwolfshohl@porterhedges.com
apower@porterhedges.com

*Counsel for the Chapter 7 Trustee, Allison D. Byman*