UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| SMILEDIRECTCLUB, INC., *et al.*, ) | Chapter 7 |
| ) | (Previously Chapter 11) |
| Debtors. ) | |
| ) | Case No. 23-90786 (CML) |
| ) | |
| ) | (Jointly Administered) |

**ORDER GRANTING RENEWED APPLICATION FOR
ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF
ORRICK, HERRINGTON & SUTCLIFFE LLP AS SPECIAL LITIGATION
COUNSEL TO THE CHAPTER 7 TRUSTEE**
**(Related to Docket No. 957)**

Upon the renewed application (the "Application")[1] of Allison D. Byman, the Chapter 7 Trustee (the "Trustee") of the jointly administered bankruptcy estates of SmileDirectClub, Inc., *et al.* (collectively, the "Debtors") for entry of an order (this "Order") authorizing the Trustee to employ and retain Orrick, Herrington & Sutcliffe LLP ("Orrick") as the Trustee's special litigation counsel ("Special Litigation Counsel") to perform the services described in the Application; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and due, sufficient, and proper notice of the Application having been provided under the circumstances and in accordance with the Bankruptcy Rules and the Local Rules, and it appearing that no other or further notice need be provided; and upon consideration of the Application, the *Declaration of Raniero D'Aversa in Support of Renewed Application for Entry of an Order Authorizing the*

---

[1] Capitalized terms used but not defined herein have the meanings given to them in the Application.

*Retention and Employment of Orrick, Herrington & Sutcliffe LLP as Special Litigation Counsel to the Chapter 7 Trustee* (the "D'Aversa Declaration"), and all of the proceedings had before the Court; and this Court having found and determined that Orrick does not hold or represent any interest materially adverse to the Debtors' estates with respect to the matters upon which it is to be engaged, as required under section 327(e) of the Bankruptcy Code, that Orrick is a "disinterested person" as that term is defined under section 101(14) of the Bankruptcy Code, that Orrick's employment is necessary and in the best interests of the Debtors, their estates, their creditors, their stakeholders, and all other parties in interest, and that the legal and factual bases set forth in support of the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Application is GRANTED.

2. The Trustee is authorized, pursuant to sections 327(e), 328(a), and 330 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1, to employ and retain Orrick as Special Litigation Counsel to perform the services described in the Application.

3. The terms of Orrick's retention as set forth in the Contingency Fee Agreement[2] attached hereto as Exhibit 1 are approved in all respects pursuant to section 328(a) of the Bankruptcy Code. Without limiting the generality of the foregoing, (a) the full contingency fee structure and related terms set forth under the Contingency Fee Arrangement are approved[3] and (b) any settlement agreement and any settlement order entered by the Court resolving the Insider

---

[2] To the extent any terms in the Application, the Contingency Fee Agreement, or the D'Aversa Declaration conflict with this Order, the terms of this Order shall govern.

3. **Except with respect to pre-Feb 14, 2025 fees due under the Consigilio Agreement Orrick signed.**

Claims will specify that Orrick will be paid the applicable contingency fee and expenses incurred on and after December 10, 2024 due to Special Litigation Counsel under the Contingency Fee Arrangement no later than 5 business days after the date that a fee application requesting payment of such contingency fee and expenses is approved by the Court.

4. Payment to Orrick of the contingency fee and the expenses shall be taken out of any Recovery after payment of all DIP Obligations (unless otherwise agreed in writing by the DIP Agent) but prior to disbursements to any other creditors or parties in interest of the Debtors' estates.

5. Orrick shall apply for approval of any compensation it seeks in compliance with sections 330 and 331 of the Bankruptcy Code and the applicable provisions of the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court; *provided, however*, that Orrick shall make a reasonable effort to comply with the U.S. Trustee's requests for additional information and disclosures, both in connection with the Application and the interim and final fee applications to be filed by Orrick in these chapter 7 cases.

6. Orrick shall ensure that any contract attorneys who are hired by Orrick to provide services to the Trustee are subject to conflicts checks and disclosures in accordance with the requirements of the Bankruptcy Code and the Bankruptcy Rules. For the avoidance of doubt, Orrick shall not share fees with existing or future contract attorneys who advise the Trustee or enter into fee sharing arrangements with such contract attorneys.

7. Orrick shall use its reasonable efforts to avoid any duplication of services provided by any of the Trustee's other retained professionals in these chapter 7 cases.

8. The Trustee and Orrick are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

9. Orrick will periodically review its files during the pendency of these cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, Orrick will use reasonable efforts to identify such further developments and will file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

10. Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

11. The terms and conditions of this Order are immediately effective and enforceable upon its entry.

12. The Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Signed: February 14, 2025

Christopher Lopez
United States Bankruptcy Judge

**<u>Exhibit 1</u>**

**Contingency Fee Agreement**



**CONFIDENTIAL**

December 10, 2024

*VIA ELECTRONIC MAIL*

Allison D. Byman
Chapter 7 Trustee of the Bankruptcy Estates of SmileDirect, Inc., *et al.*
7924 Broadway #104
Pearland, Texas 77581
adb@bymanlaw.com

**Orrick, Herrington & Sutcliffe LLP**
51 West 52nd Street
New York, NY 10019-6142

+1 212 506 5000

**orrick.com**

**Raniero D'Aversa**

E  rdaversa@orrick.com
D  +1 212 506 3715
F  +1 212 506 5151

Re:   <u>Engagement Regarding Litigation to be Brought in SmileDirect Chapter 7 Cases</u>

Dear Allison:

### AMENDED AND RESTATED CONTINGENCY FEE AGREEMENT

Orrick, Herrington & Sutcliffe LLP ("ORRICK") and Allison D. Byman, the chapter 7 trustee (in such capacity, the "TRUSTEE" or "the Client") of the jointly administered bankruptcy estates of SmileDirectClub, Inc., *et al.* (collectively, "SmileDirect" or the "Debtors") in the chapter 7 cases pending in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), hereby enter into the following amended and restated engagement agreement (the "Contingency Fee Agreement"), which amends and restates our engagement agreement dated April 1, 2024, pursuant to which ORRICK will provide legal advice, services, and representation to TRUSTEE under a contingency fee arrangement to cover all legal fees and expenses of ORRICK during such legal representation for the Scope of the Engagement (as herein defined) and under the terms and conditions defined and set forth below.  TRUSTEE acknowledges that these fees and expenses are not set by law but are negotiable between ORRICK (as the attorney) and TRUSTEE (as the client), and that this Contingency Fee Agreement sets forth the fee arrangement that was negotiated between and accepted by TRUSTEE and ORRICK.  We understand that (i) this engagement is subject to approval by the Bankruptcy Court and (ii) we will file an application with the Bankruptcy Court seeking the entry of an order approving our retention and employment as TRUSTEE's special litigation counsel.[1]

**Scope of Engagement**:  TRUSTEE has engaged ORRICK to advise and assist TRUSTEE in connection with (A) the investigation and prosecution of claims and causes of action (the "Claims") against various current and former insiders of SmileDirect (as such term is defined in section 101 of the U.S. Bankruptcy Code or otherwise is employed by bankruptcy courts beyond the scope of the definition of the term in section 101 of the U.S. Bankruptcy Code) and their affiliates, and any persons or entities against whom Claims may lie as a result of the conduct of insiders (such defendants, collectively, "Defendants") (the "Litigation"), and (B) the negotiation of settlements of the Claims (the "Negotiations") ((A) and (B) together, the "Scope of the Engagement").

---

[1] Capitalized terms used but not defined in herein have the meanings given to them in the *Final Order (i) Authorizing the Debtors to Obtain Postpetition Financing, (ii) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (iii) Authorizing the Use of Cash Collateral, and (iv) Modifying the Automatic Stay* entered by the Bankruptcy Court in the SmileDirect bankruptcy cases on November 7, 2023 [Dkt. No. 296] (the "Final DIP Order").

**CONFIDENTIAL**
Allison D. Byman, Chapter 7 Trustee
December 10, 2024
Page 2



   ORRICK and TRUSTEE agree that this Contingency Fee Agreement is limited to representation in the Scope of the Engagement only and for TRUSTEE alone and shall not be for any other party or matter and that all other representation of TRUSTEE by ORRICK is and shall be the subject of separate agreements and none of the payments made to ORRICK pursuant to this Contingency Fee Agreement shall be credited against fees and costs for any such other representations.

   The scope of the engagement will be limited to the Negotiations and the Litigation, and will include all associated settlement negotiations, mediation, and judicial proceedings in connection with the Negotiations and the Litigation except as limited herein.  The Scope of the Engagement will not cover: (i) any other party or other actions which are not stated in this Contingency Fee Agreement; (ii) any appeal of or arising out of the Litigation; and (iii) any new trial following an appeal.

   **Definitions**:  As used in this Agreement, the following terms have the meanings set forth below:

   As used herein, "Recovery" shall mean any and all consideration actually and finally paid or made to TRUSTEE or the SmileDirect bankruptcy estates as damages, interest, settlements, or other arrangements for payments in any settlement attributable to the Negotiations or the Litigation, whether paid in a lump sum, by installment, or otherwise, and whether paid by a Defendant, an insurance carrier, or any other payor.  Recovery consideration shall also include any amounts recovered based on an award of attorney's fees and/or costs awarded to TRUSTEE or the SmileDirect bankruptcy estates by a court.   Recovery consideration shall also include the fair market value of any non-cash consideration provided to or for the benefit of TRUSTEE or the SmileDirect bankruptcy estates attributable to the Negotiations or the Litigation.  TRUSTEE and ORRICK shall attempt to agree to the fair market value of any non-cash consideration and any dispute on valuation shall be resolved by the Bankruptcy Court.  In the event non-cash consideration is received by TRUSTEE or the SmileDirect bankruptcy estates at a time when the cash portion of the Recovery is not sufficient to permit payment of contingent fees owed as a result of such receipt of non-cash consideration, TRUSTEE shall take all reasonable and necessary steps to secure the interest of ORRICK in such non-cash consideration.

   As used herein, "Expenses" shall mean and include all actual out of pocket costs incurred on or after the date hereof by ORRICK including travel expense, lodging, meals, court reporter's fees, deposition and transcript costs, filing fees, electronic discovery vendors' costs, photocopying and reproduction costs, long distance telephone charges, messenger and other delivery fees, postage, outside vendor costs such as document production, copying and document processing, graphics, graphics and electronic support, electronic legal research expenses, or other costs incurred in connection with the Negotiations and the Litigation which are stated in the invoices from ORRICK to TRUSTEE; provided, that "Expenses" shall not include the fees of any expert or related consulting firm, and to the extent TRUSTEE requires the services of an expert or related consulting firm, TRUSTEE will be responsible for entering into a separate engagement letter to retain such expert or related consulting firm.  ORRICK and TRUSTEE agree to work in good faith to consider solutions if ORRICK determines that TRUSTEE requires the services of an expert or related consulting firm but there are no unencumbered funds in the estates that will enable her to do so.

   As used herein, "Termination Date" shall mean the later of (i) the fifth (5th) business day after the date of written notice of termination of the representation hereunder by TRUSTEE and (ii) the date of an order of the Bankruptcy Court approving the termination of the representation hereunder.

   **Payment of Expenses:**  The TRUSTEE agrees that any Expenses incurred by ORRICK during the period it is representing TRUSTEE shall be reimbursed to ORRICK from any Recovery in addition to the payment of any Contingency Fee.

**CONFIDENTIAL**
Allison D. Byman, Chapter 7 Trustee
December 10, 2024
Page 3



      **Contingency Fee to ORRICK:** ORRICK will proceed on a full contingency, where ORRICK bears all professional fees (and Expenses, to the extent provided herein) in return for a contingent fee recovery and reimbursement of Expenses.  The structure of the contingent fee arrangements is intended to (i) allow ORRICK to be paid back for its expenditure of disbursements for Expenses; and (ii) allow for ORRICK's investment of labor to be paid back in a reasonable timeframe and to a level that compensates ORRICK for the risk it has taken.

      (a) ORRICK shall retain as its fee for representing TRUSTEE in the Negotiations and the Litigation (the "Contingency Fee") a percentage of the Recovery based on the following milestones with respect to any action against any Defendant (each, an "Action"), which Contingency Fee shall be made no later than 5 business days after the date that a fee application requesting payment of such Contingency Fee is approved by the Bankruptcy Court:

            (i) Prior to the resolution of any motion to dismiss in the Action in which the Recovery is obtained, THIRTY-FIVE PERCENT (35.00%) of any Recovery in that Action;

            (ii) From and after resolution of any motion to dismiss through a resolution of any motion for summary judgment in the Action in which the Recovery is obtained, FORTY PERCENT (40.00%) of any Recovery in that Action; and

            (ii) From and after resolution of any motion for summary judgment in the Action in which the Recovery is obtained, FORTY-FIVE PERCENT (45.00%) of any Recovery in that Action.

      (b) Any settlement agreement and any settlement order entered by the Bankruptcy Court resolving Claims will specify that ORRICK will be paid from the Recovery amounts the applicable Contingency Fee no later than 5 business days after the date that a fee application requesting payment of such Contingency Fee is approved by the Bankruptcy Court.

      (c) Payment to ORRICK of the Contingency Fee shall be the full payment for all legal services rendered in the Engagement.

      (d) Payment to ORRICK of the Contingency Fee and the Expenses shall be taken out of any Recovery after payment of all DIP Obligations (unless otherwise agreed in writing by the DIP Agent) but prior to disbursements to any other creditors or parties in interest of the SmileDirect bankruptcy estates.

      **TRUSTEE Assistance and Cooperation:**  TRUSTEE agrees to work closely with ORRICK in connection with the Negotiations and the Litigation, including investigation of the factual and legal bases for the Claims.  TRUSTEE understands that the foregoing will require a substantial investment of time and energy to enable ORRICK to represent the best interests of TRUSTEE effectively.  TRUSTEE agrees to use best efforts to obtain an order (the "Retention Order") from the Bankruptcy Court approving this Contingency Fee Agreement and to cause the Retention Order to become a final, unappealable order.

      **Authority:**  ORRICK shall not initiate any settlement discussions or negotiations with the Defendants without the prior consent of TRUSTEE.  Subject to advice or suggestion from ORRICK, TRUSTEE shall have the sole and exclusive authority regarding the scope and nature of the terms and conditions of any settlement agreement or other disposition of the Litigation, subject to Orrick's right to withdraw as counsel set forth below.  ORRICK shall consult with TRUSTEE regarding all significant litigation matters, including, but not limited to, demand letters, pleadings, and strategic decisions.

      **Billing Statements:** ORRICK will provide Trustee with monthly statements reflecting fees of timekeepers and Expenses as well as the time spent and tasks completed by the attorneys that are

**CONFIDENTIAL**
Allison D. Byman, Chapter 7 Trustee
December 10, 2024
Page 4



working under this contingency arrangement along with their pro-forma billings.  Such statements shall reflect timekeeper fees calculated by multiplying their hourly rates based on their then-current hourly rate schedule.  TRUSTEE will not be expected to pay the fee amounts or Expenses billed as ORRICK will be paid on a contingent basis as noted herein.  The purpose of the statements is to keep TRUSTEE informed of the progress of the work done on her behalf, to provide a record basis for any fee applications that will be made to the Bankruptcy Court, and to provide a fair measure of the economic value of services if rendered on an hourly rate basis.  ORRICK's fees and Expenses incurred during the SmileDirect bankruptcy cases are subject to the requirements of the U.S. Bankruptcy Code and may only be paid as authorized by the Bankruptcy Court.

**Term:**  Except as provided below, this Contingency Fee Agreement and all of its provisions shall terminate and have no further force and effect on the latest to occur of (a) the resolution of all Claims in all Actions, whether through final judgment (excluding any appeals thereof), settlement, or both; and (b) the date on which all Recoveries agreed by the Parties to be collected have been received by TRUSTEE or the SmileDirect bankruptcy estates or ORRICK, as applicable, and allocated, paid and distributed in accordance with this Contingency Fee Agreement.

(a) *Termination of Representation by TRUSTEE.*  TRUSTEE may terminate her appointment of ORRICK to represent it in the Scope of the Engagement by written notice upon not less than five (5) business days advance notice to ORRICK for any reason whatsoever, and, subject to any required approvals of the Bankruptcy Court, ORRICK thereafter shall no longer serve as TRUSTEE's counsel for the Scope of the Engagement or have any further obligations under this Contingency Fee Agreement except for the immediate, orderly, and complete transition of the matter to the new attorneys, including the transfer of all records and files.  Following such termination, TRUSTEE shall seek Bankruptcy Court approval to reimburse ORRICK for all Expenses incurred prior to the Termination Date (as defined herein).

In the event that (i) TRUSTEE terminates this Engagement and (ii) TRUSTEE both continues to pursue the Claims and obtains a Recovery, TRUSTEE shall pay to ORRICK the Proportional Contingency Fee (as defined below) within 60 days after the determination of the Proportional Contingency Fee.

(b) *Termination of Representation by ORRICK.*

(1)  ORRICK may, subject to its ethical obligations and any required approvals by the Bankruptcy Court, terminate its obligations under this Contingency Fee Agreement and the representation of TRUSTEE for the Scope of the Engagement at any time for any reason other than those specified in paragraph (b)(2) below, subject to such termination being approved by entry of an order of the Bankruptcy Court.

(2)  ORRICK, after consultation with TRUSTEE, may, subject to its ethical obligations and any required approvals by the Bankruptcy Court, terminate its obligations under this Contingency Fee Agreement and the representation of TRUSTEE for the Scope of the Engagement by written notice of termination to TRUSTEE for the reason that (i) TRUSTEE breaches any of her material obligations under the Contingency Fee Agreement upon thirty (30) days advance notice of such breach to TRUSTEE and TRUSTEE's failure to cure such breach within thirty (30) days of receiving such notice (for the avoidance of doubt, TRUSTEE's failure to retain an expert or related consulting firm due to the unavailability of unencumbered funds in the estates is not a breach of her material obligations hereunder), or (ii) ORRICK recommends that TRUSTEE accept a settlement offer to resolve the Claims and TRUSTEE declines to accept the settlement offer.  For the avoidance of doubt, any such termination must be approved by entry of an order of the Bankruptcy Court.

(3) In the event that ORRICK exercises its right to terminate its representation of TRUSTEE pursuant to paragraph (b)(1) or (2) above, subject to any required approvals of the Bankruptcy

**CONFIDENTIAL**

Allison D. Byman, Chapter 7 Trustee
December 10, 2024
Page 5



Court, ORRICK shall no longer serve as TRUSTEE's counsel for the Scope of the Engagement and ORRICK shall have no further rights or obligations under this Contingency Fee Agreement, except that TRUSTEE shall seek Bankruptcy Court approval to reimburse ORRICK for all Expenses incurred prior to the Termination Date.  In addition, in the event that ORRICK exercises its right to terminate its representation of TRUSTEE pursuant to paragraph (b)(2) above and subsequent to the Termination Date there is one or more Recoveries, TRUSTEE shall pay to ORRICK after receiving payment of each Recovery the "Proportional Contingency Fee."   As used herein, "Proportional Contingency Fee" means the pro rata share of the applicable Contingency Fee calculated pursuant to this Contingency Fee Agreement determined by the proportional contribution of ORRICK and any new counsel involved in the creation of the Recovery, considering ORRICK's fees for time spent working on the Litigation and the Negotiations (based upon our then-current, non-discounted hourly rates) relative to the fees for time spent by any replacement counsel on the same, and any offers by the Defendants, Recovery or potential Recovery, if any, in existence as of the Termination Date.  If an agreement is not reached as to the amount of the Proportional Contingency Fee, such disagreement shall be resolved by the Bankruptcy Court.  TRUSTEE shall pay the Proportional Contingency Fee to ORRICK within 60 days after the determination of the Proportional Contingency Fee.

**Miscellaneous.**  This Agreement is the full and complete agreement among the undersigned parties shall be governed by the laws of the State of Texas without regard to application of choice of law principles and may be changed only by a writing executed by all parties.

California law requires that we disclose to you that the percentage of contingent attorney's fees is negotiable between attorneys and clients, and is not fixed or set by law.  You have been informed that you have the right to seek and obtain the advice of counsel before entering into this Contingency Fee Agreement.  We encourage you to do so.  We maintain errors and omissions insurance.

All claims and causes of action of any kind against any Defendant shall be handled by ORRICK.  TRUSTEE may request from time to time that ORRICK handle claims or causes of action against parties other than the Defendants and request that work performed by Orrick in connection with any such claims or causes of action be compensated on the basis set forth in this Contingency Fee Agreement.  ORRICK shall have the right, in its sole discretion, to accept or decline handling any such claims or causes of action against parties other than the Defendants.

**Assignment.**  This Contingency Fee Agreement is not assignable and is binding on all successors of the parties. Any purported assignment of this Contingency Fee Agreement shall be null and void and of no effect.

**ACKNOWLEDGED AND AGREED:**

Orrick, Herrington & Sutcliffe LLP                    Allison D. Byman, Chapter 7 Trustee

*/s/ Raniero D'Aversa*                                       */s/ Allison Byman, Trustee*

By: Raniero D'Aversa                                        By:

Dated: 12/10/2024                                           Date: 12/10/2024

**CONFIDENTIAL**



## STANDARD ENGAGEMENT TERMS

Except as modified in writing or in another agreement signed by the Client and Orrick, the following provisions shall apply to the relationship between Orrick and the Client.

**1.      Client Identity**

Our engagement is only on behalf of the Client identified in the Engagement Letter accompanying these Standard Engagement Terms, and does not extend to (i) any officer, director, employee, owner, principal, member, partner of, or any other person affiliated with the Client; or (ii) any subsidiary, parent, or other affiliate of the Client (collectively, the "Affiliates").  Therefore, we may represent other clients in other matters directly adverse to any Affiliates.  If any Affiliates request our services, we would be pleased to discuss whether we might be able to represent them, but any such representation would require its own engagement letter and be subject to conflicts checks, waivers, retainers, approvals, and any other arrangements that are necessary or appropriate in Orrick's professional judgment.

**2.      Scope of Engagement**

The scope of Orrick's representation of the Client is limited to the Matter identified in the Engagement Letter.  If the Client would like to retain Orrick for additional matters in the future, and Orrick agrees to do so, Orrick and the Client will execute a rider to this Agreement describing the scope of any such additional matters.  Orrick's agreement to represent the Client in any additional matters will be subject to conflict checks, waivers, retainers, approvals, and any other arrangements that are necessary or appropriate in Orrick's professional judgment.  Please be advised that the Client must file any required Beneficial Ownership Information reports, updates, and amendments pursuant to the Corporate Transparency Act (the "CTA"), including collecting and storing any personal information from "beneficial owners" and "company applicants" as defined in the CTA and its implementing regulations, and Orrick's representation of the Client will not include making any such filing, or information collection or storage services.  Except as expressly provided in a rider or other written agreement executed by the Client and Orrick, this Agreement will apply to all Client matters handled by Orrick, and in the event of a conflict, this Agreement will control over any Client outside counsel or billing guidelines unless otherwise agreed to in writing by Orrick.

**3.      Waiver of Future Conflicts of Interest**

Our agreement to represent the Client is conditioned upon the understanding that we may represent other clients in any matters adverse to the Client, where the representation is not substantially related to the matters for which the Client has retained us, including matters involving:



**CONFIDENTIAL**
Page 2

    (a) advice, counseling, negotiations, or document preparation relating to business and financing transactions, regulatory, or licensing matters;

    (b) cyber and data privacy law counseling;

    (c) intellectual property counseling, evaluation, prosecution, or validity, scope, or infringement analysis or opinion work, including any intra-party and inter-party proceedings before the U.S. Patent and Trademark Office or other like intellectual property offices around the world;

    (d) bankruptcy or insolvency proceedings;

    (e) third party discovery, diligence, or other information gathering, including, but not limited to, serving a subpoena, requesting documents, or interviewing witnesses; and

    (f) litigation, arbitration, or other contested court, tribunal, and administrative proceedings.

With respect to any of the Client's adversaries in the Matter, the Client agrees that we may represent such parties in other matters as long as our representation of those other parties is not substantially related to our work for the Client.

  The Client should be aware that we provide services on a wide variety of legal subjects to a large number of clients both in the United States and internationally, some of whom are or may in the future operate in the same area of business in which the Client is operating or may operate. (A summary of Orrick's current practice areas and the industries in which we represent clients can be found on Orrick's web site at www.orrick.com.) We will, of course, hold in confidence the Client's secrets and confidences. Similarly, the Client understands that while Orrick may obtain confidential information from other clients that may be of interest to the Client, Orrick cannot share such information with the Client. The Client consents to these other representations, agrees that it will not seek to disqualify Orrick from any such present or future representations, and waives any actual or potential conflict that might arise from such current or future representations so long as those other representations are not substantially related to our work for the Client.

  Notwithstanding the foregoing, we understand that during our representation of the Client in the SmileDirect bankruptcy cases, Orrick must not hold or represent an interest materially adverse to the interests of the Debtors or their estates with respect to the Matter as required by the U.S. Bankruptcy Code.

  **4.** **<u>Internal Communications</u>**

  The occasion might arise for us, at our own expense, to consult regarding our engagement for the Client with our own counsel (*e.g.*, our General Counsel, other firm lawyers working with our General Counsel who do not perform work for the Client on the Matter, or our own outside counsel). To the extent that we are addressing our own rights or responsibilities, a conflict of interest might be deemed to exist between Orrick and the Client as to such consultation or resulting communications, particularly if a



**CONFIDENTIAL**
Page 3

dispute were ever to arise between Orrick and the Client regarding the Matter.  A condition of this engagement is that the Client hereby consents to such consultation occurring and waives any claim of conflict of interest based on such consultation or resulting communications that could otherwise disqualify us from continuing to represent the Client or from acting in our own behalf, even if such consultation or communications might be deemed adverse to the interests of the Client.  The Client acknowledges and agrees that any such consulting and communications are protected from disclosure to the Client by Orrick's own attorney-client privilege.

      5.      **Insurance Coverage**

The Client has not retained Orrick to represent the Client in connection with issues relating to insurance coverage. Depending on the circumstance of the matter involved, the Client should review its insurance and consider whether it needs to notify its insurance carrier(s) (*e.g.*, directors & officers, errors & omissions, professional liability, comprehensive general liability, workers' compensation, homeowner's liability, umbrella liability, etc.) in order to determine whether there is insurance coverage for any of the claims asserted.

      6.      **Responsibilities of Attorney and Client**

We will provide to the Client legal counsel and assistance in accordance with the terms of this Agreement.  The Client will not look to or rely upon Orrick for any investment, accounting, financial or other non-legal advice, including, without limitation, any advice regarding the character or credit of any person with whom the Client may be dealing.  Although we will at times communicate with the Client by e-mail, letter, or other written form, we may provide much of our counsel and assistance in telephone conversations and meetings with the Client.  If the Client ever wishes for us to confirm any oral advice in writing, please let us know.

For us to represent the Client effectively, we need the Client to provide us with complete and candid information regarding the Matter, to keep us informed of relevant developments, to make decisions necessary for us to fulfill our responsibilities in the Matter, and otherwise to provide us the Client's reasonable assistance and cooperation.

Orrick will only accept instructions provided via telephone, email, or in person or over videoconference.  We will not initiate communications with you or accept instruction via text message, or through online chat platforms or social media apps such as WhatsApp, WeChat, or Facebook Messenger.  Orrick does not have control over such platforms and such use may compromise the confidentiality of the Client's information.

We have a duty of confidentiality to the Client and each of our other clients.  We take this duty very seriously and, except to the extent permitted by the applicable ethics rules, we will not disclose any confidential information of the Client to any other client or person.  Similarly, we cannot disclose to the Client the confidences of any other client even when such information relates to matters that might affect the Client.



**CONFIDENTIAL**
Page 4

### 7. Fees, Costs, and Disbursements

The Contingency Fee Agreement in the engagement letter sets forth the fee, costs, and disbursements arrangement between the Client and Orrick.

Except as otherwise provided in the Contingency Fee Agreement in the engagement letter, our fees are based on the amount of time we spend on the Matter and the hourly rate of each timekeeper working on the Matter.

We also will bill the Client on a monthly basis for in-house services such as telephone charges, document reproduction, word processing, computerized research, out-of-town travel, and messenger services.  Subject to our ethical obligations, certain of such services may be charged at more than Orrick's direct cost to cover our estimated associated administrative costs, overhead, and materials.  More specific information relating to Orrick's disbursement policies is available upon request.

Although Orrick may furnish estimates of fees or costs that we anticipate will be incurred, these estimates are not binding, are subject to unforeseen circumstances, and are inexact by their nature.

Unless special arrangements are made, Orrick does not take responsibility for paying fees and expenses of third parties, which will be the Client's responsibility and may be billed directly to the Client.

Professional fees and expenses incurred by Orrick during the SmileDirect bankruptcy cases are subject to the requirements of the U.S. Bankruptcy Code and to review and approval by the Bankruptcy Court.  While we will provide periodic statements to you of the fees and expenses incurred on your behalf, we recognize that the fees and expenses incurred during the case may only be paid as authorized by the Bankruptcy Court.

If any claim or action is brought against Orrick or any of its personnel that alleges negligence or wrongdoing of the Client or a third party, or if Orrick or any current or former attorney or employee of Orrick is asked or required by the Client or a third party to testify or produce documents as a result of Orrick's representation of the Client, the Client agrees to pay Orrick for any resulting costs or expenses, including Orrick's time, even if Orrick's representation of the Client has ended.  This paragraph does not apply to any claim brought by or on behalf of the Client alleging wrongdoing by Orrick.

Except as otherwise provided in the Contingency Fee Agreement in the engagement letter, the obligation to pay our invoices in a timely manner is solely the Client's and is not contingent upon, nor shall the payment due date be extended or otherwise affected by (i) any judgment or settlement, (ii) any right the Client may have for reimbursement, indemnification, or insurance, or (iii) the Client's receipt of any other form of payment the Client may claim or expect to receive from some other party.  If the Client has any question or concern regarding any invoice, the Client should notify us promptly of any such question or concern and, in any event, must promptly pay any portion of such invoice that is not the subject of a question or concern.



**CONFIDENTIAL**
Page 5

8. **[Reserved]**

9. **Client Files (Cloud Storage, Retention, Use, and Disposition)**

Cloud computing services offer valuable tools to Orrick and our clients.  Orrick has arrangements with certain providers of cloud services to host, process, and analyze data, including client data.  Orrick's primary data management system is cloud-based in all permissible jurisdictions.

Orrick will retain all hardcopy and electronic records relating to the Matter for seven (7) years after the conclusion of the Matter.  After seven (7) years, Orrick may destroy all records related to the Matter in a manner that preserves confidentiality, unless the Client expressly instructs otherwise in writing.  Orrick retains the right to keep a copy of the client file in accordance with the applicable ethics rules and our internal records retention policy.

Our own internal files pertaining to the Matter will be retained by us (as opposed to being sent to you) or destroyed, including, but not limited to, internal communications, internal work product, firm administrative records, time and expense reports, personnel and staffing materials, and credit and account records.  We reserve the right to destroy or otherwise dispose of any of our own files within a reasonable time after the engagement has concluded, provided that the Trustee shall be provided with 60 days written notice before such files are destroyed.

Orrick will not retain, use, or disclose the personal information received in connection with our representation of the Client for any purpose other than representing the Client, or as otherwise permitted by applicable laws, specific Client instruction, outside counsel guidelines, or ethics rules.

10. **Use of Artificial Intelligence Tools and Machine Learning**

Many of Orrick's internal business systems incorporate artificial intelligence ("AI") or machine learning to best facilitate operations and client service.  Certain of the systems include third party cloud-based AI tools.  The Client data processed into AI tools may improve machine learning algorithms at Orrick or in the AI tools of third-party vendors.  Orrick may use data gathered by these AI programs and tools to inform business functions, streamline and improve client service, and build artificial intelligence tools for Orrick's use.

Orrick further strives to maximize the benefits that innovative AI tools and approaches can provide for the Client on the Matter.  Orrick recognizes that in addition to AI embedded in tools Orrick uses to manage our normal business operations, elective cloud-based tools that use AI or machine learning can be used to improve the efficacy and accuracy of the legal services we provide to you (*e.g.*, Kira, Eigen, Opus, LegalSifter, BlackBoiler, Box).  Use of AI tools can also help to reduce the cost of our legal services.  AI tools may learn from and be improved by the data processed through them.  While the AI tools Orrick uses to host, process, and analyze data are not immune from security or quality compromises, every AI tool is examined and approved by Orrick's cyber security vendor risk management

**CONFIDENTIAL**
Page 6



program.  Orrick may use targeted AI tools on your Matter where they can aid in efficient and cost-effective service.

### 11. Arbitration

Although we think it is unlikely, a dispute could arise between us regarding some aspect of the engagement and Orrick's representation of the Client.  Any such dispute, whether a claim by the Client against Orrick or by Orrick against the Client, including claims for unpaid fees and charges, negligence, quality of services, breach of contract or fiduciary duty, fraud, or any other claims relating to any aspect of the engagement and our representation of the Client is referred to herein as a "Dispute."  If we are unable to resolve any Dispute ourselves, the Client and Orrick agree to resolve such Dispute in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.  The laws of the State of Texas will apply.

### 12. Disclosure for Promotional Purposes

Except as the client otherwise directs, Orrick may include a summary of publicly disclosed aspects of the Matter in internal and external materials, including press releases and social media postings.

### 13. Severability

If any section or portion of this Agreement is determined to be illegal or invalid, the validity of the remaining terms shall not be affected therein and said illegal or invalid term shall be deemed not to be a part of this Agreement.

### 14. Binding Agreement

This Agreement represents the entire agreement between the Client and Orrick with respect to the subject matter referred to herein.  The Client acknowledges that Orrick has made no representations or guarantees regarding the outcome of the Matter or the time necessary to complete the Matter.  The provisions of this Agreement may be amended only in writing and if signed by both parties.